IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PATRICK GUILLORY,

                        Plaintiff,

        v.                                          Civil Action No.
                                                    9:12-CV-1771 (FJS/DEP)

MAUREEN BOLL and G. JOHNSTON,

                        Defendants.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

PATRICK GUILLORY, *Pro Se*
09-B-0714
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011

FOR DEFENDANTS:

HON. ERIC T. SCHNIEDERMAN          DOUGLAS J. GOGLIA, ESQ.
New York State Attorney General    KELLY J. MUNKWITZ, ESQ.
The Capitol                        Assistant Attorneys General
Albany, NY 12224-0341


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Patrick Guillory, a New York State prison inmate, commenced this action against three New York State Department of Corrections and Community Supervision ("DOCCS") employees, only two of whom remain in the action, pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In the portion of his complaint that remains pending before the court, Guillory alleges that the defendants arranged for the issuance of a false misbehavior report accusing him of making threatening statements to one of them, in retaliation for a series of grievances filed by him shortly before that misbehavior report was issued, as well as for having sued one of the two defendants in another civil rights action.

Currently pending before the court are three separate motions.  In response to plaintiff's complaint, the remaining two defendants have moved seeking its dismissal for failure to state a claim upon which relief may be granted.  Plaintiff has countered with a motion seeking sanctions against defendants' counsel, and a second requesting the entry of summary judgment in his favor in connection with his retaliation claims.  For the reasons set forth below, I recommend that all three motions be

2

denied.

## I.    BACKGROUND[1]

Plaintiff is a prison inmate currently being held in the custody of the

DOCCS.[2]   *See generally* Complaint (Dkt. No. 1).   While he is now

incarcerated elsewhere, at the times relevant to his complaint, plaintiff was

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).  While both plaintiff and defendants have submitted a number of extrinsic materials in support of their arguments related to defendants' motion to dismiss, I have not considered any of them.  The majority of the materials are not of the type that could be considered either integral to plaintiff's complaint or incorporated by reference.  *Mangiafico v. Bloomingthal,* 471 F.3d 391, 398 (2d Cir. 2006).  I note, moreover, that the Second Circuit has cautioned against considering "material extraneous to the complaint" where the plaintiff does not have notice that such materials may be considered.  *Mangiafico*, 471 F.3d at 398; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002).

[2]    As a prison inmate, plaintiff has a significant *pro se* litigation history.  In addition to several reported Ohio state court proceedings, *see* Defs.' Memo.  of Law (Dkt. No. 29) at 2, n.3, and at least one reported state court action in New York, plaintiff has brought eight separate actions in federal district courts in New York, Ohio, and Washington.  *See Guillory v. Morris,* No. 13-CV-0378 (N.D.N.Y. filed April 4, 2013) (NAM/TWD); *Guillory v. Boll*, No. 13-CV-0124 (W.D.N.Y. filed Dec. 3, 2012, transferred Feb. 7, 2013); *Guillory v. Weber*, No. 12-CV-0280 (N.D.N.Y. filed Feb. 15, 2012) (LEK/RFT); *Guillory v. Ellis,* No. 11-CV-0600 (N.D.N.Y. filed May 31, 2011) (MAD/ATB); *Guillory v. James*, No. 06-CV-2684 (N.D. Ohio filed Nov. 7, 2006); *Guillory v. Snohomish Cnty. Jail*, No. 06-CV-0747 (W.D. Wash. filed May 25, 2006).  A cursory review of those cases reveals that, for purposes of the three strikes provision of the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, (1996), 28 U.S.C. § 1915(g), plaintiff has accumulated at least two strikes as a result of the dismissal of his case filed in Ohio, *Guillory v. James*, No. 06-CV-2684, and a dismissal of an appeal in a case filed in this district, *Guillory v. Ellis*, No. 11-CV-0600.

confined in the Bare Hill Correctional Facility ("Bare Hill"), located in Malone, New York.  *Id.*

While at Bare Hill, plaintiff filed grievances on October 17, 2012, and again on October 23, 2012, both complaining of actions taken against him by a law librarian at the facility.  Complaint (Dkt. No. 1) Facts ¶¶ 9, 10.  On October 24, 2012, plaintiff was interviewed by Corrections Sergeant Carry concerning the first grievance.  *Id.* at ¶ 11.  During that interview, Sergeant Carry allegedly asked plaintiff, in a threatening tone, if he wanted to go to the facility's special housing unit ("SHU") based upon the filing of grievances against "his" staff.  *Id.*  At the conclusion of the meeting, Sergeant Carry warned plaintiff to "just keep writing and see what you get[.]"  *Id.*

On October 30, 2012, plaintiff filed a grievance alleging that Sergeant Carry threatened to send Guillory to the SHU in return for filing grievances.  Complaint (Dkt. No. 1) at ¶ 12.  Plaintiff was interviewed by defendant B. Johnston, a corrections lieutenant, the next day concerning that grievance.  *Id.* at ¶ 13.  During the interview, defendant Johnston asked plaintiff why he was filing lawsuits.  *Id.* at ¶ 14.  Shortly after that interview, plaintiff was approached by corrections officers who took him

4

into custody and transported him to the SHU. *Id.* at ¶¶ 15-16.

On November 1, 2012, plaintiff was served with a misbehavior report issued by defendant Johnston, alleging that Guillory had threatened him. *Id.* at ¶ 17. Plaintiff was subsequently found guilty in connection with that misbehavior report at a disciplinary hearing conducted on November 8, 2012. *Id.* at ¶ 19. As a result of that finding, Guillory was sentenced to three months of SHU confinement, as well as a corresponding loss of privileges, and it was recommended that he also forfeit three months of good time credits. *Id.*

On November 2, 2012, following the issuance of the misbehavior report, Sergeant Carry approached plaintiff, and stated, "Dam-it [sic] Guillory, if you had only listened to me and dropped the grievances[.]" Complaint (Dkt. No. 1) ¶ 18. When Sergeant Carry asked what plaintiff wanted done with regard to second grievance filed by plaintiff and still pending, Guillory "signed . . . the following statement: 'I received a [misbehavior report] for filing grievances. I do not want anymore problems with security. I go home in [six] months." *Id.*

According to plaintiff, Bare Hill Corrections Officer Trembly, described as a "law library officer – and friend," advised him that he "was

set-up for filing grievances . . .[,] the set-up was in retaliation for suing [defendant] Maureen Boll,"[3] and that defendant Boll orchestrated the alleged retaliation.  Complaint (Dkt. No. 1) at ¶ 25.  Plaintiff also alleges that defendant Boll "has a custom and policy of retaliation out of DOCCS office of counsel."  *Id.* at ¶ 28.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on December 3, 2012.  Complaint (Dkt. No. 1).  In his complaint, plaintiff asserts First Amendment retaliation and conspiracy claims against Maureen Boll, Deputy Commissioner and Counsel for the DOCCS; D. Johnston, a Corrections Lieutenant at Bare Hill; and Kathleen Washburn, the Senior Mailroom Supervisor at the Southport Correctional Facility ("Southport").  *Id.*

Upon review of plaintiff's complaint and accompanying *in forma pauperis* ("IFP") application, Senior District Judge Frederick J. Scullin, Jr., issued a decision on February 5, 2013, severing plaintiff's claims against defendant Washburn arising out of incidents occurring at Southport and directing that those claims be transferred to the Western District of New

---

[3]      A review of publically available records reveals that plaintiff filed a section 1983 civil rights action against defendant Boll, the Deputy Commissioner and Counsel of the DOCCS, in this district on May 31, 2011.  *See Guillory v. Ellis*, No. 11-CV-0600 (MAD/ATB).

6

York, where that facility is located. Dkt. No. 7. In that order, Judge Scullin also granted plaintiff's application for IFP status, and accepted the remaining portions of plaintiff's complaint for filing. *Id.*

On February 21, 2013, defendants Boll and Johnston moved to dismiss plaintiff's claims against them for failure to state a claim up which relief may be granted. Dkt. No. 12. In their motion, defendants argue that plaintiff is precluded from pursuing his First Amendment retaliation claim in light of two Supreme Court cases, *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). Defs.' Memo. of Law (Dkt. No. 12-1) at 8-10. In addition, defendants contend that plaintiff's complaint fails to allege facts that plausibly suggest defendant Boll was personally involved in any of the constitutional deprivations alleged by plaintiff. *Id.* On March 8, 2013, plaintiff filed his opposition to defendants' dismissal motion, which includes not only a legal memorandum but also a volume of extrinsic materials. Dkt. No. 20.

By notice filed on March 18, 2013, plaintiff also moved seeking sanctions against defendants' counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure, alleging that the attorney made a material misrepresentation to the court in connection with defendants' dismissal

7

motion. Dkt. No. 23. Plaintiff's request for sanctions is opposed by the defendants, Dkt. No. 29, and is the subject of a reply submitted by the plaintiff on April 22, 2013. Dkt. No. 32.

In addition, Plaintiff has moved, on March 18, 2013, for the entry of summary judgment in his favor in connection with the remaining claims in this action. Dkt. No. 24. Defendants have responded, by letter dated April 12, 2013, and accompanying declaration of Assistant Attorney Douglas J. Goglia, Esq., objecting to the filing of plaintiff's motion as premature, and arguing that it should not be addressed by the court until the parties have had an adequate opportunity to engage in discovery. Dkt. No. 31.

The three pending motions in this matter, all of which are now fully briefed, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Dismissal Motion Standard

Defendants' dismissal motion, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. at 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94

(2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551

U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

> B.    *Heck v. Humphrey*

In their motion, defendants first argue that plaintiff's First Amendment retaliation claim is barred by the Supreme Court's decisions in *Heck* and *Balisok*.  Defs.' Memo. of Law (Dkt. No. 12-1) at 8-10.  More specifically, defendants contend that, if plaintiff was to prevail on his claim, it would undermine the validity of a disciplinary conviction arising from the misbehavior report that is the subject of plaintiff's claim.  *Id.*

In its decision in *Heck*, the Supreme Court held that a state prisoner's claim for damages under 42 U.S.C. § 1983 is precluded if "a judgment in favor of the plaintiff would necessarily imply the invalidity of

his conviction or sentence" absent proof that the inmate has already secured invalidation of that conviction or sentence. *Heck*, 512 U.S. at 487. In 1997, the Supreme Court issued its decision in *Balisok*, which, in essence, extended *Heck*. The Court in *Balisok* held that a plaintiff's claim for damages arising from allegations of a violation of procedural due process in the context of a prison disciplinary hearing is not cognizable under section 1983 where the nature of the due process challenge necessarily implies the invalidity of the disciplinary determination issued and/or punishment imposed, unless the disposition has already been reversed through a state administrative or judicial habeas proceeding. *Balisok*, 520 U.S. at 645.

*Heck* and *Balisok*, however, do not apply to all suits challenging prison disciplinary proceedings. *Mohammad v. Close*, 540 U.S. 749, 754 (2004). Unlike the situation facing the court in *Balisok*, the plaintiff in this action does not claim a deprivation of due process associated with the disciplinary hearing arising from the misbehavior report issued to him by defendant Johnston. *See generally* Complaint (Dkt. No. 1). Instead, his cause of action arises from an allegation that defendants Boll and Johnston conspired to issue a false misbehavior report against him out of

12

retaliation for filing prior grievances and civil rights lawsuits against prison

employees.  *Id.*  If plaintiff prevails on that retaliation claim, it would not

necessarily invalidate his disciplinary conviction for threatening a

corrections officer, nor would it invariably result in restoration of lost good

time credits.[4]  As defendants acknowledge in their motion papers, if they

initiated disciplinary proceedings against Guillory in retaliation for his

having engaged in activity protected under the First Amendment, a

---

[4]     The Second Circuit has interpreted *Balisok* and *Mohammed* to distinguish between those cases involving challenges to disciplinary penalties that only affect the conditions of an inmate's confinement – including disciplinary segregation such as keeplock and solitary confinement – and those resulting in the imposition of sanctions impacting upon an inmate's good-time credits.  *Jenkins v. Haubert*, 179 F.3d 19, 22-23 (2d Cir. 1999).  Applying *Balisok*, the Second Circuit concluded that a plaintiff challenging only the conditions of his confinement, where no good time credits have been lost as a result of the disciplinary hearing at issue, need not show as a threshold matter that the disciplinary hearing decision and sentence were reversed or invalidated.  *Jenkins*, 179 F.3d at 27.  Since the plaintiff in *Jenkins* was not attacking the fact or length of his confinement, either directly or indirectly, it was not necessary for him to invalidate the prison hearing officer's judgment against him prior to bringing a section 1983 claim for damages.  *Id.*
    Notwithstanding the rule announced in *Balisok* and carried over into the Supreme Court's later decision in *Mohammad*, the Second Circuit has clarified that if, as a prerequisite for maintaining his section 1983 action, a prisoner agrees to abandon, once and for all, the portion of his challenge directed to the duration of incarceration, then success in the section 1983 action will have no affect on the sanctions that relate to the length of time served in prison, and, accordingly, the inmate can proceed with pursuit of a due process claim.  *Peralta v. Vasquez*, 467 F.3d 98, 105 (2d Cir. 2006), *cert. denied sub nom.*, *Jones v. Peralta*, 551 U.S. 1145 (2007).  Under *Peralta's* limited exception to the rule in *Balisok*, in order to pursue his section 1983 due process claim in this action, plaintiff must therefore abandon – not just at present, but for all time – any claims he may have with respect to the duration of his confinement that arise out of the proceeding now challenged.  *Id.* at 104.

13

cognizable claim under section 1983 may lie, notwithstanding the fact that plaintiff received the full panoply of procedural due process rights guaranteed under the Fourteenth Amendment, and he was found guilty of the disciplinary charge. *See Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988) ("An act in retaliation for the exercise of a constitutional right is actionable under section 1983 even if the act, when taken for different reasons, would have been proper." (quotation marks and alterations omitted)); *accord*, *Holmes v. LeClair* , No. 09-CV-0437, 2012 WL 5880360, at *9 (N.D.N.Y. Oct. 11, 2012) (Baxter, M.J.), *report and recommendation adopted by* 2012 WL 5880690 (McAvoy, J.).

In sum, I conclude that, in the event plaintiff prevails, and it is determined that defendants Johnston and Boll conspired to issue a misbehavior report to Guillory out of retaliatory animus, such a finding would not, on its own, undermine plaintiff's conviction on the disciplinary charge. Accordingly, I recommend a finding that plaintiff's retaliation claim in this action is not barred by the rule in *Heck* and *Balisok*, and the portion of defendants' dismissal motion regarding this issue be denied.

C.    Retaliation

Defendants' motion does not directly challenge the merits of plaintiff's retaliation claim. Implicit in their motion, however, is the contention that the complaint fails to allege sufficient facts to give rise to a cognizable retaliation cause of action.

A section 1983 retaliation claim lies when prison officials take adverse action against an inmate, motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment.  *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.").  To state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist.*

*Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.). "[P]rison officials' conduct constitutes an 'adverse action' when it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

In this instance, the allegations in plaintiff's complaint are sufficient to satisfy the first and second elements of a retaliation claim by alleging that, as a result of his filing a civil rights lawsuit against defendant Boll, and various grievances concerning events at Bare Hill, defendants issued a false misbehavior report against him, which resulted in, *inter alia*, SHU confinement. Complaint (Dkt. No. 1) at ¶ 19. It is well settled that the filing of grievances and lawsuits constitutes protected activity for purposes of a First Amendment retaliation analysis. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right."); *Colon v. Coughlin,* 58

F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances."). Similarly, the Second Circuit has determined that a prison official's filing of a false misbehavior report against an inmate out of retaliatory animus constitutes adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 381 ("[The plaintiff] has sufficiently alleged . . . adverse action on the part of the defendants – the filing of false misbehavior reports against [him] and his sentence of three weeks in keeplock – that would deter a prisoner of ordinary firmness from vindicating his . . . constitutional rights through the grievance process and the courts[.]").

Plaintiff's complaint also pleads sufficient facts to satisfy the third, causation element of a retaliation analysis. In the context of the issuance of disciplinary charges alleged to have been prompted by retaliatory animus, analysis of the causation element is informed by several relevant factors, including "(1) the temporal proximity between the protected activity and the alleged retaliatory act, (2) the inmate's prior good disciplinary record, (3) vindication at a hearing on the matter, and (4) statements by the defendant concerning his . . . motivation." *Jean-Laurent v. Lane*, No.

17

11-CV-0186, 2013 WL 600213, at *8 (N.D.N.Y. Jan. 24, 2013) (Dancks, M.J.), *report and recommendation adopted by* 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013) (Mordue, J.).  Liberally construed, Guillory's complaint alleges that causation is premised upon the close proximity in time between the grievances filed by him and the issuance of the allegedly retaliatory false misbehavior report.  *See* Complaint (Dkt. No. 1) at ¶¶ 12, 13 (alleging that he filed a grievance against Sergeant Carry on October 30, 2012, and defendant Johnston issued the false misbehavior report against plaintiff on October 31, 2012).  Such an allegation, even standing alone, is sufficient to satisfy the causation element.  *See Linares v. Mahunik*, No. 05-CV-0625, 2006 WL 2595200, at *10 (N.D.N.Y. Sept. 11, 2006) (Sharpe, J., *adopting report and recommendation by* Treece, M.J.) (denying the defendant's motion to dismiss for failure to state a claim, where the plaintiff's retaliation claim arose from allegations that he filed a grievance on April 17, 2005, and he was issued a misbehavior report the next day).  In this case, plaintiff's contention concerning causation is bolstered by his claim that Corrections Officer Trembly told him that he was being retaliated against by facility staff, and that the retaliation was orchestrated by defendant Boll in response to Guillory's lawsuit against

18

her.  These allegations, especially when considered together, are sufficient at this juncture to establish a plausible retaliation claim.  Accordingly, I recommend that this claim survive defendants' motion to dismiss.

### D.  Personal Involvement of Defendant Boll

In their motion, defendants next challenge the sufficiency of plaintiff's allegations concerning defendant Boll's role in the allegedly retaliatory issuance of a false misbehavior report.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

In this instance, plaintiff alleges that defendant Boll orchestrated the retaliation against him in response to having filed a suit against her, and for filing grievances against Bare Hill facility staff.  Complaint (Dkt. No. 1)

at ¶ 25.  In light of plaintiff's pending civil rights lawsuit against defendant

Boll, I find that this allegation is sufficient to plausibly suggest defendant

Boll's personal involvement, notwithstanding however skeptical the court is

of plaintiff's ability to substantiate that allegation.  I therefore recommend

that this portion of defendants' motion be denied.

      E.    <u>Sanctions</u>

      In a one-page application, filed with the court on March 18, 2013,

plaintiff requests the issuance of sanctions against defendants' counsel

pursuant to Rule 11 of the Federal Rules of Civil Procedure.  Dkt. No. 23.

In support of his motion, plaintiff argues that defense counsel intentionally

misled the court when he represented that plaintiff had not filed a

proceeding under New York Civil Practice Law and Rules Article 78 to

challenge the disciplinary determination that is at the heart of this action.

*Id.*  Plaintiff characterizes defendants' motion to dismiss as "bogus" based

on this misrepresentation, and he requests the motion be dismissed for

that reason alone.  *Id.*  Defendants oppose plaintiff's application and

request an order sanctioning the plaintiff for bringing a frivolous sanctions

motion.  Dkt. No. 29.

      Rule 11(a) of the Federal Rules of Civil Procedure requires that

pleadings, motions, and other papers filed by a court be signed, either by

an attorney of record or, if the party is unrepresented, by the *pro se*

litigant.  Fed. R. Civ. P. 11(a); *see Brown v. Goord*, No. 06-CV-0321, 2006

WL 3257438, at *1 (N.D.N.Y. Nov. 9, 2006) ("Rule 11 of the Federal Rules

of Civil Procedure stipulates that every pleading, written motion, and other

paper, if the party is not represented by an attorney, must be signed by

the party.").  By signing such a paper, including a written motion, the

attorney or party certifies to the court, among other things, that,

> to the best of the person's knowledge, information
> and belief, formed after an inquiry reasonable under
> the circumstances:
>
> > (1)    it is not being presented for
> >        any improper purpose, such
> >        as to harass, cause
> >        unnecessary delay, or
> >        needlessly increase the cost
> >        of litigation;
> >
> > (2)    the claims, defenses, and
> >        other legal contentions are
> >        warranted by existing law or
> >        by a non-frivolous argument
> >        for extending, modifying, or
> >        reversing existing law or for
> >        establishing new law;
> >
> > (3)    the factual contentions have
> >        evidentiary support or, if
> >        specifically so identified, will

> likely have evidentiary support
> after a reasonable opportunity
> for further investigation or
> discovery[.]

Fed. R. Civ. P. 11(b); *see Perry v. Fischer,* No. 08-CV-0602, 2010 WL 1235611, at *4 (N.D.N.Y. Mar. 2, 2010) (Baxter, M.J.), *report and recommendation adopted by* 2010 WL 1235677 (Kahn, J.).

Rule 11 requires that a motion for sanctions be served upon the offending party or counsel at least twenty-one days prior to its filing with the court. Fed. R. Civ. P. 11(c)(2); *see Perry*, 2010 WL 1235611, at *4 (citing cases). This safe harbor provision is designed to provide the allegedly offending party with the opportunity to cure the defect and avoid the imposition of sanctions by withdrawing or correcting the material at issue. *Perry*, 2010 WL 1235611, at *4.

In this case, plaintiff's notice to Assistant Attorney General Goglia advising of his intention to pursue a request for sanctions is dated March 4, 2013. Dkt. No. 29-2. On March 18, 2013, the court received plaintiff's letter motion seeking the imposition of sanctions against Attorney Goglia, and the letter is dated March 4, 2013. *Id.* In light of the prisoner mailbox rule, the letter motion is deemed filed on the date appearing on its face,

which, in this case, in March 4, 2013.[5]  *Id.*  Accordingly, plaintiff has failed

to comply with the safe harbor provisions set forth in Rule 11, and his

motion is subject to denial on this procedural basis alone.[6]

Turning to the merits, "to demonstrate a Rule 11 violation, the

moving party must make 'a showing of objective unreasonableness' on the

part of the attorney that made the submission in question."  *Adams v.*

*Loreman*, No. 07-CV-0452, 2012 WL 555095, at *3 (N.D.N.Y. Feb. 21,

2012) (Kahn, J.) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579

F.3d 143, 150 (2d Cir. 2009)).  Although I am recommending that

defendants' motion to dismiss ("the submission in question") be denied,

such a denial does not alone suggest that it was an objectionably

_____

[5]      In this circuit, a motion or pleading filed by a *pro se* prison inmate is
deemed filed on the date that he turned the pleading over to the prison officials for
mailing.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a *pro se*
prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to
the prison authorities for forwarding to the court clerk," rather than when it is received
by the court clerk); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (applying *Houston*,
which was a habeas corpus case, to cases arising under section 1983); *Torres v. Irvin*,
33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998) ("Absent evidence to the contrary, the Court
assumes that the prisoner gave his petition to prison officials for mailing on the date
that he signed it." (alterations omitted)); *accord*, *McPherson v. Burge*, No. 06-CV-1076,
2009 WL 1293342, at *9 (N.D.N.Y. May 5, 2009) (Suddaby, J.) (citing cases); *but see*
*Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (suggesting that the
operative filing date is that on which the court clerk receives the pleading).

[6]      Even assuming that plaintiff's motion is deemed to have been filed on the
date the court clerk received it (March 18, 2013), it would still fail to comply with the
twenty-one-day safe harbor provision of Rule 11.

unreasonable motion to file, and therefore warrants the imposition of sanctions. Indeed, the arguments presented in defendants' motion were entirely colorable under the circumstances. In addition, plaintiff has made no factual allegations to support a finding that the defendants' motion was presented for improper purposes, nor has he even made such an allegation in his request for sanctions. *See generally* Dkt. No. 23. For these reasons, I recommend a finding that the defendants' motion to dismiss was objectively reasonable and thus does not warrant the imposition of sanctions.

Plaintiff's sanctions motion also alleges that Attorney Goglia made a misrepresentation to the court when he stated that the plaintiff's disciplinary determination was never challenged in an Article 78 proceeding when, in fact, plaintiff initiated such a proceeding, and it remains pending in state court. Dkt. No. 23. In their memorandum in support of the motion to dismiss, defendants represented that "[i]t does not appear that the [plaintiff's] disciplinary determination ever has been challenged in a state court proceeding brought pursuant to Article 78 of New York's CPLR." Defs.' Memo. of Law (Dkt. No. 12-1) at 5. Later on in that memorandum, defendants again note, "[a]s stated above, however,

plaintiff's disciplinary hearing was affirmed on appeal, and was never challenged in a CPLR Article 78 proceeding, and was never reversed, expunged, declared invalid or otherwise called into question." *Id.* at 10. The portion of this statement representing that plaintiff "never challenged" his disciplinary hearing conviction in an Article 78 proceeding has been proven inaccurate by plaintiff's motion. Dkt. No. 23; Dkt. No. 20-1 at 96-146. That assertion, however, was not pivotal to defendants' motion to dismiss. Instead, the more critical allegation is that plaintiff's disciplinary conviction has never been reversed, expunged, declared invalid, or otherwise called into question, made in connection with defendants' *Heck* and *Balisok* argument. To date, that allegation appears to remain factual, and while the court does not condone misstatements, it also recognizes that mistakes happen. It is clear, both upon the court's knowledge and based upon the defendants' submission, that plaintiff's Article 78 proceeding is being defended by attorneys assigned to a different office of the New York State Attorney General, and is not being handled by Attorney Goglia. Under the circumstances, the court finds no basis to sanction Attorney Goglia based upon the misstatement made in his motion papers.

Finally, in opposition to plaintiff's motion for sanctions, defendants suggest that plaintiff interposed the motion for improper purposes, and they request the court to impose sanctions against plaintiff. Dkt. No. 29 at 10-12. The language utilized in the motion pending before me, and the fact that plaintiff has a history of sending letters to New York State Attorney General Eric Schneiderman and other assistant attorneys general not appearing in this action concerning Attorney Goglia give rise to a suspicion that plaintiff intends to embarrass and intimidate Attorney Goglia. Goglia Decl. Exh. C (Dkt. No. 29-1). Such conduct serves no useful purpose. The court expects that plaintiff, defendants, and defendants' counsel will all conduct themselves civilly, and with an eye toward achieving an efficient and just resolution of this action. Although I do not recommend the imposition of sanctions against the plaintiff at this juncture, he should be aware that the submission of frivolous motions and submissions, or other filings for improper purposes, could result in sanctions under Rule 11, which can include an award of attorney's fees or even dismissal of his complaint in extreme circumstances. *See* Fed. R. Civ. P. 11(c); *see Perry*, 2010 WL 1235611 at \*4.

F.    Plaintiff's Motion for Summary Judgment

In addition to filing a motion for sanctions against defense counsel,

plaintiff has moved for summary judgment in his favor with respect to the

retaliation claim set forth in his complaint.  Dkt. No. 24.  In response,

defendants cite the fact that this case is in its infancy, issue has not yet

been joined, nor discovery conducted, and invoke Rule 56(d) of the

Federal Rules of Civil Procedure, requesting an opportunity to conduct

discovery before having to oppose plaintiff's motion.  Dkt. No. 31-3.

The Second Circuit has explained that, ordinarily, "summary

judgment should be granted if after discovery, the nonmoving party has

failed to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof."  *Hellstrom v. U.S. Dep't of*

*Veterans Affairs*, 20 F.3d 94, 97 (2d Cir. 2000) (quotation marks and

alterations omitted).  Before granting summary judgment, a court should

insure that the non-moving party has "had the opportunity to discovery

information that is essential to his opposition to the motion for summary

judgment."  *Hellstrom*, 20 F.3d at 97 (quotation marks omitted).  "Only in

the rarest of cases may summary judgment be granted against a [party]

who has not been afforded the opportunity to conduct discovery."  *Id.*

(citing *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995)).

Rule 56(d) of the Federal Rules of Civil Procedure "addresses cases where a litigant opposing summary judgment requests additional discovery." *Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3, 6-9 (N.D.N.Y. 2000) (McAvoy, J.). The rule provides that,

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). It was designed to afford a non-moving party with a fair opportunity to engage in discovery before having to oppose a summary judgment motion.

To successfully assert a Rule 56(d) defense to a summary judgment motion, the non-movant "must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine [dispute] of material fact, (3)

what effort the affiant has made to obtain those facts, and (4) why [those efforts were] unsuccessful[.]" *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 422 (2d Cir. 1989) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 925-27 (2d Cir. 1985)); *accord*, *Crystalline H20, Inc.*, 105 F. Supp. 2d at 6; *Young v. Corbin*, 889 F. Supp. 582, 584-85 (N.D.N.Y. 1995) (McAvoy, J.).

In this instance, defendants' counsel has satisfied the requirements of Rule 56(d) by providing a declaration outlining the evidence that defendants intend to develop in order to oppose plaintiff's motion for summary judgment. Dkt. No. 31-1. For example, defendants' counsel states that defendants must be provided the opportunity to engage in discovery to determine whether a causal connection exists between the grievances plaintiff filed at Bare Hill, and the misbehavior report issued against him by defendant Johnston. *Id.* at ¶ 7. In addition, counsel's Rule 56(d) declaration explains that defendants intend to depose plaintiff. *Id.* at ¶ 8. Accordingly, I find that defendants have complied with the requirements of Rule 56(d).

I note, moreover, that this case is in its infancy. Defendants have not yet answered and detailed their defenses to plaintiff's claims, nor has

the court issued its standard Rule 16 scheduling and discovery order directing the parties to exchange certain information concerning plaintiff's claims. Under these circumstances, and because defendants have adequately represented their need to engage in discovery, I recommend that plaintiff's motion for summary judgment be denied, without prejudice, as premature.

## IV.   SUMMARY AND RECOMMENDATION'

In his sole remaining claim in this case, plaintiff asserts that a misbehavior report, resulting in a finding of guilt and the imposition of disciplinary SHU confinement, was issued to him in retaliation for his having filed grievances at Bare Hill and sued one of the two named defendants. At this juncture, I find that plaintiff alleges sufficient facts that give rise to a plausible retaliation cause of action, and the allegations are sufficient to plausibly suggest the personal involvement of defendant Boll. I further conclude plaintiff's failure to have his disciplinary conviction overturned does not necessarily undermine his claim of retaliation in this instance. I therefore recommend that defendants' motion to dismiss be in denied in all respects.

Turning to plaintiff's motion for sanctions, I conclude that, while I

have recommended denial of defendants' dismissal motion, it was not objectively unreasonable, nor do I find a basis to recommend that defendants' counsel be sanctioned based upon his failure to uncover and disclose to the court the fact that plaintiff has filed an Article 78 proceeding challenging the disciplinary determination in question. I also conclude that plaintiffs' motion for summary judgment is premature, and recommend that it be denied in order to permit the parties to engage in appropriate discovery before the motion may be renewed.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss plaintiff's complaint (Dkt. No. 12) be DENIED, that plaintiff's motion for sanctions against defendants' counsel (Dkt. No. 23) be DENIED, and that plaintiff's motion for summary judgment (Dkt. No. 24) be DENIED, without prejudice to renewal following the completion of discovery in this action.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     August 29, 2013
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Reginald HOLMES, Plaintiff,
v.
Darwin LECLAIR,[FN1] Supt., Franklin Correctional
Facility; Jhonny White, C.O., Franklin Correctional
Facility; Peter Gray, C.O., Franklin Correctional
Facility; JOhn Doe, Male Nurse; Sgt. Hammond;[FN2]
Beashard,[FN3] C.O.; Reardon, C.O., Defendants.

FN1. This defendant's name is spelled "LaClair,"
and the court will refer to defendant with the
proper spelling of his name.

FN2. Plaintiff often spells this defendant's name
"Hamond," however, his name is actually spelled
"Hammond," and the court will refer to him with
the proper spelling of his name.

FN3. This officer's name is spelled "Brassard,"
and the court will refer to this defendant with the
proper spelling of his name.

No. 9:09–CV–0437 (TJM/ATB).

Oct. 11, 2012.

Reginald Holmes, pro se.

Aaron M. Baldwin, AAG, for the Defendants.

**REPORT and RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.
**\*1** This matter was referred for Report and
Recommendation, pursuant to 28 U.S.C. § 636(b) and
Local Rules N.D.N.Y. 72.3(c), by the Honorable Thomas
J. McAvoy, Senior United States District Judge.

In his amended complaint, plaintiff alleges that
defendants have retaliated against plaintiff by harassing
him and by filing false misbehavior reports at the behest

of defendant White because plaintiff was a witness for
another inmate against defendant White and because
plaintiff later filed grievances against defendant White.
(AC; Dkt. No. 19). Plaintiff also claims that he was
assaulted by defendants Hammond, Brassard, and Reardon
on July 1, 2008; his "religious rights" were violated during
a strip search; and he was transferred to Upstate Special
Housing Unit ("SHU") "as further punishment." (AC ¶¶
11–12, 14). Plaintiff states that the "nurse failed to report
my complaints and injuries that were obviously [shown]
on my body." (AC ¶ 13). Plaintiff seeks substantial
monetary relief and unspecified injunctive relief. (AC ¶
25).

Presently before the court is plaintiff's motion for
summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt. No.
71). Defendants oppose plaintiff's motion and have
cross-moved for summary judgment. (Dkt. No. 74).
Plaintiff asked for, and was granted, an extension of time
within which to respond to defendants' motion. (Dkt. No.
77 & Text Order dated July 16, 2012). My order gave
plaintiff until August 31, 2012 within which to file his
response, and afforded defendants until September 14,
2012 to file any reply. (Text Order dated July 16, 2012).
Plaintiff did not file a response, and by letter dated
September 13, 2012, defendants state that due to plaintiff's
failure to file a response by the court-ordered deadline,
defendants would not be filing a formal reply. (Dkt. No.
78). Thus the summary judgment motions are fully
submitted, and ready for decision.

**DISCUSSION**

**I. FACTS**
**A. Plaintiff's Allegations**

Plaintiff first alleges in his amended complaint that he
and Inmate Pryor were issued false misbehavior reports on
June 2, 2008 [FN4] because they "testfied," against defendant
White, on behalf of Inmate Duckett, who was allegedly
assaulted by defendant White.[FN5] (AC ¶ 3). Plaintiff then
claims the abuse "seemed to clearly start" and that he
became the "target" of White's harassment when defendant

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

White "found out" that plaintiff had a pending law suit against the New York Police Department ("NYPD") for "abuse" and "violations" that plaintiff suffered at the hands of the NYPD in Brooklyn.[FN6] (AC ¶ 4).

> FN4. Plaintiff's misbehavior report was written by Officer Barse, who is not a defendant, but who plaintiff claims maintained a "close" relationship with defendant White. (AC ¶ 3).

> FN5. Plaintiff does not specify at what kind of a proceeding he and Inmate Pryor testified, although later in the amended complaint, he states that he was a witness for two different inmates who filed grievances against defendant White. Thus, the court assumes that plaintiff testified at a grievance hearing.

> FN6. Plaintiff claims that defendant White discovered plaintiff's lawsuit because defendant White was often instructed to send plaintiff to the "hospital" to participate in telephone conferences regarding his case. (AC ¶ 4).

Plaintiff states that defendant White's first act of retaliation was "fabricating" a misbehavior report against Inmate Pryor because Pryor filed a grievance against White in June, and plaintiff was a witness for Inmate Pryor's grievance. (AC ¶ 5). Plaintiff claims that the harassment was mostly verbal, including threats to "set plaintiff up" for being a witness against White. (AC ¶ 5). Plaintiff states that he began to feel "uncomfortable" in his housing unit, and he states he filed a grievance against defendant White on June 21, 2008. (AC ¶ 5). On the same date, defendant White filed a false misbehavior report against plaintiff. (AC ¶¶ 5–6). Plaintiff states that on June 28, 2008, he wrote a letter to the Superintendent, defendant LaClair. (Id.) On July 1, 2008, plaintiff claims that Officer Peter Gray, "defendant White's co-worker," wrote a false misbehavior report against plaintiff. (AC ¶ 6). Plaintiff claims that he was the subject of four allegedly false misbehavior reports within a thirty-day period. (Id.)

*2 Plaintiff alleges that his "entire defense during the Disciplinary Hearing," resulting from the June 21st misbehavior report, was that he was innocent of the charges, and that defendant White and the other officers were retaliating against plaintiff for his testimony on behalf of inmates who filed grievances against defendant White. (AC ¶ 7). Plaintiff states that defendant Superintendent LaClair "neglected his duties as an overseer of his employees" and ignored prisoners' complaints about his officers. (AC ¶ 8).

Plaintiff claims that defendant LaClair did not respond to plaintiff's June 28th letter, but that on June 29 or 30, 2008, plaintiff was called to the school building and questioned in a "nasty and abusive" manner by defendant Hammond, who was "[supposedly]" investigating the grievance.[FN7] (AC ¶ 9). Plaintiff states that defendant Hammond "threatened" plaintiff by telling him that he would be "locked up" if any of plaintiff's witnesses reported anything "different" concerning plaintiff's allegations. (Id.) Plaintiff claims that defendant Hammond interviewed all the witnesses in a "threatening fashion," causing them all to refuse to testify for plaintiff. (Id.)

> FN7. The court assumes that plaintiff is referring to the June 21 st grievance because that is the only grievance he had written by that time.

On July 1, 2008, plaintiff claims that defendant Hammond came into plaintiff's dormitory and "roughly dragged" plaintiff out of his cube.[FN8] (AC ¶ 10). Plaintiff claims that his arm was twisted behind his back, and he was snatched by the back of his neck by defendants Hammond, Brassard, and Reardon, who then dragged plaintiff out of the dormitory in "a humiliating manner." (Id.) Plaintiff claims that these officers then pushed his face against a wall and punched him in the ribs and back. Sergeant Hammond squeezed plaintiff's face with both hands, "threateningly" asked plaintiff if he wanted to "do anything" before they put the handcuffs on him, and then smacked him in the back of the head. (AC ¶ 11). Plaintiff was then placed in a van and driven to the Special Housing Unit ("SHU"). When they arrived at the SHU, plaintiff claims that he was snatched by the throat by defendant Brassard, who then threw plaintiff against the wall, pushing on his ribs. (Id.)

> FN8. Within the dormitory, plaintiff's housing

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

unit is referred to as his "cube."

Finally, plaintiff claims that he was "sexually humiliated" during the strip search upon his admission to SHU. (AC ¶ 12). In addition, plaintiff claims that defendant Reardon hit him in the back of the head while plaintiff was naked. Plaintiff states that his "religious beliefs" were violated because of the defendants' actions. (*Id.*) Plaintiff claims that he complained about the injury to the left side of his rib cage, where the "bone was protruding out out of the rib area." (AC ¶ 13) However, plaintiff claims that the "nurse" failed to report plaintiff's obvious injuries and complaints. (*Id.*)

Plaintiff was issued a misbehavior report on July 1, 2008 by defendants White and Gray. (AC ¶ 15). He states that he lost good time as a result of this misbehavior report. (*Id.*) Plaintiff claims that he was later transferred to the Upstate Correctional Facility SHU as further punishment and retaliation by defendants LaClair, White, Reardon, Gray, and Brassard. (AC ¶ 14). Plaintiff claims that he sent letters to the Inspector General and the Commissioner, but he got no responses, nor was any investigation conducted regarding his allegations. (*Id.*) Plaintiff then states that all the falsified misbehavior reports diminished plaintiff's chances of being released on parole. (*Id.*)

**B. Defendants' Evidence**

**\*3** In support of their motion for summary judgment, defendants have submitted the declaration of defendant Darwin LaClair and the documents associated with the disciplinary hearings that plaintiff alleges were retaliatory. (Dkt. No. 74–3 (LaClair Decl.), 74–4–74–11, 74–16–74–17; Exs. A–H,[FN9] M–O (Disciplinary Records)). Defendants have included the grievances plaintiff wrote while he was incarcerated at Franklin Correctional Facility, together with the documents related to those grievances. (Dkt. No. 74–12–74–15, 74–21; Exs. I–L, R (Grievance Docs.)) Defendants have submitted plaintiff's Ambulatory Health Record ("AHR") dated July 7, 2008, reflecting an examination prior to entering SHU, and AHRs, dated July 15 and 16, 2008, reflecting an examination at Franklin, prior to plaintiff's transfer, and an examination at Upstate, after his transfer to that facility.

(Dkt. No. 75).

> FN9. A review of the docket sheet shows that there are documents that should be labeled Defendants' Exs. G and H, but they are not so labeled. To avoid any confusion, the court will also refer to the documents by the number that was assigned to them by the court's electronic filing system (CM/ECF).

Defendants have filed the "Statement of Material Facts" required by Local Rule 7.1(a)(3). (Dkt. No. 74–2). Plaintiff has not filed a Statement of Material Facts and has not responded to the defendants' motion.[FN10] Instead of repeating all the facts that the defendants have submitted, the court will cite to the relevant exhibits, as well as relevant parts of defendant LaClair's declaration, during the analysis of the parties' motions for summary judgment.

> FN10. As defendants argue, plaintiff's motion for summary judgment is defective in many respects and could be denied simply because he did not file the required documents. However, due to the liberality with which pro se pleadings are treated, the court will not recommend denying plaintiff's motion on that technical basis alone. Defendants have submitted a properly supported motion, and the court will proceed to consider the merits.

**II. *SUMMARY JUDGMENT***

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

court of the basis for the motion and identifying the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006) (citing *Celotex Corp.,* 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id.*

**\*4** If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.* A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Additionally, while a court " 'is not required to consider what the parties fail to point out,' " the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted).

### III. *CAUSES OF ACTION*

In order to properly discuss the merits of plaintiff's amended complaint, I will clarify the plaintiff's claims. The amended complaint has a section entitled "Breach of Duty to Protect." (AC ¶ 16(A)–16(D)). Within four subsections, plaintiff appears to be summarizing all his claims. Plaintiff then lists three "Causes of Action," including retaliatory treatment for filing grievances; conspiracy and excessive force; denial of adequate

medical care; and sexually humiliating strip search. (AC ¶¶ 17–23).

> FN11. Although plaintiff claims that defendant LaClair failed to take "corrective action," there is no claim that defendant LaClair was aware of, and was deliberately indifferent to, a serious risk of harm to plaintiff prior to the excessive force incidents. *See Farmer v. Brennan,* 511 U.S. 825, 836–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (The plaintiff must show that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety). The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.* In this case, there are no allegations that any of the defendants failed to protect plaintiff, thus, the court will focus on plaintiff's claims of excessive force. The amended complaint also has a cause of action that purports to be based on "Municipal Liability." (AC ¶¶ 19–20). Plaintiff is suing individuals who work for the State of New York, not a municipality, thus, municipal liability claims do not exist.

The court has read plaintiff's statements and has interpreted his claims as follows:

(1) Defendants White and Gray harassed plaintiff, filed false misbehavior reports, and transferred plaintiff to Upstate in retaliation for the exercise of his first amendment rights to file grievances, to testify on behalf of another inmate, and to file court actions.

(2) On July 1, 2008, plaintiff was subjected to excessive force by defendants Hammond, Brassard, and Reardon, and later subjected to a sexually degrading strip search by the same three defendants, in violation of the First, Eighth and Fourteenth Amendments. Plaintiff may also be claiming that the excessive force was related to the retaliation, and he alleges that these three defendants were involved in his retaliatory transfer.

(3) Defendant LaClair failed to take corrective action against the above violations and was also involved in

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

the allegedly retaliatory transfer.

(4) Plaintiff was denied constitutionally adequate medical care.[FN12]

> FN12. In the body of the complaint, plaintiff only alleges that the "nurse" did not report plaintiff's "obvious" injuries after the alleged assault. (AC ¶ 13). In his paragraph entitled "Breach of Duty to Protect," plaintiff alleges that defendants Hammond, Bressard, and Reardon participated in the denial of medical care, but there is no indication of how these defendants denied plaintiff medical care after the incident since plaintiff states that he was examined by the "nurse," who allegedly failed to report his injuries. The one additional paragraph discussing medical care does not elaborate on the claim and is impossible to understand. (AC ¶ 23). Defendants do not address the medical care claim because the nurse was never identified and is not a defendant in this action. Based on the evidence presented, and plaintiff's failure to respond to the defendants' motion, the court will recommend dismissal of this claim sua sponte.

## IV. *EXHAUSTION OF ADMINISTRATIVE REMEDIES*

### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)) (exhaustion requirement applies, *inter alia,* to excessive force claims). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*5** The failure to exhaust is an affirmative defense

that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp.Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d).

The regulations contain an expedited procedure for inmate allegations of harassment or other misconduct by staff. *Id.* § 701.8. Grievances based upon claims of harassment are forwarded directly to the superintendent, who determines whether the grievance presents a bona fide harassment issue. *Id.* § 701.8(a)-(c). If appropriate, the superintendent may request an investigation by the Inspector General's Office and must render a decision within twenty-five calendar days of receiving the grievance. *Id.* § 701 .8(d)-(f). An inmate may appeal the superintendent's decision to the CORC within seven calendar days of receiving the decision, and if no decision is rendered within twenty-five calendar days, the inmate may appeal the grievance directly to the CORC without a decision by the superintendent. *Id.* § 701.8(g). A final decision by the CORC is required in order to exhaust

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

administrative remedies. *Torres v. Carry,* 672 F.Supp.2d 338, 344 (S.D.N.Y.2009).

At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[FN13] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

> FN13. *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

**\*6** Although the Second Circuit has not explicitly held that *Hemphill* remains good law after *Woodford,* it has applied the three-part inquiry in recent cases. *See, e.g., Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009); *Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011). *See also Toliver v. Dep't of Corrections N.Y.C.,* No. 10 Civ. 5807, 2012 WL 4044627, at \*3 n. 4 (S.D.N.Y. Sept.11, 2012) (discussing the absence of a Second Circuit ruling on this issue).[FN14]

FN14. This court also notes that, based upon the concurring opinion in *Woodford,* it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford,* Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford* ] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 548 U.S. at 104 (Breyer, J. concurring) (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates." Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

Tier II disciplinary proceedings are exhausted by appealing to the Superintendent. N.Y. Comp.Codes R. & Regs., tit. 7 § 253.8. Tier III disciplinary hearings, known as Superintendent's Hearings, are appealed to the Commissioner. *Id.* § 254.8. The *results* of disciplinary hearings are not "grievable." *Id.* § 701.3(e) (1)-(2). Courts have questioned whether including information in a disciplinary appeal regarding the challenged conduct is sufficient to satisfy the exhaustion requirement. *See Johnson v. Testman,* 380 F.3d at 697. The essence of the exhaustion requirement is that the inmate must provide "enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures. *Id.*

In *Johnson,* the Second Circuit held that whether or not the plaintiff's disciplinary appeals were enough to "alert" the defendants to the nature of the alleged wrong was not clear. The Second Circuit sent the case back to the District Court to determine whether plaintiff was justified in raising his complaint about the defendant in his disciplinary appeal, rather than filing a separate grievance,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

and whether the plaintiff's description of the defendant's conduct in the disciplinary appeal was sufficient to afford corrections officials time an opportunity to address the complaints internally. *Id.* at 698 (quoting *Porter,* 534 U.S. at 525).

**B. Application**

Defendants argue that the majority of plaintiff's First Amendment claims are unexhausted. Based on the above-cited case law, the court will examine plaintiff's grievances as well as his disciplinary hearings to determine whether he sufficiently alerted the state officials to the nature of the alleged wrongs.

**1. Grievances and Letters**

Plaintiff's first grievance was filed against defendant White after the June 21, 2008 misbehavior report, in which defendant White charged plaintiff with being "untidy," with harassment, and with violating a direct order in conjunction with a disagreement over how plaintiff cleaned his cube. The grievance complained that defendant White used profanity, and stated that defendant White filed the misbehavior report against plaintiff because "he knew [plaintiff] would write [White] up because I have warned him several times in the past 2–months to stop disrespecting me and cursing at me. To justify [himself] C.O. White took my I.D. and placed me on keeplock pending." (Dkt. No. 74–13 at 1).

**\*7** Because the grievance alleged staff misconduct, it was sent to defendant LaClair pursuant to the regulations. On June 30th, Sergeant Hammond interviewed plaintiff and his witnesses. (Dkt. No. 74–13 at 5). Sergeant Hammond interviewed defendant White on July 1, 2008. (*Id.*) Sergeant Hammond found the grievance without merit. (*Id.*) The Superintendent denied the grievance, but plaintiff did not appeal to the CORC. There was no claim of retaliation for the exercise of any first amendment rights in the grievance.

On June 28, 2008, plaintiff wrote a letter to both defendant Superintendent Darwin LaClair and Deputy Commissioner Lucien J. LeClaire, Jr.[FN15] (Dkt. No. 74–14 at 1–7). In this letter (the same letter was sent to both individuals), plaintiff complained about the cleaning incident, and this time, made additional statements, alleging that defendant White threatened plaintiff with

"lockdown" for "whatever I can set you up for." (Dkt. No. 74–14 at 2). In the letter, plaintiff also states that "suddenly today," defendant White found "shanks" near his own "area," but that plaintiff was sure that defendant White would find "a shank or some type of weapon in my cube, or one of my witnesses." (*Id.*) Plaintiff stated that he felt "very threatened" by defendant White, however, there was no claim in plaintiff's June 28th letter that White was retaliating against plaintiff for the exercise of his first amendment rights.

FN15. Notwithstanding the similarity of the two names, these individuals are two different people.

Plaintiff's June 28th letter to Superintendent LaClair was referred to Lieutenant Larry, and Sergeant DeShane investigated the accusations, finding that plaintiff's grievance was "in retaliation" for the June 21st misbehavior report that defendant White issued against plaintiff. (Dkt. No. 74–14 at 3). Deputy Commissioner LeClaire referred plaintiff's letter to Norman Bezio, the Director of Special Housing/Inmate Disciplinary Programs, for "response." (Dkt. No. 74–14 at 5). Mr. Bezio referred the letter back to defendant LaClair, stating that allegations of staff misconduct should be directed to facility officers through the established grievance mechanism or by writing to the Superintendent. (*Id.*) Although the letters also resulted in an investigation, plaintiff did not properly complete the administrative remedy procedure when he failed to get a satisfactory result from grievance .[FN16] Plaintiff never claimed that White was retaliating against him for the NYPD law suit or because plaintiff testified for Inmate Pryor against defendant White.

FN16. It appears that the two investigations of the same incident were conducted together. Defendant White's responses are addressed to both Sergeant DeShane (Dkt. No. 74–14 at 4) and to Sergeant Hammond. (Dkt. No 74–13 at 7).

Plaintiff's second grievance was dated July 6, 2008 and filed on July 18,[FN17] after the July 1, 2008 incident that lead to another misbehavior report being filed against

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

plaintiff. (Dkt. No. 74–21; Def.s' Ex. R). Plaintiff alleges that defendant Gray came to his cell and demanded "in a nasty manner," that plaintiff give Gray his I.D. (Dkt. No. 74–21 at 28). Plaintiff claims that he was then taken out of his cell for "unknown reasons," assaulted, and then taken to SHU. In the July 6th grievance, he mentions the assault, and then states that he was assaulted again when he arrived in SHU. He claimed that he did not find out until the next day that he was being "falsely" charged with threatening an officer. (*Id.* at 30). He also stated that he received the misbehavior report in retaliation for filing a grievance against Officer White.[FN18] (*Id.* at 31). He also claimed that the conduct by Gray and White "stemmed" from his being a witness for Inmate Duckett. (Dkt. No. 74–21 at 31). However, he never mentioned the allegedly humiliating strip search, to which he was subjected prior for being admitted to SHU. (*Id.* at 28–34). Nor did plaintiff mention that the nurse did not report his injuries or that he needed or was denied proper medical treatment after the incident. (*Id.* at 29).

> FN17. Plaintiff had been transferred to Upstate Correctional Facility by the time the grievance was received by the facility officials.

> FN18. Plaintiff can only be referring to the grievance that he filed against defendant White on June 21st because that is the only other grievance he filed at Franklin, and thus, the only grievance against defendant White.

**\*8** The IGRC again passed the grievance through to the Superintendent because it alleged staff misconduct. (Dkt. No. 74–21 at 35). The Superintendent referred plaintiff's claims for investigation, but found that the grievance had no merit.[FN19] (*Id.* at 13, 10) Plaintiff did not appeal this grievance to the CORC. In his appeal to the CORC, plaintiff added the allegation that, upon his arrival at SHU, the strip search was sexually humiliating. (*Id.* at 9). The CORC found no merit to the allegations, and denied the grievance. (*Id.* at 1) In doing so, the CORC noted that "the grievant has raised a separate issue in his appeal statement that was not addressed in his original complaint. That issue could be the subject of a separate grievance." (Dkt. No. 74–21 at 1). Essentially, the CORC did not consider the plaintiff's final allegation because he

raised it for the first time in his appeal to the CORC. Plaintiff never brought a separate grievance. Thus, plaintiff did not properly exhaust his claim of sexual harassment.[FN20] Plaintiff also never brought a grievance, challenging his transfer as retaliatory. He never mentioned his transfer in the appeal of his grievance, although he attempted to add other facts to his appeal, and even though he had been transferred at the time that he filed his appeal. Thus, his claims of retaliatory transfer are unexhausted.[FN21]

> FN19. There is a typographical error in the Superintendent's denial of plaintiff's grievance. (Dkt. No. 74–21 at 10). The decision states that the grievance is found to be "with" merit, but then the grievance is denied. Thus, it is clear that the sentence should read "without" merit.

> FN20. The court notes that although, in passing, plaintiff also states that this alleged sexual impropriety violated his "religious" rights, there is no mention of religion anywhere in the plaintiff's grievances or disciplinary hearings. Thus, to the extent that plaintiff is attempting to belatedly add a First Amendment religion claim, it is unexhausted and will not be considered.

> FN21. Although an inmate may not be transferred solely in retaliation for the exercise of a constitutional right, the inmate has no constitutional right to be incarcerated in any particular correctional facility, and may be transferred for any reason, or no reason at all. *Montayne v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Sher v. Coughlin,* 739 F.2d 77, 80 (2d Cir.1984). *See Meriwether v. Coughlin,* 879 F.2d 1037, 1045 (2d Cir.1989) (officials have broad discretion to transfer inmates, but may no transfer them solely in retaliation for the exercise of their constitutional rights). Aside from his failure to exhaust his administrative remedies, plaintiff asserts only in a conclusory fashion that all the defendants were involved in his transfer. He has no basis for this statement.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

## 2. Disciplinary Hearings and Appeals

Plaintiff had four disciplinary hearings, relating to misbehavior reports that he claims in his amended complaint were filed against him in retaliation for exercising his constitutional right to act as a witness for another inmate as well as for his grievances and/or court litigation. (Dkt. No. 74–4 at 1) (Inmate Disciplinary History). During the hearing on June 12, 2008, for an incident on June 6, 2008, plaintiff stated that "for some reason," the officer [FN22] "had it in for" plaintiff and Inmate Pryor. (Dkt. No. 74–9 at 6).

> [FN22.] Officer Gray wrote the misbehavior report on June 6, 2008. Plaintiff alleges that the officers were all defendant White's friends and were helping him retaliate against plaintiff.

Defendant White filed the June 21, 2008 misbehavior report against plaintiff. At the hearing, held on June 25, 2008, plaintiff alleged that defendant White used profanity against plaintiff, and at the end of the hearing, the hearing officer stated that he would have defendant White's alleged use of profanity against plaintiff investigated. (Dkt. No. 74–11 at 5, 8, 11, 24). Plaintiff also stated that defendant White "had it out for" him. (*Id.* at 8). In his appeal from the hearing officer's determination, plaintiff alleged that defendant White filed the "false" misbehavior report in "retaliation," to cover up for his use of profanity against plaintiff, not in retaliation for grievances or other protected activity. (Dkt. No. 74–10 at 1). Plaintiff made the same statements at the disciplinary hearing that he made in his June 21, 2008 grievance regarding the alleged reason for the misbehavior report.

Plaintiff also had a disciplinary hearing as the result of the July 1st misbehavior report. The hearing officer found plaintiff guilty of the misbehavior and sentenced plaintiff to a period of time in SHU and a one month loss of good time. (Dkt. No. 74–4 at 1). During the hearing, plaintiff argued that defendant White was retaliating against plaintiff for filing grievances against him, but never mentioned that plaintiff had been a witness for another inmate's grievance against White, even though he did mention his testimony on behalf of another inmate in his July 6, 2008 grievance. (Dkt. No. 74–17 at 3). Plaintiff told the hearing officer that it was the fifth time that

defendant White used obscene language against plaintiff "and I never wrote him up before." (*Id.*) Unfortunately, the second part of the disciplinary hearing was inaudible, and could not be transcribed. (*Id.* at 5).

**\*9** The issues that appear to be exhausted are the two alleged assaults on July 1, 2008 (one on the housing unit and the second while plaintiff was being admitted to SHU on the same day) and false misbehavior reports in retaliation for filing grievances against defendant White beginning on June 25, 2008 (when plaintiff filed his first grievance against defendant White) and perhaps the claim that White was also retaliating against plaintiff because he testified on behalf of other inmates, against defendant White.[FN23] Although these are the only issues that are exhausted, the court will consider some of the other issues because there are alternative reasons for their dismissal.

> [FN23.] It is questionable whether this claim was ever brought to the state officials properly, but given the liberality with which pro se cases are treated, the court will consider that this claim is exhausted.

## V. *RETALIATION*

### A. Legal Standards

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004).

A prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if the defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

right, substantive due process rights are implicated even if the plaintiff were entitled to, and did receive, full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). Any action taken by a defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (citations omitted). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* In the disciplinary hearing context, the type of evidence required to establish a causal connection between plaintiff's protected activity and the defendant's alleged adverse action includes: temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing, and statements from the defendants regarding their motives. *Santiago v. Whidden,* No. 3:10–CV–1839, 2012 WL 668996, at *7 (D.Conn. Feb.9, 2012) (citing *Barclay v. New York,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007)).

*10 Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.* (citing, *inter alia, Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Once the plaintiff's burden of proving the three-part test is satisfied, "the burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation." *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (citing *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)). Thus, under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have

been taken based on the proper reasons alone. *Graham,* 89 F.3d at 79 (citations omitted).

**B. Application**

**1. First Three Misbehavior Reports**

In the amended complaint, plaintiff alleges that the June 2, 2008 misbehavior report was issued by Officer Barse to both plaintiff and Inmate Pryor because they testified on behalf of Inmate Duckett, who was allegedly assaulted by defendant White. (AC ¶ 3). Plaintiff also claims that this misbehavior report was filed against plaintiff because defendant White discovered that plaintiff had a pending law suit against the N.Y.P.D. Intelligence Division.[FN24] (AC ¶ 4). Filing grievances, and filing lawsuits are all protected by the First Amendment, thus, retaliation for this conduct would be actionable. *See Tafari v. McCarthy,* 714 F.Supp.2d 317, 373 (N.D.N.Y.2010) (filing grievances). However, it was unclear in 2008, and is still unclear, whether testifying on behalf of another inmate would be protected conduct. *See e.g. Pettus v. McGinnis,* 533 F.Supp.2d 337, 340 (W.D.N.Y.2008) (court found no authority in 2008 clearly establishing that an inmate's testimony on behalf of another inmate was constitutionally protected). *See also Lewis v. Johnson,* 9:09–CV–482 (TJM/ATB), 2010 WL 3785771, at *15, 22 (N.D.N.Y. Aug. 5, 2010) (Report–Recommendation) (also affording qualified immunity, notwithstanding possibility that adverse action was motivated by inmate's complaints about the treatment of another inmate), *adopted* 2010 WL 3762016 (N.D.N.Y. Sept.20, 2010).[FN25]

> **FN24.** Plaintiff cannot claim that the June 2, 2008 misbehavior report was in retaliation for filing grievances against defendant White because plaintiff's first grievance against this defendant was not filed until June 21, 2008.

> **FN25.** The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

An analysis of the other factors required for a retaliation claim shows that plaintiff cannot establish a causal connection between his protected activity and the defendants' adverse action. Additionally, a review of the disciplinary hearings shows that defendants would have taken the same action regardless of any "improper" motive in bringing the disciplinary charges.

Defendants' Exhibit C is the hearing packet for the June 4, 2008 disciplinary hearing. (Dkt. No. 74–6). The packet contains the plaintiff's misbehavior report, the disposition sheet, and a letter that plaintiff wrote to defendant LaClair the day before the hearing. (Dkt. No. 74–6 at 4, 5–7). Defendant LaClair wrote a note at the top of plaintiff's letter, stating that the letter was a "Prehearing Statement" and that it would be considered by the hearing officer at the June 4, 2008 hearing. (*Id.* at 5). Exhibit C also contains plaintiff's appeal to the Superintendent of the disciplinary hearing and the order affirming the hearing officer's finding, signed by the Superintendent's designee, Captain Williams. (*Id.* at 9).

**\*11** The court would first point out that, contrary to plaintiff's claim, Inmate Pryor was not involved in this misbehavior report, although plaintiff testified at his disciplinary hearing that Inmate Pryor was present at the time. (Dkt. No. 74–7 at 4; Def.'s Ex. D). The misbehavior report charges plaintiff with disobeying Officer Barse's order to punch out at the Tailor Shop. The report specifically states that there were *no* other inmates involved in the misbehavior. (Dkt. No. 74–6 at 4). The misbehavior report states that plaintiff was standing by the time clock five minutes after Officer Barse had given the order for all inmates to punch out, and that plaintiff held his card over the time clock for an additional 30 seconds before he punched out. Officer Barse also noticed that plaintiff punched out for another inmate, but could not determine who that inmate was because plaintiff put the card on the rack before Officer Barse could make that determination.[FN26]

> [FN26.] That inmate's identity remains unknown, and there is no indication that the inmate for whom plaintiff was punching out was Pryor, even though Pryor was apparently in the Tailor Shop

at the same time. In any event, according to the documents there was no misbehavior report issued to any other inmates *as a result of this incident.*

A review of the disciplinary hearing shows that plaintiff pled "[n]ot guilty with explanation." (Dkt. No. 74–7 at 3; Def.'s Ex. D). At the hearing, plaintiff rescinded his request for the two witnesses he had chosen. (*Id.*) Plaintiff explained that the civilian supervisor would call "tools" at approximately 5:15 p.m. However, plaintiff was required to pray every day at approximately 5:15 or 5:20 p.m., and "everybody in the shop knows I do that.... I sit in the chair and I do my prayer." (*Id.* at 4). Plaintiff states that he is the last one to be frisked because of that. He, Spencer, and Pryor were the last ones to get frisked. (*Id.*) Plaintiff states that it was 5:29 p.m., and he heard Officer Barse say "I am locking the door now get [sic.]" Plaintiff admits that he heard Officer Barse, but did not know to whom the officer was speaking, "so I held my thing there for thirty seconds and then I punched out *I should have punched out right away."* (*Id.*)

Plaintiff essentially admitted the conduct that formed the basis for the misbehavior report. Additionally, although plaintiff stated that everybody in the shop knew that he prayed at a certain hour, he also stated in response to a question from the hearing officer, that Officer Barse was *not* the regular officer in the Tailor Shop, and that it was the "first time [plaintiff] saw him working there since I been working there for about two months." (*Id.* at 5). Thus, it is clear that Officer Barse would not have known that plaintiff prayed everyday at a certain hour or that he punched out after everyone else because, according to plaintiff, it was the first day that Officer Barse ever worked in the Tailor Shop. The hearing officer then told plaintiff that different officers did things differently, not to "assume things," and to check with the officer to make sure that "things don't get jammed up." (*Id.*) The hearing officer then stated that plaintiff could have obeyed Officer Barse's order in a more timely fashion. (*Id.*)

**\*12** Based upon the plaintiff's own testimony, admitting that he held his card over the time clock for 30 seconds before he punched out and that Officer Barse was not aware of plaintiff's alleged routine in the Tailor Shop,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

it is clear that the misbehavior report would have been written without any retaliatory motive. Plaintiff did not understand why he was found guilty of "being out of place" since he was in the Tailor Shop where he was supposed to be. (*Id.* at 7). However, the hearing officer explained that he was "out of place" because the officer told him to leave, and he stayed. (*Id* .)

The hearing officer at the June 4th hearing also discussed a February 20, 2008 misbehavior report because plaintiff had included a discussion of that incident in the letter that he sent to the Superintendent. (*Id.* at 6). Although plaintiff is not challenging, and did not exhaust his remedies with respect to, the February 20th incident, it is clear from the discussion of the incident that plaintiff committed the conduct of which he was accused in February.[FN27] (*Id.*) The incident involved a disagreement over where plaintiff was going to sit in the mess hall. Plaintiff explained that he mistakenly sat in a spot that was reserved for people who are helping inmates in wheelchairs. Plaintiff stated that he was following someone else and did not hear the officer speak to him, so "I didn't hear him okay and he had to tell me a second time. Then Officer Allen ... wrote the ticket. He cursed at me in the messhall." (*Id.*) Plaintiff alleges that later, the Officer grabbed his arm, but plaintiff stated that the incident had been "dealt with." (*Id.*) Defendant White was *not* involved in either of these incidents.

FN27. The court is only mentioning this incident for purposes of solidifying its recommendation regarding the lack of any evidence of false misbehavior reports/retaliation in this case.

The third misbehavior report was dated June 5, 2008, and was issued by Officer Gray. (Dkt. No. 74–8 at 4; Def.s' Ex. E). Plaintiff was charged with failure to obey a direct order and violating "count procedures." (*Id.*) Plaintiff was sleeping during the inmate count and Officer Gray had to wake him. Plaintiff had been previously warned about this conduct. (*Id.*) The disciplinary hearing was conducted on June 12, 2008. The charge of disobeying an order was dismissed by the review officer prior to the hearing, and the documents indicate that plaintiff pled *"guilty"* to the "count" violation. (*Id.* at 3). The hearing transcript confirms this finding. (Dkt. No. 74–9 at 3–4; Def.s' Ex. F). Plaintiff stated "well I'll plead guilty with explanation cause I was laying down." (*Id.* at 4). He then admitted that "I was sleeping and [the officer] kicked my bed." (*Id.*)

Later during the July 12th testimony, plaintiff states that Officer White "got it in for me and him, alright." (*Id.* at 6). Plaintiff admitted that he was sleeping, but claimed that the officer should have given him a warning. (*Id.*) The hearing officer pointed out that there were warnings to plaintiff listed in the log book. (*Id.* at 7; *see* Dkt. No. 74–16 at 5 (indicating a warning to Holmes on 4/20/08 and 5/14/08)). The officer asked plaintiff why he was pleading guilty if he believed he should have been warned, but plaintiff stated that "I plead guilty because I was sleeping. I won't lie." (*Id.*) Regardless of plaintiff earlier allegation that White, who was not the individual who gave him this ticket, had it "in for" plaintiff, his admission that he was guilty and the documents showing that he was warned in the past, support the defense that the misbehavior report would have been issued for completely appropriate reasons.

**\*13** Plaintiff has not shown any nexus between his "protected" activity and the first three misbehavior reports. Plaintiff did not write his first grievance against defendant White until after the fourth misbehavior report was written, so the first three could not have been in retaliation for writing grievances. As stated above, in 2008, it was not clear that plaintiff's alleged testimony on behalf Inmate Pryor against defendant White was constitutionally protected. Plaintiff's assumption that defendant White was the instigator of the misbehavior reports is completely speculative because White did not write any of the first three misbehavior reports. Finally, plaintiff was found guilty of all three violations, and in fact, pled guilty to one of them. Thus, it is clear that defendants have shown that the same actions would have been taken, regardless of a retaliatory motive.

The fourth misbehavior report was issued for an incident that occurred at approximately 8:45 a.m. on June 21, 2008. This was the first incident in which defendant White was the charging officer. The misbehavior report resulted from a disagreement between plaintiff and defendant White over how plaintiff's cell should be

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

cleaned. (Dkt. No. 74–10 at 5–6). This misbehavior report could not have been written in retaliation for grievances against White himself since plaintiff's first grievance against White was written on the same day of the incident that formed the basis of the misbehavior report, complaining about White's behavior during the incident. In his amended complaint, plaintiff alleges that the "harassment and abuse seemed to clearly start after defendant White found out that plaintiff ... had a pending law-suit against the N.Y.P.D. ...." (AC ¶ 4). Plaintiff also states that his "entire defense" during the resulting disciplinary hearing was "the circumstances surrounding plaintiff being a witness for two different inmates" who had filed grievances against defendant White. (AC ¶ 7).

Plaintiff's conclusory assertion that the harassment *seemed* to start after defendant White found out about a law suit against police officers from New York City does not rise to the level of the required nexus between adverse action and plaintiff's protected conduct.[FN28] Plaintiff claims that defendant White "found out" about the law suit when he escorted plaintiff to telephone conferences with the court. Even assuming that defendant White was aware of plaintiff's law suit against individuals from the N.Y.P.D., these individuals did not work with White at Franklin, they did not work in the same city as he did, and did not even work for the Department of Corrections and Community Supervision ("DOCCS"). Plaintiff's completely speculative assumption that the alleged harassment that followed was based upon this "discovery," particularly when the first three misbehavior reports were not written by defendant White, does not form the basis for a constitutional retaliation claim. *See, e.g., Hare v. Hayden,* 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr.14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer); *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 369 (S.D.N.Y.2011) (plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in) (collecting cases); *Ciaprazi v. Goord,* 9:02–CV–915 (GLS/DEP), 2005 WL 3531464, at *8–9 (N.D.N.Y. Dec.

22, 2005) (granting summary judgment and dismissing retaliation claim based only on plaintiff's conclusory allegations that the manifest falsity of the misbehavior report and testimony during the disciplinary hearing indicated the disciplinary matters were motivated by retaliatory animus due to grievances plaintiff filed against individuals other than the defendants involved in the disciplinary action).

> FN28. The court may take judicial notice of the fact that plaintiff filed two law suits, one in the Eastern District of New York, and the other in the Southern District of New York close to the time of the conduct of which plaintiff complains in this case. *See Holmes v. Dep't of N.Y.P.D.,* 06–CV–2140 (E.D.N.Y.) (RJD/LB); *Holmes v. Frasier,* No. 07 Civ. 6044 (S.D.N.Y.) (LAK). A letter, filed in *Holmes v. Dep't of NYPD,* indicates that both cases were settled in plaintiff's favor on May 6, 2008. (Dkt. No. 44 in 06–CV–2140).

**\*14** Attached to plaintiff's motion for summary judgment is an unsworn statement written by Inmate Jarrett Henry, in which he states that he told plaintiff that Inmate Henry "always" heard defendant White talking about plaintiff and his law suit against the N.Y.P.D., "saying things like [plaintiff] is going to learn the hard way not to mess with the Big Blue." (Dkt. No. 71 at 6). An unsworn, unsigned, undated statement cannot form the basis for a summary judgment motion, and plaintiff did not respond to the argument in defendants' motion that this document should not be considered.

Although plaintiff states that the "entire" defense at his disciplinary hearing was that defendant White was retaliating against him, a review of the disciplinary hearing transcript shows that plaintiff made no such argument during his disciplinary hearing. Plaintiff's defense was that he properly cleaned his "cube," and that defendant White used profanity against plaintiff. Plaintiff claimed at the hearing, and on appeal of that hearing, that defendant White wrote the misbehavior report to cover up his own use of profanity against plaintiff, not that White was retaliating against plaintiff for an unrelated law suit or for grievances that had not yet been written.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

Plaintiff stated once during the June 25th hearing that "[h]e's been, and, he's had it out for me for the longest ... ok?" (Dkt. No. 74–11 at 8) (omission in original). Plaintiff also stated that White "threatened" plaintiff four times to "write [plaintiff] a ticket." (*Id.* at 6). Plaintiff's appeal stated that White's report was "clear retaliation to cover up his useing [sic] profane language on Mr. Holmes." (Dkt. No. 74–10 at 1). There is **no indication** from the disciplinary hearing or from the appeal that plaintiff believed defendant White was retaliating against him for the exercise of a constitutional right.

The same is true for the grievance, written by plaintiff on June 21, 2008 after defendant White wrote the misbehavior report that was dated the same day. The basis of the grievance was the defendant White allegedly used profanity in dealing with plaintiff, during the incident that resulted in the misbehavior report. Plaintiff never mentioned retaliation at all. (Dkt. No. 74–13 at 1). In the grievance, plaintiff states that defendant White knew that plaintiff would "write him up" because plaintiff had warned defendant White several times in the past ***two months*** to stop "disrespecting" plaintiff and "cursing" at him. (*Id.*) Plaintiff states that "[t]o justify his [sic] self C.O White took my I.D. and placed me on keep lock pending." (*Id.*) Verbal harassment and profanity, no matter how unprofessional and offensive does not rise to the level of a constitutional violation. *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (a guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper).

**\*15** On June 28, 2008, plaintiff wrote a letter to the Superintendent, still complaining about the June 21st incident, but adding that on June 28, 2008, defendant White found "shanks" around his own desk area. (Dkt. No. 74–14 at 2; Def.s' Ex. K). Plaintiff then stated that he was afraid that defendant White would "plant some weapon" in plaintiff's cell or the cell of one of his "witnesses." (*Id.*) This was complete speculation by plaintiff, and he never mentioned retaliation.

**2. Final Misbehavior Report**

The final misbehavior report, written on July 1, 2008, before plaintiff was transferred out of Franklin, was written by Officer Gray,[FN29] and involved plaintiff having a verbal exchange with this officer, ultimately telling Officer Gray that there was a "shank" with his name on it. (Dkt. No. 74–16 at 4; Def.s' Ex. M). Plaintiff was given a Tier III hearing, and was found guilty of the misbehavior. He was sentenced to three months in SHU, together with a three month loss of various privileges. (Dkt. No. 74–16 at 1). Plaintiff was also sentenced to a one month recommended loss of good time. (*Id.*) Plaintiff appealed, but the determination was affirmed on August 14, 2008. (Dkt. No. 74–18 at 1).

FN29. Once again, the misbehavior report was not written by defendant White.

Although the transcript of the Tier III hearing was mostly "inaudible," and the transcription was never completed, it is clear that plaintiff was complaining about Officer White swearing at him. (Dkt. No. 74–17 at 3; Def.s' Ex. N). In the part of the transcript that is available, there is no allegation of why plaintiff believed that Officer White was allegedly targeting plaintiff for profanity or false misbehavior reports. The court notes that the plaintiff brought his June 28th letter to the hearing, and before the tape became inaudible, the hearing officer stated that he would consider the letter in his decision. (*Id.* at 5).

In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that a section 1983 action, seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486–87. *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) extended the rationale in *Heck* to section 1983 challenges to prison disciplinary proceedings in which a decision in plaintiff's favor would necessarily reverse the administrative decision revoking a plaintiff's good-time credits, thereby affecting the length of the plaintiff's confinement. 520 U.S. at 644.

In this case, although plaintiff is not challenging the due process rights afforded to him at his hearing,[FN30] if the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

court determines that Officer White's misbehavior report was false and in retaliation for plaintiff's grievances or other constitutionally protected activities, then the court would necessarily be finding that the result of the disciplinary hearing was invalid. However, as stated above, plaintiff's disciplinary hearing was affirmed on appeal, and plaintiff did not challenge the finding in an Article 78 proceeding. Thus, at this time, the court cannot consider the last misbehavior report on the merits of his retaliation claim.[FN31] Plaintiff cannot sustain his burden to show that there is no question of fact, and summary judgment should be granted in his favor, nor has he refuted the defendants' showing that there is no question of fact, but that summary judgment may be granted in their favor on the retaliation claim.

> FN30. Although the amended complaint refers to a denial of "due process," none of the hearing officers are defendants, and a review of all the hearings shows that plaintiff was afforded the required procedural due process during the hearings. He does not allege otherwise.

> FN31. The Second Circuit has held that an inmate who is given a "mixed sanction" can avoid the "favorable termination" rule of *Heck* and *Edwards* if he forever waives any consideration of the good time portion of his disciplinary sentence. *Peralta v. Vasquez,* 467 F.3d 98, 104–106 (2d Cir.2006), *cert. denied,* 551 U.S. 1145, 127 S.Ct. 3006, 168 L.Ed.2d 726 (2007). In such cases, the court would afford plaintiff the opportunity to waive any consideration of good time. However, in this case, regardless of plaintiff's waiver, he still could not show that defendant Gray, who wrote the July 1st misbehavior report, was retaliating against plaintiff for a grievance that he filed against defendant White or that defendant Gray was retaliating against plaintiff at the behest of defendant White for a law suit that plaintiff filed against the NYPD. There is no indication that defendant Gray was aware of the law suit filed by plaintiff.

**VI. *EIGHT AMENDMENT/EXCESSIVE FORCE***

**A. Legal Standards**

**\*16** The Eighth Amendment prohibits the " 'unnecessary and wanton infliction of pain.' " *Baker v. Willett,* 42 F.Supp.2d 192, 196 (N.D.N.Y.1999) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). When the use of excessive force is alleged, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitely v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.(1973)). In order to meet the constitutional standard for excessive force, the defendants' conduct must be " 'inconsistent with the contemporary standards of decency' and 'repugnant to the conscience of mankind.' " *Whitely,* 475 U.S. at 327.

Minor uses of physical force do not reach the constitutional level as long as the force used is not "repugnant to the conscience of mankind." *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). However, the court must determine the need for the force, the relationship between the need and the amount of force used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely,* 475 U.S. at 321. Not every push or shove, even if it seems unnecessary, amounts to a violation of the constitution. *Hudson,* 503 U.S. at 9–10 (*de minimis* force); *Johnson v. Glick,* 481 F.2d at 1033.

**B. Application**

In the amended complaint, plaintiff only refers to July 1, 2008 as the date that he was allegedly subjected to excessive force.[FN32] He claims that he was assaulted at his cell and when he arrived at SHU, where he was hit again and subjected to a sexually humiliating strip search. However, the conduct described by plaintiff as having occurred on July 1, 2008 does not rise to the level of excessive force, even as plaintiff has described it. As stated above, verbal abuse and harassment, no matter how offensive or inappropriate, does not rise to the level of a constitutional claim. *Purcell, supra.* Plaintiff describes the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

"excessive force" on July 1, 2008 as Sergeant Hammond "roughly dragged" plaintiff out of his cell. (AC ¶ 10). Plaintiff's arm was "twisted behind his back and he was snatched by the back of his neck by defendants Sgt. Hammond, and Corrections Officers [Brassard] and Reardon." (*Id.*) The officers then "dragged" plaintiff out of the dorm in a "humiliating manner." (*Id.*)

FN32. The court notes that, in his motion for summary judgment, plaintiff now mentions an alleged "use of force incident" that occurred on February 20, 2008. (Dkt. No. 71 at 2, ¶ 4). This is the first time in this case that plaintiff has mentioned an incident involving a "use of force," occurring on February 20, 2008. Defense counsel interpreted plaintiff's statement as an attempt to raise a new claim in his summary judgment motion and argued that this claim is unexhausted. (Def.s' Memo. at 14–15). If plaintiff were trying to raise a new claim, he could not do so in a summary judgment motion, even if he had filed a proper motion. *See Hickey v. State Univ. of New York at Stony Brook Hosp.,* No. 10–CV–1282, 2012 WL 3064170, at *5 (E.D.N.Y. July 27, 2012) (citations omitted). The court finds, however, that plaintiff is not attempting to raise a new claim. First, although plaintiff mentions a use of force on February 20, 2008, he does not state how the use of force relates to a constitutional violation. A reading of the entire paragraph shows that the reason he is mentioning a use of force on February 20, 2008 is because he is attempting to argue that defense counsel lied in his response to plaintiff's interrogatories, when counsel stated that there were no unusual incident reports or use of force reports pertaining to plaintiff while he was housed at Franklin Correctional Facility. Plaintiff claims that the incident was "reported," implying that defendants have failed to produce existing records. Defendants have submitted a misbehavior report, issued to plaintiff on February 20, 2008, together with the documents associated with the Tier II hearing that ultimately resulted from that report. (Dkt. No. 74–5 at 4). There is no indication from the misbehavior report or from the hearing on the misbehavior

report that plaintiff claimed that any use of force occurred before, during, or after the incident.

The misbehavior report involved an incident that occurred in the mess hall, during which plaintiff sat in an unauthorized spot and then complained about having to move. (*Id.*). When Officer Allen attempted to counsel plaintiff about his behavior, plaintiff swore at him. (*Id.*) Plaintiff was found guilty after a Tier II hearing, but did not appeal. Plaintiff appears to have discussed the issue briefly in his letter to defendant LaClair, dated June 3, 2008, that plaintiff wrote after he was issued the June 2, 2008 misbehavior report. (Dkt. No. 74–6 at 5).

Plaintiff states in the second paragraph of his June 3, 2008 letter that the June 2 misbehavior report was his "second Tier II ticket," and that the officer "lied on" plaintiff the first time, but that plaintiff did not appeal the guilty determination. (*Id.*) Although it is not clear, the court assumes that plaintiff is referring to the February 20, 2008 incident because plaintiff claims that the officer "grabbed" plaintiff's arm "roughly in the mess hall in front of over 50 prisoners," and that this action "embarrassed" the plaintiff in front of all the other prisoners. (*Id.*) He then states that a short sergeant "roughed me up" outside of the mess hall by pushing plaintiff's face into the wall and throwing handcuffs on him tightly. (Dkt. No. 74–6 at 6).

Plaintiff also admits in the June 3, 2008 letter, that he "didn't ... write ... and complain or place an appeal in for their decision." (*Id.*) It is clear from plaintiff's own letter that he never complained about any "use of force" at the time that it allegedly occurred. The misbehavior report corroborates this finding. (Dkt. No. 74–6 at 4). Question No. 9 on the misbehavior report form specifically asks whether physical force was used, and Officer Allen checked "NO." (*Id.*) Thus, plaintiff's allegation that defense counsel committed

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

some sort of misconduct by failing to turn over "use of force" reports, based on this February 20, 2008 incident, is meritless.

Plaintiff also claims that when he reached the entrance of the dorm, his face was pushed against the wall, he was punched in the left ribs and the back, and his face was "squeezed" while Sergeant Hammond allegedly threatened him, "smacked" plaintiff in the back of the head and "threw" him into the back of the van to drive to SHU. (AC ¶ 11). Plaintiff claims that when they arrived at SHU, he was "snatched by the throat and neck" by defendant Brassard and pushed up against the wall by his ribs and the back of his head. (*Id.*) Finally, plaintiff alleges that the strip search was performed in a "sexually" humiliating manner, because the officer made plaintiff spread his buttocks so that he "felt" molested.[FN33] (AC ¶ 12).

> FN33. Even if plaintiff had exhausted his strip frisk claim, he alleges that the officers made fun of him, threatened him, and looked at him for an extended period of time, asking him to spread his buttocks, and making other demeaning comments. (AC ¶ 12). While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and even touching are not severe enough to be "objectively, sufficiently serious." *Boddie, v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997).

**\*17** The defendants allege that plaintiff was transferred to SHU on July 1, 2008, without incident and without injury. They also allege that the routine strip search was required for admission to SHU and was conducted in the proper manner. *See* DOCCS Directive No. 4910(IV)(D)(1) (inmates are to be strip frisk upon entry to SHU). The only defendants allegedly involved in this use of force were Hammond, Brassard, and Reardon.

In the amended complaint, plaintiff now claims that he complained about the injury to the left side of his rib cage, and that the "bone was protruding out of the skin." (AC ¶ 13). However, in his grievance, dated July 6, 2008, he stated that he "was hit in the ribs and in the back of the head *not to cause injury, or to have injury shown on my*

*body,* but hit and slapped to be humiliated with malice and disrespect tying to provoke me to strike back, but I held myself and refused to be tricked into catching an assault on an officer." (Dkt. No. 74–21 at 29) (emphasis added). Plaintiff wrote this document *five days* after the incident. If plaintiff's rib had been protruding from his skin on July 1, it is hard to believe that plaintiff would have written this grievance without complaining about an obviously broken rib.

The plaintiff's medical records also belie his assertion of a broken rib. On July 7, 2008, plaintiff was examined in SHU. (Dkt. No. 75 at 2). He was viewed in shorts. There were no marks, bruises or opened or reddened areas. Plaintiff denied injury. (*Id.*) Plaintiff was examined again prior to his transfer to Upstate on July 15, 2008. (*Id.* at 3). Even assuming that he was not properly examined at Franklin,[FN34] plaintiff was examined upon his admission to Upstate Correctional Facility on July 16, 2008. (*Id.* at 4). Plaintiff denied any "current" medical complaints at that time. (*Id.*)

> FN34. One of plaintiff's claims was that he was denied adequate medical treatment by a John Doe defendant "after the assault sustain[ed] from defendants Sgt. [Hammond], and C.O. [Brassard] and Reardon ...." (AC ¶ 16(D)). No medical John Doe defendant was ever identified or served. However, it is clear that plaintiff had no injuries either when he left Franklin or when he arrived at Upstate. Any medical care claim would also be subject to dismissal.

By the time that plaintiff appealed the denial of his grievance on August 24, 2008, plaintiff left out the statement, admitting that he had no injury and instead claimed that he was hit in the ribs twice. (Dkt. No. 74–21 at 8). He was allegedly punched on the left side of his rib cage before he was taken to SHU and punched on the right side of his rib case after he arrived at SHU. (*Id.*)

Plaintiff's own *contemporaneous* statements and his medical records show that whatever force was used did not cause any injury. Although the lack of injury is not fatal to an excessive force claim, the extent and nature of an injury, if any, " 'is probative of the amount and type of

Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)

(Cite as: 2012 WL 5880360 (N.D.N.Y.))

force actually used ... and that in turn is likely to reflect on the reasonableness of that force [.]' " *Cunningham v. McCluskey,* No. 05 Civ. 10169, 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011) (quoting *Yang Feng Zhao v. City of New York,* 656 F.Supp.2d 375, 390 (S.D.N.Y.2009); *Washington v. Parr,* 561 F.Supp.2d 394, 407 (S.D.N.Y.2008) (finding de minimus injury to be probative of de minimus force)), *report-recommendation adopted by* 2011 WL 3478312 (S.D.N.Y. Aug.8, 2011). Defendants dispute that any force was used at all. (Dkt. No. 74–21; Def.s' Ex. R at 19–20, 24, 25 (Memoranda by Hammond, Brassard, and Gray, Responding to Grievance)).

**\*18** As a general rule, at the summary judgment stage, courts must not weigh evidence or assess the credibility of witnesses. *Scott v. Coughlin,* 344 F.3d 282, 290–91 (2d Cir.2003). However, in the "rare circumstances where plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005). *See also Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) (conclusory allegations are insufficient to state a claim for relief under section 1983); *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ( "mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").

In this case, it is not simply plaintiff's word against the officers. Most of the statements in plaintiff's amended complaint describing this incident would not rise to the level of constitutional violations, except for the punch to plaintiff's ribs. Plaintiff filed a grievance five days after the incident and specifically stated that he was not injured, but the defendants treated him roughly in order to "humiliate" him. Plaintiff never mentioned the alleged use of force during his disciplinary hearing, although it is clear that he was alleging some sort of retaliation by the officers. In his amended complaint, filed approximately one year after the incident, plaintiff now claims that his rib was sticking out of his skin. The medical reports at both

Franklin and Upstate, a facility that has nothing to do with the incident and to which plaintiff was transferred a week after the incident, indicate that plaintiff claimed no injuries. At worst, plaintiff claims that defendants swore at him and he was treated roughly while being handcuffed and escorted to SHU. Plaintiff has not responded or opposed the defendants' motion for summary judgment, thus, this court finds that there are no genuine issues of material fact, and defendants's motion for summary judgment may be granted on plaintiff's claim of excessive force.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that plaintiff's motion for summary judgment (Dkt. No. 71) be **DENIED,** and it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 74) be **GRANTED** and the amended complaint be **DISMISSED IN ITS ENTIRETY AS TO ALL DEFENDANTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2012.

Holmes v. LeClair
Not Reported in F.Supp.2d, 2012 WL 5880360 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5880690 (N.D.N.Y.)

(Cite as: 2012 WL 5880690 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Reginald HOLMES, Plaintiff,
v.
Darwin LECLAIR, Supt., Franklin Correctional Facility,
et al., Defendants.
No. 9:09–CV–437.

Nov. 21, 2012.
Reginald Holmes, Gouverneur, NY, pro se.

Aaron M. Baldwin, New York State Attorney
General-Albany Office, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action pursuant to 42
U.S.C. § 1983 was referred to the Hon. Andrew T. Baxter,
United States Magistrate Judge, for a
Report–Recommendation pursuant to 28 U.S.C. § 636(b)
and Local Rule 72.3(c).

The Report–Recommendation dated October 11,
2012 recommended: (1) Plaintiff's motion for summary
judgment (Dkt.# 71) be denied; (2) Defendant's motion for
summary judgment (Dkt.# 74) be granted; and (3)
Plaintiff's amended complaint be dismissed in its entirety
as to all Defendants.

Plaintiff filed timely objections to the
Report–Recommendation, essentially raising the same
arguments presented to the Magistrate Judge in his motion
for summary judgment (Dkt.# 71) and his motion to stay
and/or for extension of time (Dkt.# 77). Plaintiff restates
his conclusory claims against Defendants and concentrates
heavily upon the denial of his motion to stay and/or for an
extension of time, stating this Court in fairness should
grant him such relief. Nothing in Plaintiff's Objections
show that there is a genuine issue of material fact for trial.

When objections to a magistrate judge's
Report–Recommendation are lodged, the Court makes a
*"de novo* determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." *See* 28 U.S.C. § 636(b)(1). After such
a review, the Court may "accept, reject, or modify, in
whole or in part, the findings or recommendations made
by the magistrate judge. The judge may also receive
further evidence or recommit the matter to the magistrate
judge with instructions." *Id.*

Having reviewed the record *de novo* and having
considered the issues raised in the Plaintiff's objections,
this Court has determined to accept in its entirety the
recommendation of Magistrate Judge Baxter for the
reasons stated in the ReportRecommendation.

It is therefore **ORDERED** that (1) Plaintiff's motion
for summary judgment (Dkt. # 71) be **DENIED;** (2)
Defendant's motion for summary judgment (Dkt.# 74) be
**GRANTED;** and (3) Plaintiff's amended complaint be
dismissed in its entirety as to all Defendants.

**IT IS SO ORDERED.**

N.D.N.Y.,2012.

Holmes v. LeClair
Not Reported in F.Supp.2d, 2012 WL 5880690
(N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and the docket confirms that defendant John O'Reilly has never been served. Service must be made upon a defendant within 120 days of filing the complaint or any claims against that defendant will be dismissed. See Fed.R.Civ.P. 4(m). The original complaint, which named O'Reilly, was filed on November 26, 1999, and the amended complaint was filed on July 13, 2001. However, O'Reilly was never served. Since this defendant has never been served, this court lacks jurisdiction over him, and this court recommends the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.

Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York, Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

*REPORT-RECOMMENDATION*

SHARPE, Magistrate J.

    I. *Introduction* [FN2]

> FN2. This matter was referred to the undersigned for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under 42 U.S.C. § 1983 claiming that the defendants violated his civil rights when they retaliated against him for his activities as an IGRC representative by subjecting him to verbal harassment, physical abuse and subsequently, a transfer. Garrett also claims that the supervisory defendants failed to properly investigate his complaints and failed to train/supervise their employees. This court recommends denying the motion for summary judgment in part and granting it in part.

    II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint against the defendants claiming that they violated his civil rights under the First, Sixth Eighth, and Fourteenth Amendments.[FN3] On September 28, 2001, the defendants filed a motion for summary judgment. On January 18, 2002, this court issued an order informing Garrett of his obligation to file a response and extended his time to respond for thirty days. On April 24, 2002, this court granted an additional sixty days to respond to the defendants' motion. Despite having been given multiple opportunities to respond, Garrett has failed to file a response.

> FN3. Although Garrett claims to be raising violations under the Sixth, Eighth, and Fourteenth Amendments, the only viable claim based on this court's interpretation of the complaint is under the First Amendment for retaliation.

    III. *Facts* [FN4]

> FN4. The facts are taken from the defendants' statement of undisputed material facts since Garrett failed to file a response.

On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has

failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Phillip JEAN–LAURENT, Plaintiff,
v.
C.O. LANE; C.O. Briggs; C.O. Tyndall; John Doe # 1; John Doe # 2; Sgt. Beard; Sgt. Pauline; Lt. Jones; DSS McAuliffe; Dr. Mays; Dr. John Doe; Jane Doe; Supt. Barkley; Supt. Hulihan; Dep. Comm. Linquist, Defendants.
No. 9:11–CV–186 (NAM/TWD).

Jan. 24, 2013.
Phillip Jean–Laurent, Ozone Park, NY, pro se

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Gregory J. Rodriguez, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### *REPORT AND RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

**\*1** This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, was initially referred to Magistrate Judge George H. Lowe for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Upon Magistrate Judge Lowe's retirement on February 9, 2012, the case was reassigned to me. Plaintiff Phillip Jean–Laurent ("Jean–Laurent") has brought this action against Defendants Correctional Officers Patrick Lane ("Lane"), Allen Briggs ("Briggs"), and Seth Tyndall ("Tyndall"); Correctional Sergeants Matthew Beard ("Beard") and David Pawlin ("Pawlin") (sued incorrectly as "Sgt. Pauline"); Correctional Lieutenant Norman Jones ("Jones"); Deputy Superintendent Security Brian McAuliffe ("McAuliffe"); Superintendents Warren

Barkley ("Barkley") and William Hulihan ("Hulihan"); Appeal Review Officer Norman Bezio ("Bezio"); Deputy Commissioner Christopher Lindquist ("Lindquist") (sued incorrectly as "Dep. Comm. Linquist"); Dr. Charles Moehs ("Moehs") (sued incorrectly as "Dr. Mays); John Does # 1 and # 2; Dr. John Doe; and Jane Doe. (Dkt. Nos. 1, ¶¶ 9–16, and 6–17.[FN1])

> FN1. Page numbers in citations to filed documents refer to the page numbers assigned by the Court's electronic filing system rather than to the page number in the original document.

Defendants, with the exception of the four Doe Defendants who have not yet been identified and served, now move to dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[FN2] (Dkt. No. 23.) For the reasons set forth below, the Court recommends that Defendants' motion be **GRANTED** in part and **DENIED** in part.

> FN2. Because the Doe Defendants have been excluded from the motion, this Report and Recommendation does not address the legal sufficiency of the claims asserted against them in the Complaint.

### I. BACKGROUND[FN3]

> FN3. The background facts set forth herein are taken from Plaintiff's Complaint.

**A. Facts Concerning Plaintiff's Claims Arising Out of his Storage of Draft Bags and the Destruction of His Legal Documents**

Plaintiff is a former prisoner of the New York State Department of Correctional and Community Supervision ("DOCCS"). (Dkt. No. 1, ¶ 8.) In January of 2008, Plaintiff was transferred from Elmira Correctional Facility ("Elmira") to Cape Vincent Correctional Facility ("Cape Vincent"). *Id.* at ¶ 17. Eight draft bags containing Plaintiff's personal property were sent from Elmira to Cape Vincent at the time of the transfer. *Id.* Plaintiff's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

personal belongings did not all fit into the storage lockers provided for his use at Cape Vincent, so he stored personal legal documents and materials and books in two draft bags placed neatly under his bunk. *Id.* at ¶ 18.

Defendant Lane, who was the steady housing unit officer at the time, advised Plaintiff that he could not store belongings in draft bags and would have to purchase storage containers from the commissary for his excess belongings. *Id.* at ¶ 19. When Plaintiff informed Lane that he had no funds to purchase the containers because of his transfer and assured him that he would purchase the containers when his funds arrived from Elmira, Lane agreed to allow him to use the draft bags until he was able to comply with the storage policy. *Id.* at ¶ 20. The funds transferred from Elmira were collected by Cape Vincent, so Lane allowed Plaintiff to use the draft bags for another two weeks. *Id .* at ¶ 21. Lane agreed to continued use of the bags when funds Plaintiff subsequently received from home were also collected by Cape Vincent. *Id.*

**\*2** Lane subsequently learned that Plaintiff was litigating an action against correctional officers and issued Plaintiff a misbehavior report for possessing the two draft bags in his living quarters the same day. *Id.* at ¶ 22. Defendant Pawlin, who was the hearing officer on the claimed rule violations, directed Plaintiff to discard several hundred pages of legal materials and documents essential to pending litigations. *Id.*

After the hearing, Plaintiff learned of a state-wide policy directive that he believed permitted him to retain two draft bags to store personal belongings in his cell.[FN4] *Id.* at ¶ 23. When he informed Defendant Lane of the directive, Lane "outburst his disregards for the policy directive." *Id.* Plaintiff sought redress through the administrative grievance procedure. When Lane learned of Plaintiff's grievance, he contacted Defendant Beard, a Corrections Sergeant at Cape Vincent, and during phone conversations with Beard, Lane repeatedly referenced departmental directives, facility policy manuals, and the inmate's misbehavior handbook. *Id.* at ¶ 24. Lane directed Plaintiff to turn over the draft bags and moments later Defendants Beard and Lane, along with other corrections officers, manacled Plaintiff and took him to the Special Housing Unit ("SITU"). *Id.* Plaintiff's Complaint does not state the length of time during which he remained in the SITU.

FN4. Plaintiff is presumably referring to Section III of DOCCS Directive # 4917 which provides in part:

Personal property possessed by an inmate assigned to double cell housing shall be limited to the amount of property that will fit in three standard draft bags (including legal materials). Inmates will be responsible for proper storage of property and the neat and orderly appearance of their cells.

A. *Storage of Property.* An inmate assigned to double occupancy cell housing will be allowed to possess in his or her cell two draft bags provided by the Department for storage of property. Any property beyond what can be stored in the individual locker may be stored in these bags.

Defendants Briggs and Tyndall subsequently packed Plaintiff's belongings, and while doing so, deliberately emptied a container of melted ice into a bag filled with legal documents, destroying several items and a significant portion of legal materials and documents essential to Plaintiff's appeal in an unidentified case pending in the Second Circuit Court of Appeals. *Id.* at ¶ 25. According to Plaintiff, the Second Circuit had granted him an enlargement of time to file a petition for a hearing or rehearing *en banc.* Because the documents were destroyed, Plaintiff was unable to file the petition within the enlargement period. *Id.*

Plaintiff thereafter had a disciplinary hearing on possession of the two draft bags and allegedly fabricated rule violations.[FN5] *Id.* at ¶ 26. Defendant Jones, the hearing officer, found Plaintiff not guilty of the fabricated rule violations. However, he found Plaintiff guilty of possessing the two draft bags, despite what Plaintiff believes to have been a clear departmental directive evidencing that no rule violation had occurred. *Id.* Plaintiff was punitively sanctioned for the draft bag violation. *Id.*

FN5. Plaintiff has not identified the nature of the

allegedly fabricated rule violations in his Complaint. (*See* Dkt. No. 1.) Although Plaintiff's Complaint does not specifically identify the person(s) responsible for filing the misbehavior report that led to the hearing, it can be inferred from other allegations that Defendants Lane and Beard were behind the report.

**B. Plaintiff's Claims of Cruel and Inhuman Treatment and Deliberate Indifference to his Serious Medical Needs Against Defendants Pawlin, Moehs, McAuliffe, and Bezio**

Prior to Plaintiff's SHU confinement, he had been scheduled for oral surgery and medical treatment for chronic low back pain. *Id.* at ¶ 27. Plaintiff was not allowed to keep his appointments because he was punitively confined in the SHU and was left to endure "unbearable toothaches, extreme eating and hygienical discomfort, as well as excruciating lower back pain during and after his SHU confinement." *Id.* Once Plaintiff was released from SHU confinement, he was required to start anew the lengthy and time consuming procedure of scheduling dental and medical appointments. *Id.* According to Plaintiff, Defendants McAuliffe and Barkley were cognizant of the routine practice of denying prisoners confined in the SHU reasonable and adequate dental and medical care and/or knowingly implemented or allowed the practice. *Id.*

**\*3** When Plaintiff was released from the SITU, he was required to carry his belongings, including at least eight draft bags weighing eighty or more pounds, to an assigned housing unit over four-hundred yards away in snowy frigid weather and was not allowed to use an available pushcart or have another inmate assist him, despite informing Defendant John Doe # 1 of his medical condition and level of pain. *Id.* at ¶ 28. Plaintiff strained his lower back as a result and endured tremendous pain for at least two weeks. *Id.* According to Plaintiff, Defendant Pawlin thereafter subjected Plaintiff to a pattern of harassing inter-facility movements that required Plaintiff to move his belongings to different housing units. *Id.*

Plaintiff was punitively confined in the SITU in April of 2008 as a result of sanctions imposed by Defendant Jones.[FN6] *Id.* at ¶ 29. Plaintiff was not permitted to keep his rescheduled dental and medical appointments because of

the confinement. *Id.* at ¶ 29. When he left the SITU after serving several weeks, Plaintiff was, for a second time, required to carry all of his personal belongings without assistance or a pushcart despite informing Defendant John Doe # 2 of his medical condition and pain. *Id.* Plaintiff hurt his back transporting his belongings. *Id.* When he reported to sick call, Defendant Jane Doe told him that she was not going to do anything for him, and she would not give him a medical excuse from carrying the rest of his personal belongings to his housing unit. *Id.*

> FN6. It is not entirely clear from the Complaint whether Plaintiff was confined in the SITU by Defendant Jones as a result of Jones' finding that Plaintiff was guilty of possessing two draft bags or for some other reason. *See* Dkt. No. 1 at ¶ 26.

Approximately four months later, after filing a grievance and personally seeking redress from DOCCS' Chief Medical Officer, Plaintiff was examined by Dr. Rosner and finally had one of two troubling wisdom teeth extracted and received a few physical therapy sessions, *Id.* at ¶ 30. Upon completion of the initial therapy sessions, the therapist concluded that the course of treatment had been effective and that Plaintiff was in need of further therapy. *Id.* at ¶ 31. The therapist also recommended that Plaintiff be given a TENS unit for self-administered therapy. *Id.* However, at a follow-up appointment with Defendant Moehs, who had replaced Dr. Rosner as Plaintiff's health care provider, Moehs informed Plaintiff that he would not continue with the recommended course of treatment or provide the TENS unit and told Plaintiff to live with the pain. *Id.*

**C. Plaintiff's Claim that he was Denied a Fair and Impartial Hearing by Defendant McAuliffe**

In preparation for an August 2008 disciplinary hearing, Plaintiff attempted to obtain documentary evidence he believed was relevant and necessary to his defense. *Id.* at ¶ 32. Plaintiff's request was denied by Defendant McAuliffe, who presided over the disciplinary hearing and allegedly made false representations to Plaintiff to induce him to enter into an involuntary and unintelligent plea agreement. *Id.* McAuliffe is alleged to have unfairly and unilaterally penalized Plaintiff for an altercation with another prisoner and sanctioned Plaintiff

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

to punitive segregation for six months at Mid–State Correctional Facility ("Mid–State"), with a concomitant loss of privileges and recommended loss of good time, which extended Plaintiff's term of imprisonment to the maximum. *Id.* at ¶ 33. The other prisoner was not sanctioned at all. *Id.*

**\*4** Plaintiff appealed McAuliffe's determination to Defendant Bezio on the grounds that he had been denied a fair and impartial hearing, that his guilty plea was unconstitutionally induced, and that he had been denied due process and equal protection of the law as supported by documentary evidence. *Id.* at ¶ 34. Defendant Bezio affirmed McAuliffe's determination. *Id.*

### D. Alleged Indifference to Plaintiff's Serious Medical and Dental Needs While in the SHU at Mid–State

During the period of his confinement in the SHU at Mid–State, Plaintiff continued to experience excruciating back pain and toothaches. *Id.* He requested and was denied treatment by Defendant Dr. John Doe based upon Moehs' medical entry, without any physical examination. *Id.* Plaintiff received dental care to the extent of having dental x-rays taken after grieving the matter to Defendant Hulihan. *Id.* However, his painful wisdom tooth was not extracted. *Id.* Despite making articulate, detailed complaints of being deprived necessary and adequate medical and dental care to Defendants Barkley, Hulihan, and Lindquist, Plaintiff's complaint was denied as unsubstantiated and no significant steps were taken to ensure that Plaintiff received necessary and adequate medical and dental care prior to his transfer from Mid–State to Downstate Correctional Facility. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on February 17, 2011. (Dkt. No. 1.) Plaintiff's application to proceed *in forma pauperis* was granted by Judge Mordue in a June 1, 2011 Decision and Order (Dkt. No. 2) in which the District Court dismissed Plaintiff's claim for destruction of property against Defendants Briggs and Tyndall, with prejudice, and his equal protection claim against Defendants McAuliffe and Bezio, without prejudice, under 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case any time if the court determines that ... (B) the action ... (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B). *Id.* at pp. 6–8. Judge Mordue otherwise accepted the Plaintiff's complaint for filing, specifically noting that in doing so, the District Court was expressing no opinion as to whether Plaintiff's remaining claims could withstand a properly made motion to dismiss or for summary judgment. *Id.* at p. 9. The District Court also ordered Plaintiff to take reasonable steps to ascertain the identities of the "John Doe" and "Jane Doe" defendants and cautioned him that failure to serve the unnamed defendants in a timely manner may result in the action being dismissed against them. *Id.* at pp. 8–9.

## III. ANALYSIS

### A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

**\*5** A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). The motion tests the formal legal sufficiency of a complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678. (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

(internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *See, e.g., Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (considering factual allegations in plaintiff's opposition papers) (citations and internal quotations marks omitted), *vacated and amended in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). *See also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) ("Even where a document is not incorporated by reference [in the complaint], the court may nevertheless consider it [on a Rule 12(b)(6) motion without converting the motion to one for summary judgment] where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)).[FN7]

FN7. Defendants have submitted DOCS Directive # 4913, entitled "Inmate Personal Property Limits" in support of their motion to dismiss. (Dkt. No. 23–2 at pp. 2–9.) Plaintiff has also relied upon the Directive in his opposition

papers as support for his argument that state-wide policy allowed him to store his excess personal belongings in the two draft bags under his bunk. (Dkt. No. 27 at p. 12.) Since the Directive is integral to the Plaintiff's Complaint, the Court can consider it on Defendants' Rule 12(b)(6) motion without converting the motion to one for summary judgment. However, because the Directive, on its face, can be construed to offer some support for both Plaintiff and Defendants' position, it is of little value in determining the motion before the Court.

The Declaration of Sandra Prusak, also submitted in support of Defendants' motion to dismiss, references a disciplinary packet that was supposed to be attached to the Declaration. (Dkt. No. 23–3 at p. 2.) Inasmuch as the Disciplinary Packet is not attached to the Declaration as filed, the Court need not consider whether it, or Prusak's reference to its contents, can be considered on a Rule 12(b)(6) motion.

**\*6** Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco,* 222 F.3d at 112 (citation omitted).

**B. Plaintiff's Official Capacity Claims For Money Damages Against the Defendants**

Defendants have moved for dismissal of Plaintiff's official capacity claims for money damages under 42 U.S.C. ¶ 1983. (Dkt. No. 1 at ¶¶ 9–10, 12–16.; Dkt. No. 23–1 at pp. 19–20.) The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

effectively arms of the state ( *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006)) and bars all money damages claims against state officials acting in their official capacities, including the moving Defendants herein. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (an inmate plaintiff's claims for damages against individual Department of Correctional Services employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity.) Therefore, I recommend that the Plaintiff's § 1983 claims brought against the moving Defendants in their official capacities be dismissed without leave to amend.

**C. Claim Against Defendants Briggs and Tyndall for Denial of Access to Court on a Matter Before the Second Circuit Court of Appeals**

Plaintiff claims that documents essential to an appeal he had pending in the Second Circuit Court of Appeals were destroyed when Defendants Briggs and Tyndall deliberately emptied a container of melted ice into Plaintiff's bag. As a result, Plaintiff was unable to file a petition for a hearing or rehearing *en banc* in the case before the filing deadline. (Dkt. No. 1 at ¶ 25.) Plaintiff has not identified the action, nor has he described the nature of the action or the appeal on which he was seeking an *en banc* hearing or rehearing.

The Supreme Court has long held that inmates are guaranteed a right of access to the courts under the First Amendment of the Constitution. *See Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) ("A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure."). In order to state a claim for denial of access to court under § 1983, Plaintiff must assert non-conclusory allegations demonstrating that Defendants Briggs and Tyndall's alleged conduct in destroying his legal documents was deliberate and malicious. *See Lewis,* 518 U.S. at 349, 351; *Gonzales v. Carpenter* No. 9:08–CV–629 (LEK/ATB), 2011 WL 768990, at *7, 2011 U.S. Dist. LEXIS 18806, at *26 (N.D.N.Y. Jan.3, 2011)

(Baxter, M.J.). Plaintiff's Complaint, liberally construed, satisfies that requirement.

**\*7** However, Plaintiff must also assert non-conclusory allegations showing that the interference with his right of access to court resulted in actual injury. *Lewis,* 518 U.S. at 348–349. To do that, Plaintiff must describe the underlying claim allegedly frustrated by the interference well enough to establish that it is "nonfrivolous" and "arguable" in nature. *Christopher v. Harbury,* 536 U.S. 403, 415–16, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (underlying cause of action "is an element that must be described in the complaint."); *Arar v. Ashcroft,* 532 F.3d 157, 188–89 (2d Cir.2008), *cert. denied,* ––– U.S. ––––, 130 S.Ct. 3409, 177 L.Ed.2d 349 (2010) (following *Christopher* in requiring that the complaint include a description of the "nonfrivolous," "arguable" claim that the plaintiff has lost). Plaintiff must set forth sufficient facts to suggest that success on the underlying claim is found on "more than hope." *Christopher,* 536 U.S. at 416.

Plaintiff has provided no information whatsoever concerning the matter in the Second Circuit and has thus failed to state a claim for denial of his First Amendment right of access to court against Defendants Briggs and Tyndall. [FN8] For that reason, I recommend that Plaintiff's claim for denial of access to court against Defendants Briggs and Tyndall be dismissed. Inasmuch as it is possible that Plaintiff may be able to remedy the defect in his Complaint by including specific information regarding his underlying claim, I also recommend that he be granted leave to amend.

> **FN8.** The fact that Plaintiff was seeking a hearing or rehearing *en banc* raises the inference that he had been unsuccessful on an appeal to the Second Circuit.

**D. Retaliation Claims Against Defendants Lane, Pawlin, Beard, Briggs, Tyndall, and Moehs**

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Pidlypchak,* 389

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

F.3d at 381–83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

> *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkewicz,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1.

**\*8** To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pidlypchak,* 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary

record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon,* 58 F.3d at 872–73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009) (citing *Gorman–Bakos v. Cornell Co-op. Extension,* 252 F.3d 545, 555 (2d Cir.2001)).

*1. Retaliation Claim Against Defendant Lane*

According to Plaintiff, Defendant Lane, who had been allowing him to keep two draft bags of personal items under his bunk, issued a misbehavior report against Plaintiff for possessing the two bags right after learning that Plaintiff was litigating a civil action against correctional officers. (Dkt. No. 1 at ¶¶ 20–22.) When Lane learned later that Plaintiff had filed a grievance in reliance upon a state-wide directive Plaintiff believed allowed him to possess two draft bags for temporary storage of his personal belongings [FN9], Lane ordered Plaintiff to turn over the draft bags and had him manacled and taken to SITU. *Id.* at ¶¶ 23–24.

FN9. *See* Dkt. No. 23–2 at p. 7.

Plaintiff claims that he was charged with a violation for possessing the two draft bags and other fabricated rule violations. (Dkt. No. 1 at ¶ 26.) The Court has inferred that Lane was involved in Plaintiff being charged with allegedly fabricated rule violations for which he was found not guilty following a disciplinary hearing. Plaintiff was found guilty of possessing the two draft bags and punitively sanctioned. *Id.*

The filing of lawsuits and administrative grievances is constitutionally protected activity for retaliation purposes. *See Colon,* 58 F.3d at 872 ("Prisoners ... have a constitutional right of access to the courts and to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercise of that right."); *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003) (the right of prisoners to file administrative grievances is a constitutionally protected activity for

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

retaliation purposes). Plaintiff's retaliation claim against Lane can be construed to include retaliation for his lawsuit and the grievance he filed, both constitutionally protected activity. Therefore, the Complaint satisfies the first prong of a retaliation claim for pleading purposes.

**\*9** Liberally construing Plaintiff's Complaint, it appears that Plaintiff has set forth a facially plausible claim of adverse action satisfying the second prong. Plaintiff contends that the "motivating factor" behind Lane's initial rule violation charge against him with regard to the draft bags was finding out about Plaintiff's lawsuit. (Dkt. No. 27 at p. 4.) The filing of the charge led to Plaintiff being ordered to discard documents and legal materials by hearing officer Pawlin. *Id.* Destruction of a prisoner's legal papers and personal property has been found substantial enough to qualify as an adverse action for retaliation purposes. *See Smith v. City of New York,* No. 03 Civ. 7576(NRB), 2005 WL 1026551, *3, 2005 U.S. Dist. LEXIS 7903, at \*10 (S.D.N.Y. May 3, 2005) (Buchwald, J.) Because Plaintiff did have the two draft bags under his bunk, Lane's initial rule violation charge was arguably not a false misbehavior report. However, since Plaintiff claims that the bags were under the bunk with Lane's consent at the time he charged Plaintiff with the rule violation, the violation charge can be viewed as an adverse action for pleading purposes.

Placing Plaintiff in the SHU and filing false misbehavior claims against him after learning that he had filed a grievance based upon the directive also constitute adverse action sufficient to satisfy the second prong of a retaliation claim. *See Hamilton v. Fisher,* No. 9:10–CV1066(MAD/RFT), 2012 WL 987374, at \*14, 2012 U.S. Dist. LEXIS 39116, at \*41 (N.D.N.Y. Feb.29, 2012) (Treece, M.J.) (alleged transfer to SHU in retaliation for complaints could be considered adverse action); *Smith v. Hash,* No. 904–CV–0074 LEK/DRH, 2006 WL 2806464, at \*6, 2006 U.S. Dist. LEXIS 70362 (N.D.N.Y. Sept.28, 2006) (Kahn D.J., Homer, M.J.) (same); *Kotler v. Daby,* No. 10–CV–136 (TJM/DRH), 2011 WL 915312, \*5, 2011 U.S. Dist. LEXIS 26173, at \*14 (N.D.N.Y. Feb.10, 2011) (Homer, M.J.) (both filing false misbehavior report and sending plaintiff to SHU for filing grievances and lawsuits constitute adverse actions); *Mateo v. Fischer,* 682 F.Supp.2d 423, 433

(S.D.N.Y.2010) (filing false misbehavior report against plaintiff constituted an adverse action for purposes of retaliation claim).

Plaintiff's Complaint also satisfies the third prong of the retaliation analysis—a causal connection between Plaintiff's lawsuit and grievance and the adverse actions by Lane. Although Lane was not himself the subject of Plaintiff's lawsuit, the temporal proximity between Lane's learning of the lawsuit against other correctional officers and charging Plaintiff with a rule violation makes a facially plausible showing of causation. Further, the temporal proximity between Plaintiff's grievance concerning the bags and his being placed in SITU and having an allegedly false misbehavior report filed against him supports causation for purposes of this motion. *See Baskerville,* 224 F.Supp.2d at 732. In addition, Plaintiff was found not guilty with respect to the allegedly false misbehavior reports. *Id.*

**\*10** For the foregoing reasons, I recommend that Defendant Lane's motion to dismiss Plaintiff's retaliation claim against him be denied.

2. *Retaliation Claim Against Defendant Pawlin*

Plaintiff has also asserted a retaliation claim against Defendant Pawlin, the hearing officer who directed him to discard documents and legal materials. (Dkt. No. 27, at p. 4.) Plaintiff's Complaint does not adequately state a claim for retaliation against Defendant Pawlin. Plaintiff has not alleged that Pawlin was aware of the lawsuit Plaintiff had filed against correctional officers, nor is there any allegation that Pawlin was a defendant in that lawsuit. As a result, Plaintiff has failed to allege plausibly that the lawsuit was causally connected to Pawlin's allegedly adverse action. *See Wilson v. Kelly,* No. 9:11–cv–00030 (MAD/RFT), 2012 WL 3704996, at \*9, 2012 U.S. Dist. LEXIS 121293, at \*24 (Aug. 27, 2012) (D'Agostino, D.J., Treece, M.J.) (claim dismissed due to failure by plaintiff to allege plausibly that protected activity was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity). Therefore, I recommend that Plaintiff's retaliation claim against Defendant Pawlin be dismissed with leave to amend.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

3. *Retaliation Claim Against Defendant Beard*

The Complaint does not allege that Defendant Beard was aware of the lawsuit that Plaintiff had filed against correctional officers. However, Plaintiff has alleged that when Defendant Lane learned that Plaintiff had filed a grievance with regard to storage of the draft bags in his cell, he began phoning Defendant Beard "and reporting to him the situation." (Dkt. No. 1 at ¶ 23.) The Court can reasonably infer from that allegation that Beard was aware that the grievance had been filed when he subsequently joined Lane in escorting the manacled Plaintiff out of his housing unit and taking him to SHU. *Id.* at ¶ 24. Placing Plaintiff in SHU constitutes an adverse action for purposes of the retaliation analysis. *See Hamilton,* 2012 WL 987374, at *14, 2012 U.S. Dist. LEXIS 39116, at *14 (putting Plaintiff in SHU for filing a grievance constitutes an adverse action). Furthermore, the temporal proximity between Plaintiff's grievance concerning the bags and his being placed in SHU supports causation for purposes of this motion. *See Baskerville,* 224 F.Supp.2d at 732. Therefore, I recommend that Defendant Beard's motion to dismiss the Plaintiff's retaliation claim against him be denied.

4. *Retaliation Claim Against Defendants Briggs and Tyndall*

Destruction of Plaintiff's legal material and documents for his Second Circuit appeal constitutes an adverse action for purposes of the retaliation analysis. *See Smith v. City of New York,* 2005 WL 1026551, *3, 2005 U.S. Dist. LEXIS 7903, at *10 (destruction of prisoner's legal papers and personal property qualifies as an adverse action for retaliation purposes). However, Plaintiff has not alleged that either Briggs or Tyndall was involved in or even aware of Plaintiff's lawsuit or grievance at the time they are alleged to have emptied a container of melted ice into a bag filled with legal documents. Therefore, the Complaint does not make a facially plausible showing of causation against Briggs and Tyndall, and for that reason I recommend that Plaintiff's retaliation claim against those defendants be dismissed. Because Plaintiff may be able to correct the deficiency in an amended complaint, I recommend that he be granted leave to amend.

5. *Retaliation Claim Against Defendant Moehs*

**\*11** The only factual allegations in Plaintiff's Complaint regarding Defendant Moehs are that he replaced Dr. Rosner as Plaintiff's health care provider, informed Plaintiff that he would not continue with the recommended course of treatment necessary to improve Plaintiff's medical condition or provide him with the recommended TENS unit, and told Plaintiff to live with the pain. (Dkt. No. 1 at ¶ 31.) In his opposition to Defendants' motion to dismiss, Plaintiff has asked the Court to infer that Defendant Moehs substituted himself for Dr. Rosner in order to disapprove the recommended course of treatment because Plaintiff had complained to the Chief Medical Officer about not receiving adequate medical care. (Dkt. No. 27 at p. 5.)

The Court finds that the allegations in Plaintiff's Complaint do not permit the inference Plaintiff has asked it to make. *See Friedl v. City of New York,* 210 F.3d 79, 86 (2d Cir.2000) (retaliation claim must be "supported by specific and detailed factual allegations" and "not stated in wholly conclusory terms.") (citation and internal quotation marks omitted).

Plaintiff has failed to allege that Moehs had any knowledge of his complaint to the Chief Medical Officer when he denied Plaintiff the treatment recommended by the therapist, thus failing to satisfy the causal relationship prong of the retaliation analysis. *See Wilson,* 2012 WL 3704996, at *9, 2012 U.S. Dist. LEXIS 12193, at *24. Plaintiff filed the grievance and made complaints to the Chief Medical Officer prior to his examination by Dr. Rosner and to the initial therapy sessions. *See Id.* at ¶¶ 30–31. There are no allegations in the Complaint suggesting that Moehs was the subject of the grievance or complaints or that he would otherwise have any reason to retaliate against Plaintiff by denying him necessary medical care.

In light of Plaintiff's failure to make a facially plausible showing of causal connection, I recommend that his retaliation claim against Defendant Moehs be dismissed. However, because Plaintiff's grievance and complaints to the Chief Medical Officer constitute constitutionally protected activity, and the denial of necessary medical treatment in retaliation for the filing of a grievance or making a complaint is sufficient to satisfy the adverse action requirement of the retaliation claim

analysis, I recommend that Plaintiff be granted leave to amend should he be able to plead specific facts supporting causation.[FN10]

> FN10. *See Williams v. Fisher,* No. 02 Civ. 4558(LMM), 2003 WL 22170610, at *10–11, 2003 U.S. Dist. LEXIS 16442, at ——33–34 (S.D.N.Y. Sept.18, 2003) (McKenna, J) (allegation that prison doctor revoked plaintiff's necessary medical treatment because he filed a grievance is sufficient for second prong of retaliation claim analysis).

**E. Claims of Cruel and Inhuman Treatment and/or Medical Indifference Against Defendants Pawlin, Moehs, McAuliffe, Barkley, Hulihan, and Lindquist**

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted).

**\*12** A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement. Under the objective requirement, "the deprivation alleged must be objectively sufficiently serious [;] ... a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834 (citations and internal quotation marks omitted). Under the subjective requirement, a plaintiff must demonstrate that a prison official acted with deliberate indifference to an inmate's health or safety. *Id.* In *Farmer,* the Supreme court found it "fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding the risk." *Id.* at 837.

In fulfilling their duty to "provide humane conditions of confinement," prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care. "The plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted), *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). There is no bright-line test to measure the seriousness of a prisoner's medical condition. *Stevens v. Goord,* 535 F.Supp.2d 373, 383 (S.D.N.Y.2008). However, the Second Circuit has set forth factors to consider when determining whether an alleged medical condition is sufficiently serious, including but not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702. Inquiry into whether a plaintiff had a serious medical need "must be tailored to the specific circumstances of each case." *Smith,* 316 F.3d at 185.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). Thus, to establish deliberate

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer, 511 U.S. at 837; Chance, 143 F.3d at 702–03.* The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *See Farmer, 511 U.S. at 825; Ross v. Giambruno, 112 F.3d 505 (2d Cir.1997).* An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle, 429 U.S. at 105–6.*

**\*13** Prison officials can deprive inmates of medical treatment by unnecessarily delaying adequate medical treatment. *Smith, 316 F.3d at 185.* Where a plaintiff's claim is one of a temporary delay in the provision of otherwise adequate treatment, "it is appropriate to focus on the challenged delay ... in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eighth Amendment claim." *Id.*

### 1. Claim of Cruel and Inhuman Treatment By Defendant Pawlin

Plaintiff has alleged that he suffered from lower back strain after being required to carry his personal belongings from SHU to his assigned housing unit. (Dkt. No. 1 at ¶ 28.) According to Plaintiff, Defendant Pawlin thereafter subjected him "to a pattern of harassing inter-facility movements ... which required him to move his belongings to different housing units." (Dkt. No. 1 at ¶ 28.) "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, 511 U.S. at 837.* Even if requiring Plaintiff to move his personal belongings to different housing units when he was suffering from lower back strain could pass as an "unnecessary and wanton infliction of pain ... incompatible with the evolving standards of decency that mark the progress of a maturing

society," *Estelle, 429 U.S. at 102,* Plaintiff has not alleged facts showing that Pawlin was aware of Plaintiff's back strain at the time he directed the moves, that Plaintiff complained to Pawlin about any impact the moves had on his back, or that Plaintiff suffered any further harm to his back as a result of the moves to different housing units. Therefore, Plaintiff has failed to plead a facially plausible claim of deliberate indifference to Plaintiff's health or safety, and the Court recommends that Plaintiff's Eighth Amendment claim against Defendant Pawlin for cruel and inhuman treatment be dismissed, and that Plaintiff be given leave to amend.

### 2. Claim of Medical Indifference Against Defendant Moehs

Plaintiff claims that the physical therapist who had worked with him had recommended that Plaintiff be given additional physical therapy sessions and a TENS unit for his lower back pain, and that Defendant Moehs refused to authorize both when he took over as Plaintiff's physician. (Dkt. No. 1 at ¶ 31.) An inmate's "mere disagreement over the proper treatment does not create a constitutional claim ... [s]o long as the treatment given is adequate." *Chance, 143 F.3d at 703.* Construing Plaintiff's complaint liberally, as is required in light of his *pro se* status, and accepting the allegations as true, Plaintiff claims that Moehs not only rejected the treatment recommended by the therapist, but that he declined to provide any treatment at all to address Plaintiff's excruciating back pain, telling him instead to learn to live with the pain. (Dkt. No. 1 at ¶ 31.)

**\*14** Plaintiff has described himself as having "excruciating lower back pain" over an extended period of time. (Dkt. No. 1 at ¶¶ 27, 35–36.) Severe back pain, especially if it lasts for an extended period of time, as Plaintiff claims, can constitute a "serious medical need" under the Eighth Amendment, there by satisfying the first element of a medical indifference claim. [FN11] *See Guarneri v. Hazzard, No. 9:06–CV–0985, 2008 WL 552872, at *6, 2008 U.S. Dist. LEXIS 14809 (Feb. 27, 2008)* (Mordue, C.J., Homer, M.J.) (citing *Nelson v. Rodas, No. 01 Civ. 7887(RCC)(AJP), 2002 WL 31075804, at *14, 2002 U.S. Dist. LEXIS 17359, at *50 (S.D.N.Y. Sept. 17, 2002)* (Peck, M.J.) (collecting cases)). Given Plaintiff's alleged level of back pain and the length of time over which it lasted, Moehs' refusal to allow him to follow through with the recommended therapy and allow Plaintiff a TENS unit,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

compounded by his alleged failure to prescribe any treatment whatsoever to address Plaintiff's back condition and pain, constitutes a facially sufficient claim of deliberate indifference for purposes of Plaintiff's 12(b)(6) motion. FN12 Therefore, the Court recommends that Defendant Moehs' motion to dismiss Plaintiff's Eighth Amendment medical indifference claim against him be denied.

FN11. Dental conditions left untreated for a significant period of time can also constitute a serious medical need under the Eighth Amendment. *See, e.g., Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) (tooth cavity which will degenerate with increasingly serious implications if neglected over sufficient time presents a serious medical need); *Chance,* 143 F.3d at 702 (untreated dental problems resulting in chronic tooth pain for six months resulting in tooth degeneration constitute serious medical needs); *see also Fields v. Gander,* 734 F.2d 1313, 1314–15 (8th Cir.1984) (claim based on plaintiff's inability to eat properly due to dental problems).

FN12. If it turns out that Defendant Moehs did provide Plaintiff with some course of treatment for his back, albeit not the treatment recommended by the therapist or the treatment Plaintiff would have chosen for himself, and did not merely tell Plaintiff to live with the pain as alleged, Plaintiff's medical indifference claim is unlikely to survive a motion for summary judgment.

3. *Claim of Medical Indifference Against Defendants McAuliffe and Bezio Regarding Medical and Dental Care to Inmates in SHU*

Plaintiff has alleged that on two separate occasions when he in SHU he was not allowed to attend scheduled dental and medical appointments because of a routine practice denying inmates in SHU reasonable adequate dental and medical care. (Dkt. No. 1 at ¶¶ 27 and 29.) The basis for Plaintiff's Eighth Amendment medical indifference claim against Defendants McAuliffe and Bezio is that they "were cognizant of this routine practice, and/or have knowingly implemented or allowed the implementation of the practice of denying prisoners confined in the SHU reasonable adequate dental and medical care." *Id.* at ¶ 27. The dental appointment Plaintiff missed was for "troubling wisdom teeth," which were painful and one of which was ultimately extracted after Plaintiff filed a grievance. *Id.* at ¶ 30. The medical appointment was for Plaintiff's chronic lower back problem that left him with excruciating pain. *Id.* at ¶ 27.

In a § 1983 action against a defendant in his or her individual capacity, the plaintiff must establish that the defendant, acting under color of state law, caused the plaintiff to be deprived of a federal right. *Kentucky v. Graham,* 473 U.S. at 166. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). The United States Supreme Court has made it clear that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"); *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986) ("*[R]espondeat superior* liability does not lie against corrections officers in Section 1983 actions; holding a position in a hierarchical chain of command is insufficient by itself to support personal involvement").

**\*15** However, the Second Circuit has held that personal involvement by a supervisor under § 1983 may be found where the supervisor has: "(1) participated directly in the alleged constitutional violation, (2) failed to remedy a violation after learning of it through a report or appeal,FN13 (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in managing subordinates who committed constitutional violations, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.FN14

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

FN13. There are no allegations in the Complaint that McAuliffe and Bezio had direct knowledge that Plaintiff had a serious medical need while he was in SHU and nonetheless refused to allow him to keep his dentist and medical appointments. *See Farmer,* 511 U.S. at 825, 837 (deliberate indifference requires defendant's awareness of facts from which he or she could draw an inference that plaintiff had a serious medical need, that inference was actually made, and that defendant consciously and intentionally disregarded or ignored the need).

FN14. The Supreme Court's decision in *Ashcroft,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 has arguably nullified some of the categories set forth in *Colon. See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of these motions that *Colon* remains good law.

Under *Colon,* if McAuliffe and Bezio, acting in a supervisory capacity, either created a policy resulting in violation of an inmate's Eighth Amendment rights, or allowed the continuation of such a policy, they could be subject to liability under 42 U.S.C. § 1983. In this case, however, under even the most liberal reading of Plaintiff's Complaint, he has not alleged any facts to support such a claim. The Complaint is devoid of any factual enhancement of his conclusory assertion that McAuliffe and Bezio were aware of the allegedly routine practice, were involved in implementing it, or that they had authority to stop the practice of denying SHU prisoners "reasonable adequate dental and medical care" and allowed it to continue. *Id.* at ¶ 30. *See Iqbal,* 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement [do] not suffice" to state a claim) (internal quotation marks omitted). Therefore, the Court recommends that Defendants McAuliffe and Bezio's motion to dismiss Plaintiff's Eight Amendment medical indifference claim against them be granted with leave granted Plaintiff to amend.

4. *Claim of Indifference to Serious Medical Needs Against Defendants Barkley, Hulihan, and Lindquist*

Plaintiff identifies Defendants Barkley and Hulihan as superintendents of correctional facilities and Defendant Lindquist as a grievance appeal officer. (Dkt. No. 1 at ¶¶ 14 and 16.) Plaintiff has alleged that while he was in SHU at Mid–State, he continued to experience excruciating back pains and a painful wisdom tooth and requested and was denied treatment by Defendant Dr. John Doe based upon Defendant Moehs' medical notation entry. *Id.* at ¶ 35. According to Plaintiff, the only dental or medical care he received while in SHU at Mid–State was dental x-rays. *Id.* Plaintiff has alleged in conclusory fashion that he made detailed and articulate complaints to Defendants Barkley, Hulihan, and Lindquist about being deprived of necessary and adequate medical and dental care at Mid–State, that the complaints were denied as unsubstantiated, and that no significant steps were taken to ensure that care was given during the time period he was at Mid–State prior to his transfer to Downstate. (Dkt. No. 1 at ¶ 36.)

**\*16** Supervisory personnel may be held liable under § 1983 for "fail[ure] to remedy a violation after learning of it through a report or appeal." *Colon,* 58 F.3d at 873. However, mere receipt of a report or complaint or request for an investigation by a prison official is insufficient to hold the official liable for the alleged constitutional violations. *See, e.g., Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (claim that official ignored prisoner's letter of protest not enough to hold official liable); *Walker v. Pataro,* No. 99 Civ. 4607(GBD)(AJP), 2002 WL 664040, at \*12, 2002 U.S. Dist. LEXIS 7067, at \*43 (S.D.N.Y. Apr. 23, 2002) (Peck, M.J.) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to black-letter law that 1983 does not impose *respondeat superior* liability.").

"On the other hand, where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint), personal involvement will be found under the second *Colon* prong: the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong." *Walker,* 2002 WL 664040, at \*13,

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

2002 U.S. Dist. LEXIS 7067, at *44 (citations and internal quotation marks omitted) (in denying superintendent's motion for summary judgment the court noted that responses to grievances or other inmate complaints "which attempt to defend or explain alleged constitutional violations have been found sufficient to sustain a plaintiff's claim of personal involvement."); *see also Johnson,* 234 F.Supp.2d at 363 ("personal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievances or otherwise reviews and responds to a prisoner's complaint.").

Allegations of awareness on the part of a correctional facility superintendent of an ongoing failure by prison officials to provide a plaintiff with medical treatment for injuries, coupled with failure to remedy the wrong after learning of it through a grievance procedure have been found to be sufficient to survive a Rule 12(b)(6) motion. *See Cicio v. Graham,* No. 9:08–CV–534, 2009 WL 537534, at *7, 2009 U.S. Dist. LEXIS 16675 (N.D.N.Y. Mar.3, 2009) (Mordue, C.J.) (Peebles, M.J.). However, the naked assertion in Plaintiff's Complaint that he complained to Defendants Barkley, Hulihan, and Lindquist that he was being deprived of reasonable and adequate dental care, and that his complaints were found unsubstantiated is simply too lacking in factual detail to show that Plaintiff is entitled to relief. *See Iqbal,* 556 U.S. at 678 (Rule 8(a)(2) "demands more than an unadorned, the defendant-harmed-me accusation.") Plaintiff's Complaint contains absolutely no factual enhancement regarding the manner in which complaints were conveyed to each of the defendants, the content of the complaints, the timing of the complaints, or the responses of each of those Defendants to those complaints. Therefore, I recommend that Defendants Barkley, Hulihan, and Lindquist's motion to dismiss Plaintiff's Eighth Amendment medical indifference claim against them be granted and that Plaintiff be granted leave to amend.

**G. Claims for Denial of Due Process Against Defendants Lane, Beard, Jones, McAuliffe, and Bezio**

**\*17** To make out a Section 1983 claim for denial of Fourteenth Amendment due process rights, a plaintiff must demonstrate: "(1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process." *Giano v. Selsky,* 238 F.3d

223, 225 (2d Cir.2001) (internal quotation marks omitted). As to the first prong, an inmate can show deprivation of a liberty interest under the due process clause when a prison condition imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandlin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As to the second prong, the minimal due process requirements include: "(a) written notice of the claimed violations ...; (b) disclosure [to the prisoner] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body ...; and (f) a written statement by the fact finders as to the evidence relied on ...." *Wolff v. McDonald,* 418 U.S. 539, 559, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

*1. Due Process Claim Arising Out of Misbehavior Reports Involving Plaintiff's Draft Bags*

Plaintiff has asserted a claim for denial of his due process rights under the Fourteenth Amendment against Defendants Lane, Beard, McAuliffe[FN15] and Jones arising out of the institution, execution, and enforcement of a disciplinary proceeding against him based upon fabricated allegations and in violation of the state-wide directive allowing inmates to store two draft bags of personal possessions in their cells on a temporary basis. (Dkt. No. 1 at ¶¶ 47–48.) Construing Plaintiff's Complaint liberally, Defendants Lane and Beard are accused of filing fabricated charges and a draft bag possession charge against him. Defendant Jones was the hearing officer on the charges and ruled in favor of Plaintiff on the allegedly fabricated charges but found him guilty on the draft bags possession charge in violation of the state-wide directive. *Id.* at ¶ 28.

> FN15. Although Plaintiff has asserted a due process claim against Defendant McAuliffe in connection with the misbehavior report filed by Lane and Beard that resulted in the imposition of punitive sanctions by Defendant Jones, there are no factual allegations in the Complaint connecting Defendant McAuliffe to that claim.

The Court's initial inquiry is whether Plaintiff has

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

pleaded facts supporting a facially plausible claim that a liberty interest was infringed by the false charges and hearing determination since Plaintiff had no right to due process unless a liberty interest was infringed. *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004). In his Complaint, Plaintiff has alleged he was punitively confined to SITU by Jones.[FN16] (Dkt. No. 1 at ¶ 29.) Plaintiff claims that he was in SITU for a few weeks. *Id.* While he was unable to attend dental and medical appointments while he was in SITU, Plaintiff has described it as a routine practice rather than an atypical occurrence. *Id.* at ¶ 27. *See Palmer,* 364 F.3d at 64 (both duration and conditions are considered in determining whether SHU confinement rises to the level of "atypical and severe hardship"). The alleged violation of the state-wide DOCCS storage directive by Defendants Lane, Beard, and Jones help Plaintiff because failure to follow a DOCCS directive does not give rise to a Section 1983 claim. *See Cabassa v. Gummerson,* No. 9:01–CV–1039, 2008 WL 4416411, *6, n. 24, 2008 U.S. Dist. LEXIS 72975, at *6, n. 24 (N.D.N.Y. Sept.24, 2008) (Hurd, D.J.) (violation of a DOCCS directive does not give plaintiff a claim under 42 U.S.C. ¶ 1983).

> FN16. The Court has inferred that the SHU sanction was imposed by Jones as a result of the guilty determination on the draft bag possession charge.

**\*18** Because the Plaintiff has failed to allege a liberty interest, it is not necessary to reach the issue of whether he was provided sufficient process in the hearing on the allegedly fabricated charges.[FN17] Therefore, the Court recommends that Defendants Lane, Beard, and Jones' motion to dismiss Plaintiff's Fourteenth Amendment due process claim be granted with leave to Plaintiff to amend.

> FN17. The Court has recommended that Defendants Lane and Beard's motion to dismiss Plaintiff's retaliation claim arising out of the allegedly false misbehavior report be denied. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997) (filing of a false misbehavior report may be actionable when made in retaliation for the exercise of constitutional rights).

*2. Due Process Claim Against McAuliffe and Bezio Arising Out of Plaintiff's Alleged Denial of a Fair and Impartial Hearing*

Plaintiff has also asserted a due process claim against Defendants McAuliffe and Bezio in connection with his disciplinary hearing in front of McAuliffe. Plaintiff's due process claim against McAuliffe arises out of his denial of Plaintiff's request for access to documentary evidence needed to defend himself in a disciplinary hearing, his deliberate and purposeful misrepresentation to Plaintiff, and his denial of a fair and impartial disciplinary hearing. His claim against Bezio arises out of Bezio's affirmance of McAuliffe's determination of guilt. (Dkt. No. 1 *at* ¶ 49.) Plaintiff was placed in SHU for six months, with a concomitant loss of all privileges and good time credit, which extended his sentence to the maximum, as a result of the guilty finding. *Id.* at ¶ 33.

The Supreme Court ruled in *Sandlin* that the Constitution did not require that restrictive confinement be preceded by a hearing providing procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. The Second Circuit considers the duration of SHU confinement as well as the severity of the conditions. *See Palmer,* 364 F.3d at 65. Although no bright-line rule establishes a period of SHU confinement beyond which a due process right is implicated, *id.* at 64, the Second Circuit has held that a 101 day confinement does not alone meet the *Sandlin* standard of atypicality. *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004), *cert. denied,* 543 U.S. 1187, 125 S.Ct. 1398, 161 L.Ed.2d 190 (2005) (citing *Sealey v. Giltner,* 197 F.3d 578, 589 (2d Cir.1999)). A liberty interest has, on the other hand, been found to be infringed by a confinement of 305 days. *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000).

SHU confinement of less than 101 days can constitute atypical and significant hardships if the conditions were more severe than normal SHU conditions or "a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 65 (citing *Ortiz,* 323 F.3d at 195 & n. 1 and *Colon,* 215 F.3d at 232 & n. 1) In *Palmer,* the Second Circuit explained "[w]here the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

plaintiff was confined [in SHU] for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required [to determine whether a prisoner's liberty interest has been infringed]." 364 F.3d at 64–65.

**\*19** Plaintiff's allegations of a 180 day confinement in SITU with no medical care for an excruciatingly painful back and painful wisdom tooth is sufficient to satisfy the atypical conditions requirement for a liberty interest for pleading purposes. Plaintiff has also asserted facts adequate to satisfy the pleading requirements for a denial of due process in his disciplinary hearing. "Chief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real,* 471 U.S. 491, 496, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). Plaintiff has alleged that McAuliffe twice denied his request for documents relevant to his defense.

Prisoners also have a constitutional right to a fair and impartial hearing officer. *See, e.g., Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004). Plaintiff claims that McAuliffe made false representations to him to induce him to enter into an involuntary plea. While Plaintiff's due process claim against McAuliffe may not survive a motion for summary judgment, the allegations in the Complaint are adequate to assert a facially plausible claim of denial of due process.

Plaintiff has also alleged facts adequate to state a claim against Defendant Bezio for denial of due process in affirming the hearing determination. According to Plaintiff, in his appeal, he informed Bezio that he had been denied a fair and impartial hearing, that his guilty plea was unconstitutionally induced, and that he was denied due process and equal protection. (Dkt. No. 1 at ¶ 34.) It appears from the Complaint that Bezio affirmed the hearing determination while Plaintiff was still in SHU, and that as a result of the affirmance, Plaintiff ended up serving the full 180 day SITU confinement and the maximum of his original sentence. *Id.* Personal involvement of a supervisory official may be shown by evidence that after learning of the violation of a prisoner's

rights through an appeal, he failed to remedy the wrong. *Colon,* 58 F.3d at 873.

The consequences of McAuliffe's alleged violation of Plaintiff's due process rights—Plaintiff's confinement in SHU and loss of good time—were ongoing at the time Bezio affirmed the hearing determination. *Id.* at 34. Bezio therefore had the opportunity to remedy the violation at least to some degree and failed to do so, thereby leaving him potentially subject to personal liability. *See Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (finding personal involvement where superintendent denied appeal from hearing that allegedly violated plaintiff's rights); *Delgado v. Bezio,* No. 09 Civ. 6899(LTS), 2011 WL 1842294, at \*8, 2011 U.S. Dist. LEXIS 51917, at \*25–26 (S.D.N.Y. May 9, 2011) (Swain, D.J.) (denying motion to dismiss claim against official who heard appeal from disciplinary hearing); *Johnson v. Coombe,* 156 F.Supp.2d 273, 278 (S.D.N.Y.2001) (denying appeal officer's motion to dismiss because prisoner alleged he had been denied the opportunity to call a witness at disciplinary hearing); *Moore v. Scully,* No. 90 Civ 3817(MEL), 1993 WL 22129, at \*3, 1993 U.S. Dist. LEXIS 841, at \*10–11 (S.D.N.Y. Jan. 26, 1993) Laker, D.J.) (denying summary judgment where superintendent denied affirmed disciplinary hearing result where plaintiff alleged that hearing denied due process).

**\*20** Based upon the foregoing, the Court recommends that Defendant Bezio's motion to dismiss Plaintiff's Fourteenth Amendment due process claim be denied.

**H. Plaintiff's Pendent State Claims**

Plaintiff has asserted three distinct claims for relief under New York State law against Defendants for acts or omissions within the scope of their employment. (Dkt. No. 1 at ¶¶ 51–55.) They are: (1) *respondeat superior* claims against Defendants Lindquist, Barkley, and Hulihan for negligence in performing their administrative duty to supervise their subordinates' work performance as it related to Plaintiff's care and treatment, *Id.* at ¶ 51; (2) claims against Defendants Lane, Beard, Jones, McAuliffe, and Bezio for wrongful confinement and deprivation of Plaintiff's liberty interest by denying him the right to offer relevant documentary evidence for the preparation and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

presentation of his defense in a disciplinary proceeding in violation of New York State Rules and Regulations and DOCCS policy directives, *Id.* at ¶¶ 52–53; and (3) negligence and malfeasance in providing Plaintiff medical and dental care. Defendants argue that Plaintiff's state law claims should be dismissed pursuant to New York Correction Law § 24. (Dkt. No. 23–1 at pp. 20–22.) Defendants are correct. Section 24 provides as follows:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

This statute precludes inmates from suing DOCCS employees in their personal capacity in New York State courts. *See Arteaga v. State,* 72 N.Y.2d 212, 532 N.Y.S.2d 57, 62, 527 N.E.2d 1194 (1988). The statutory bar is intended to permit correction officers to perform the task of maintaining safety and security in correctional facilities "undeterred by the fear of personal liability and vexatious suits, which could substantially impair the effective performance of a discretionary function." *Ierardi v. Sisco,* 119 F.3d 183, 187 (2d Cir.1997). The bar also applies to pendent state law claims in federal court because "[i]n applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996) (citations omitted). "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id.* at 15.

**\*21** In 2009, the United States Supreme Court held Correction Law § 24 unconstitutional to the extent it precludes inmates from pursuing § 1983 claims. *Haywood v. Drown,* 556 U.S. 729, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). However, the courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Correction Law § 24. *See O'Diah v. Fischer,* No. 08–CV–941 (TJM/DRH), 2012 WL 987726, at \*21, 2012 U.S. Dist. LEXIS 39232, at \*60 (N.D.N.Y. Feb.28, 2012) (Homer, M.J.); *Joy v. New York,* No. 5:09–CV–841 (FJS/ATB), 2010 WL 3909694, at \*4–5, 2010 U.S. Dist. LEXIS 104641, at \*15–16 (N.D.N.Y. Sept.30, 2010) (Scullin, S.D.J.); *Gillard v. Rovelli,* No. 9:09–CV–0860 (NAM/GHL), 2010 WL 4905240, at \*16, 2010 U.S. Dist. LEXIS 124737, at \*47–48 (N.D.N.Y. Sept.29, 2010) (Lowe, M.J.); *Crump v. Ekpe,* No. 9:07–CV–1331, 2010 WL 502762, at \*18, 2010 U.S. Dist. LEXIS 10799, at \*61 (N.D.N.Y. Feb.8, 2010) (Kahn, D.J., Peebles, M.J.). For the reasons set forth in those decisions, I recommend that Defendants' motion to dismiss Plaintiff's pendent state law claims in this case be granted, without leave to amend.

**ACCORDINGLY,** it is hereby

**RECOMMENDED,** that Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 23) be ***GRANTED IN PART AND DENIED IN PART.*** Specifically, the Court recommends that Defendants' motion be ***GRANTED*** as follows:

1. Dismissal on Eleventh Amendment grounds of all claims seeking money damages against the moving Defendants in their official capacities, without leave to amend;

2. Dismissal of all of Plaintiff's state law claims against Defendants Lindquist, Barkley, Hulihan, Lane, Beard, Jones, Moehs, McAuliffe, and Bezio (Dkt. No. 1, Counts XV–XIX), without leave to amend; and

3. Dismissal of the following claims, with leave to amend: (a) First Amendment claim against Defendants Briggs and Tyndall for denial of access to courts; (b) First Amendment retaliation claims against Defendants Pawlin,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 600213 (N.D.N.Y.)

(Cite as: 2013 WL 600213 (N.D.N.Y.))

Briggs, Tyndall, and Moehs; (c) Eighth Amendment claim of cruel and inhuman treatment against Defendant Pawlin; (d) Eighth Amendment claim for indifference to serious medical needs against McAuliffe, Bezio, Barkley, Hulihan, and Lindquist; and (e) Fourteenth Amendment denial of due process claims against Defendants Lane, Beard, and Jones; and it is further

**RECOMMENDED** that Defendants' motion be **DENIED** as to the following: (a) Plaintiff's claim for retaliation against Defendants Lane and Beard; (b) Plaintiff's Eighth Amendment medical indifference claim against Defendant Moehs; and (c) Plaintiff's Fourteenth Amendment violation of due process claim against Defendants McAuliffe and Bezio; and it is further

**RECOMMENDED** that Defendants be directed to answer those allegations in the Plaintiff's Complaint that relate to the claims on which dismissal is denied and those which relate to the Doe Defendants.

**\*22** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2013.

Jean-Laurent v. Lane
Slip Copy, 2013 WL 600213 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 599893 (N.D.N.Y.)

(Cite as: 2013 WL 599893 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Phillip JEAN–LAURENT, Plaintiff,
v.
C.O. LANE; C.O. Briggs; C.O. Tyndall; John Doe # 1;
John Doe # 2; Sgt. Beard; Sgt. Pauline; Lt. Jones; DSS
McAuliffe; Dr. Mays; Dr. John Doe; Jane Doe; Supt.
Barkley; Supt. Hulihan; Dep. Comm. Linquist,
Defendants.
No. 9:11–CV–186 (NAM/TWD).

Feb. 15, 2013.
Phillip Jean–Laurent, Ozone Park, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State
of New York, Gregory J. Rodriguez, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

### ORDER

NORMAN A. MORDUE, District Judge.

*1 The above matter comes to me following a
Report–Recommendation by Magistrate Judge Therese
Wiley Dancks, duly filed on the 24th day of January 2013.
Following fourteen (14) days from the service thereof, the
Clerk has sent me the file, including any and all objections
filed by the parties herein.

After careful review of all of the papers herein,
including the Magistrate Judge's ReportRecommendation,
and no objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in
its entirety.

2. The Clerk of the Court shall serve a copy of this
Order upon all parties and the Magistrate Judge assigned

to this case.

**IT IS SO ORDERED.**

N.D.N.Y.,2013.

Jean-Laurent v. Lane
Slip Copy, 2013 WL 599893 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 799969 (N.D.N.Y.)

(Cite as: 2009 WL 799969 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Patricio LINARES, Plaintiff,
v.
ALBRITH, Registered Nurse; Eri Schwebke; Anthony DeLarosa,[FN1] Administrator for the Messhall; and R.N. Nurse Kudlack, Defendants.

FN1. Plaintiff misnamed Defendants "Albrith," "DeLaRosa," and "Eri Schwebke," whose correct names are M. Joy Albright, Anthony DeRosa, and Eric Schwebke. The Court shall refer to these Defendants by their proper names.

Civ. No. 9:03-CV-1408 (LEK/RFT).

Jan. 9, 2009.
West KeySummary **Civil Rights 78** 🔑 **1319**

78 Civil Rights

    78III Federal Remedies in General
        78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
            78k1319 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    The Prison Litigation Reform Act (PLRA) precluded a state inmate from bringing his federal civil rights action, which alleged that prison officials failed to provide timely medical treatment for his fractured finger, in federal court as a result of failing to exhaust administrative remedies. There was no dispute that the inmate's grievance was not appealed to the Central Office Review Committee for a final administrative determination. 42 U.S.C.A. § 1983; 42 U.S.C.A. § 1997e(a).

Patricio Linares, Batavia, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Richard Lombardo, Esq., Assistant Attorney General, Megan M. Brown, Esq., Assistant Attorney

General, of Counsel, Albany, NY, for Defendants.

*REPORT-RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

    **\*1** *Pro se* Plaintiff Patricio Linares brought a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that all of the above named Defendants violated his constitutional rights when they failed to provide timely medical treatment for his fractured finger. Dkt. No. 1, Compl. at ¶¶ 40-42. He further alleged that Defendants Kudlack's and Albright's failure to provide timely medical attention was done in retaliation for past grievances Linares filed against them. *Id.* at ¶¶ 18, 40, & 42.

    On September 26, 2007, this Court issued a Report-Recommendation and Order recommending that the Honorable Lawrence E. Kahn, Senior United States District Judge, grant Defendants' Motion for Summary Judgment and dismiss the entire Complaint. Dkt. No. 85. The basis for our recommendation of dismissal was our determination that the Defendants' actions did not amount to violations of Plaintiff's constitutional rights. We then reasoned that without the constitutional violation, there was no need to consider the Defendants' affirmative defense that Plaintiff failed to exhaust administrative remedies. *Id* at p. 13. Those recommendations were adopted by Judge Kahn and Judgment was issued on behalf of Defendants on December 4, 2007. Dkt. Nos. 88-89. Plaintiff appealed that Decision and Judgment to the Second Circuit Court of Appeals. Dkt. No. 90. Thereafter, on November 20, 2008, the Second Circuit issued a Mandate upholding the Court's ruling in so far as the Court dismissed the claims against Defendants Kudlack and DeRosa. Dkt.No. 97.[FN2] However, the Second Circuit remanded the matter to the District Court for the limited purpose of supplementing the record as to whether Plaintiff exhausted his administrative remedies with respect to his deliberate indifference claims against Defendants Albright and Schwebke and his retaliation claim against Defendant Albright. *Id.* (citing the procedures set forth in *United States v. Jacobson,* 15 F.3d 19, 21-22 (2d Cir.1994), wherein the Circuit maintains its

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 799969 (N.D.N.Y.)

(Cite as: 2009 WL 799969 (N.D.N.Y.))

jurisdiction over the appeal thus obviating the need for the filing of a new notice of appeal after the District Court supplies its supplementation).

> FN2. The Mandate was not docketed until December 2, 2008. On December 3, 2008, Judge Kahn referred the matter back to this Court for a Report and Recommendation. Dkt. No. 98.

We start by stating the general law regarding a prisoner's obligation to exhaust available administrative remedies and then assess whether Plaintiff indeed satisfied his obligation with regard to the claims asserted against Defendants Schwebke and Albright.

## I. DISCUSSION

The Prison Litigation Reform Act of 1996 (PLRA) imposes several restrictive conditions on a prisoner's ability to bring a federal civil rights action. With regard to the issue before this Court, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citations omitted).

*2 Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised and proven by the defendants. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999) (noting that exhaustion of remedies is an affirmative defense); Howard v. Goord, 1999 WL 1288679, at *3 (E.D.N.Y. Dec.28, 1999) (citations omitted) (noting that the burden remains with the defendants to prove that administrative remedies had not been exhausted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." Id. (citations omitted).

In New York State, the administrative remedies

consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Review Committee (IGRC), a committee comprised of both inmates and facility employees. FN3 N.Y. COMP.CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaint and then issues a written determination. Id. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. Id. at § 701.5(c). Finally, if the superintendent's decision is appealed, the Central Office Review Committee (CORC) makes the final administrative determination. Id. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. Cosme v. Furman, 584 F.Supp.2d 610, 2008 WL 4823604, at *1 (W.D.N.Y. Nov.6, 2008) (citing Neal v. Goord, 267 F.3d 116, 121 (2d Cir.2001), overruled on other grounds by Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12).

> FN3. The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chairperson (who may be an inmate, staff member, or volunteer). N.Y. COMP.CODES R. & REGS tit.7, § 701.4.

Plaintiff's claimed constitutional violations evolved from an accident that occurred on December 5, 2000, when a pan fell on Plaintiff's right hand while he was performing his duties as a back-sink worker in the Coxsackie Correctional Facility mess hall. Compl. at ¶ 14. Since the Second Circuit affirmed the District Court's dismissal of the Eighth Amendment claims against Defendants DeRosa and Kudlack, we need not reiterate those claims here. We will, however, briefly restate the bases for the Eighth Amendment claims against Defendants Schwebke and Albright and the First Amendment claim against Albright. Linares asserted that Defendant Schwebke, the Head Cook, violated the Eighth Amendment when, after being informed of the sink accident, refused to send Plaintiff to the infirmary so he could get medical attention for his right hand injury. FN4 Id. at ¶¶ 21-27. Plaintiff further asserted that Nurse Albright was deliberately indifferent to his serious medical needs when she failed to "produce" Plaintiff to the infirmary as promised and when she failed to order necessary x-rays for

Slip Copy, 2009 WL 799969 (N.D.N.Y.)

(Cite as: 2009 WL 799969 (N.D.N.Y.))

Plaintiff. *Id.* at ¶ 17 & 19. Finally, Plaintiff asserted that Albright acted in this manner in retaliation against Linares for his previously filed grievances against Albright in 1999 and 2000. *Id* at ¶¶ 18, 40, & 42. The following facts relate to the issue of whether Plaintiff fully exhausted his administrative remedies with respect to his deliberate indifference claims against Defendants Albright and Schwebke and his retaliation claim against Defendant Albright.[FN5]

> **FN4.** In our prior Report-Recommendation and Order, we noted that Linares appeared to hold Defendants Schwebke and DeRosa responsible for the accident he sustained since the former allegedly failed to provide proper training and protective gloves while the latter allegedly failed to ensure that his subordinates properly trained the workers and provided proper materials. Compl. at ¶¶ 26-27. In addressing this allegation, we stated that "[absent any allegation that either of these Defendants physically caused the pan to fall onto Plaintiff's arm, we believe Plaintiff's attempt to assert an Eighth Amendment claim on these facts is far too tenuous." Dkt. No. 98 at p. 7, n. 4. We are unsure as to whether the Second Circuit seeks supplementation as to Plaintiff's exhaustion of this purported claim.

> **FN5.** We take this moment to note that in opposing Defendants' Motion for Summary Judgment, Linares submitted a document entitled "Statement of Material Facts pursuant to Rule 7.1(a)(3)." Dkt. No. 84 at pp. 3-9. That document, however, did not "mirror the movant[s'] Statement of Material Facts by admitting and/or denying each of the movant[s'] assertions in matching numbered paragraphs." N.D.N.Y.L.R. 7.1(a)(3). In fact, Plaintiff's purported 7.1 Statement bears almost no correlation to Defendants' 7.1 Statement. *Compare* Dkt. No. 77-16, Defs.' 7.1 Statement *with* Dkt. No. 84, Pl.'s 7.1 Statement. As in our previous Report-Recommendation and Order, we are mindful of Plaintiff's *pro se* status and shall, in developing the undisputed facts, refer to his verified Complaint and deposition testimony

when practicable. However, *pro se* status notwithstanding, in light of Plaintiff's failure to *specifically* controvert facts asserted by Defendants, "[a]ny facts set forth in the [Defendants'] Statement of Material Facts shall be deemed admitted[.]" N.D.N.Y.L.R. 7.1(a)(3).

**\*3** In support of their Motion for Summary Judgment, Defendants submitted the Declaration of Thomas J. Carroll, Sr., the Inmate Grievance Program Supervisor at Coxsackie. Dkt. No. 77-8, Thomas J. Carroll, Sr., Decl., dated Feb. 7, 2007. After being apprised of Linares' claims in this action and reviewing Coxsackie records, Mr. Carroll determined that the only grievance Linares filed concerning the December 5th accident and the treatment he received for his injury is grievance number CX-8048-01. *Id.* at ¶ 9, Ex. E; Defs.' 7.1 Statement at ¶ 58. This grievance was completed by Plaintiff, in Spanish, on February 1, 2001, almost two months after the incident, and was received by the IGRC on February 9, 2001, and filed on February 12, 2001; it was also translated into English. Carroll Decl., Ex. E. According to the translated version of the grievance, Linares provides a summary of how he fractured his finger on December 5th and the medical care he received, or didn't receive, during that month. *Id.* at p. 4. After noting that he previously filed two grievances against Nurse Albright for medical negligence, Linares explains that his cast is broken and despite informing unnamed members of the medical department, nothing had been done to rectify the situation. *Id.* Though ample details were provided regarding the quality of medical treatment Linares received at Coxsackie, the only relief sought by the grievance was to have copies of his complaint sent to various individuals including the Inspector General, the Attorney General of the State of New York, the Commissioner, and Lester Wright. *Id.*

After submitting this grievance, but prior to any decision being rendered by the IGRC, Plaintiff had a follow-up examination, on February 7, 2001, by an orthopedist wherein Plaintiff's cast was removed and an x-ray was taken. Defs.' 7.1 Statement at ¶ 47. At that time, the consulting orthopedist determined that Plaintiff's fracture was healing. *Id.* On March 2, 2001, the IGRC rendered its unanimous decision recommending that Linares be seen by a doctor as soon as possible. Carroll

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 799969 (N.D.N.Y.)

(Cite as: 2009 WL 799969 (N.D.N.Y.))

Decl., Ex. E at p. 9. Linares indicated his agreement with the IGRC response by checking the appropriate box and affixing his signature therewith. *Id.* He did not check the boxes indicating his disagreement with the IGRC decision or that he desired to appeal this matter to the superintendent. *Id.* Nevertheless, as explained by Mr. Carroll, because "action by the superintendent was required," the grievance was automatically referred to the superintendent.[FN6] Carroll Decl. at ¶ 11. On March 12, 2001, the superintendent rendered the following response to Linares' complaint: "This grievance is accepted only to the extent that the grievant received appropriate medical attention. If the grievant wants his complaint sent to anyone else, he is free to do so." *Id.,* Ex. E at p. 2. The portion of that decision wherein Linares could state his desire to appeal the superintendent's decision to the CORC was left blank. *Id.* According to Mr. Carroll's review of Coxsackie records, Plaintiff did not appeal the superintendent's decision to CORC.

FN6. It is not entirely clear why this disposition "required" action by the superintendent. Defendants supplied the Court with DOCS Directive 4041, which sets forth the parameters of the Inmate Grievance Program. Carroll Decl., Ex. D. It appears that this Directive is the most current Directive as it mirrors the language in Title 7 of the New York Codes Rules and Regulations at § 700. 1, *et seq.* In this version, committee decisions requiring superintendent action "shall be in the form of recommendations .... [and] must be transmitted to the superintendent for action and response," DOCS Directive 4041(V)(A)(4), and a time-table is provided for transmittal to the superintendent, DOCS Directive 4041(V)(B)(2). While there appears to be a lack of any list explaining which committee decisions require superintendent action, upon information and belief, any favorable ruling by the IGRC must be implemented by the superintendent. *See Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (citing a former version of N.Y. COMP.CODES R. & REGS. tit. 7, § 701.7(a)(4)(vi) for the proposition that "DOCS regulations mandate that favorable IGRC recommendations requiring

action by the superintendent [are] transmitted to the superintendent for review, regardless of whether the inmate makes a formal appeal of that favorable action").

**\*4** At his deposition, Plaintiff testified that after suffering the injury to his right hand, he could not write, but once the cast was removed, he filed a grievance against Defendants Schwebke and DeRosa, which was accepted for filing as CX-8048-01. Dkt. No. 77-9, Richard Lombardo Decl., dated Feb. 12, 2007, Ex. F, Deposition of Patricio Linares, dated Sept. 16, 2005, at p. 32, lines 20-25 & p. 33, line 7. Linares explained that he wrote the grievance in Spanish and it was translated to English, however, much was lost in the translation, such as his complaints about DeRosa and about the mess hall rules. *Id.* at p. 33, lines 19-25; p. 34, lines 1-4 & 17-20. He further explained that the whole grievance is about Defendants DeRosa and Schwebke regarding what transpired at the mess hall. *Id.* at p. 34, line 25; p. 35, lines 1-7. Linares claimed that at the time he wrote the grievance, he did not have Defendant Schwebke's full name, but instead referred to him as "Eri" because that is what everyone called him. *Id.* at p. 36, lines 12-25. The substance of his complaints against "Eri" was that he put the mess hall rules out in the open for all to see only after Linares broke his hand. *Id.* Later in his testimony, Linares claims that he also grieved the fact that Eri did not send him to the infirmary. *Id.* at p. 39, lines 11-18. In response to questions about his failure to appeal, Linares referred to the IGRC recommendation and explained that because he agreed with their decision, he did not need to appeal. *Id.* at p. 41, lines 9-20. Yet, in his verified Complaint, Linares stated that the CORC, "the last appeal resort, denied the grievance claiming that plaintiff had received appropriate medical care." Compl. at ¶ 5.

Based upon our review of the record and uncontested material facts outlined above, we conclude that (1) there is no dispute that an inmate grievance procedure existed at Coxsackie, (2) Linares filed only one grievance pertaining to his December 5th injury and the ensuing treatment of his injury, (3) the IGRC recommended that Linares be seen by a doctor as soon as possible, and (4) the superintendent accepted the grievance "to the extent that [Linares] received appropriate medical attention[,]" but, if

he wanted his complaint sent elsewhere he was free to do so on his own, Carroll Decl., Ex. E. We also conclude there is no real dispute that such grievance was not appealed to the CORC.[FN7] Thus, irregardless of our review of the content grieved in grievance CX-8048-01, it would appear that Plaintiff did not fully exhaust his available administrative remedies with respect to any claim raised in his Complaint.

> FN7. The only "dispute" as to whether an appeal was brought to the CORC is manifested by Plaintiff's discrepant testimony. In his verified Complaint, Plaintiff states that he appealed to CORC who determined he received appropriate medical care, yet, at his deposition, he swore under oath that he did not need to further appeal his grievance beyond the IGRC decision because it had been resolved in his favor. The Court will not accept this self-contradiction as a means of defeating summary judgment. *See Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987) (citing cases for the "well settled" proposition that "a party's affidavit which contradicts is own prior deposition testimony should be disregarded on a motion for summary judgment"); *see also AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.,* 361 F.Supp.2d 312, 316 (S.D.N.Y.2005) (citing cases and extending this proposition to inconsistent allegations made in a complaint and further noting that given the "increased level of reliability of deposition testimony" the court could not "simply disregard plaintiff's earlier sworn testimony in favor of inconsistent post hoc statements prepared for purposes of [the] lawsuit"). Similarly, this Court will not disregard Plaintiff's deposition, and, notwithstanding the clear contradiction, the record clearly shows that no appeal was taken to CORC.

However, our inquiry cannot end there, for there is more to the analysis of this affirmative defense. Though exhaustion is mandatory, certain caveats apply wherein a prisoner's failure to exhaust may be excused: (1) when administrative remedies are not available to the prisoner, *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004); (2) when the defendants waive the defense by failing to raise or

preserve it, *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004), or acted in such a manner that they are estopped from raising it, *Ziemba v. Wezner,* 366 F.3d 161 (2d Cir.2004); and (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement, *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004). No where in his opposition to Defendants' Motion to Summary Judgment, does Linares address whether he in fact sufficiently satisfied his obligation to exhaust his available administrative remedies prior to bringing suit in federal court. Yet, there exists in the record at least some explanation for this deficiency, which, given his *pro se* status, we are compelled to consider. Specifically, at his deposition, Linares claimed he did not appeal any further because he felt he received a favorable response from the IGRC. Plaintiff's excuse that he received a favorable determination falls within the first category, prompting the Court to evaluate whether further administrative remedies were *available* to Linares.

**\*5** According to the English translation of Linares' grievance, he complained about the medical treatment of his broken arm. Nurses Kudlack and Albright are specifically named and specific reference is made to the grievances Linares filed against Nurse Albright in 1999 and 2000 for medical negligence. In the conclusion portion of the English translation, Linares explains that his cast is broken in two pieces and nothing had been done to remedy the situation, though the specific request for relief is that copies of his complaint be sent to various individuals. The English translation provides no reference to Defendant Schwebke either by name or circumstance. Without hesitation, this Court could find that in viewing the evidence most favorably to Plaintiff, the English version of the grievance includes complaints against Nurse Albright for deliberate indifference and retaliation, but does not include the claim of deliberate indifference against Schwebke.

The Spanish, original version of the grievance is visibly longer and, according to Linares' deposition testimony, included more details, including problems he had with Defendant Schwebke, who he did not know by name at that time. According to Linares' testimony, the Spanish version contains the complaint that Schwebke failed to send him to the infirmary for medical attention.

Slip Copy, 2009 WL 799969 (N.D.N.Y.)

(Cite as: 2009 WL 799969 (N.D.N.Y.))

Again, if we were to construe the record in a light most favorable to Plaintiff, we could say that he included deliberate indifferent claims against Defendants Schwebke in his original grievance. Thus, taking the two versions of the grievance together, we can conclude that Plaintiff completed the first of his tri-level obligation to fully exhaust available administrative remedies. Because he did not appeal this grievance through each level of review, the question for the Court is, did the IGRC's/superintendent's favorable response render other administrative remedies unavailable?[FN8]

> [FN8.] Upon information and belief, at the time Linares filed his grievance and received a determination therewith, there was no mechanism in DOCS regulations for appealing a favorable determination. *See Abney v. McGinnis,* 280 F.3d 663, 668 (2d Cir.2004) (noting that while a favorable IGRC response is automatically transmitted to the superintendent for action, "[t]here is no similar procedure available for automatic advancement of a favorable ruling from the superintendent to the CORC"). In 2006, the regulations were amended and a new section was added allowing for oversight and follow-up to ensure implementation of favorable dispositions are carried out. *See* N.Y. COMP.CODES R. & REGS. tit. 7, § 701.5(c)(4) ( "Implementation of decisions. The IGP supervisor or the superintendent must verify compliance with superintendents' responses that require some form of implementation. Documentation of compliance must be filed with the grievance record. If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), *adopted on* June 28, 2006 by New York Regulation Text-Netscan, 2006 N.Y. REG TEXT 7 NYCRR 701 (JUNE 28, 2006), *effective* July 1, 2006.

To be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of." *Booth v. Churner,* 532 U.S. 731, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). To answer our question, we must look not only at the matters grieved and

responses received, but also the matters at issue in this action keeping in mind that the concept of "availability" speaks to the "procedural means, not the particular relief ordered," since "one 'exhausts' processes, not forms of relief." *Id.* at 739. Thus, though an inmate may be interested in obtaining solely monetary relief, the fact that the grievance program does not afford such relief does not mean that other administrative remedies are not available to the prisoner. *See generally id.* While Linares may have grieved Albright's and Schwebke's deliberate indifference and Albright's retaliation, the IGRC's response was that he receive immediate medical attention, perhaps in response to the fact that he claimed he had a broken cast and no one would fix it. The superintendent then accepted the grievance to the extent Linares' received proper medical care, perhaps due to the fact that he, by that point, had seen a doctor who had removed the cast and provided another x-ray. Regardless of these postulations, the fact remains that Plaintiff's civil Complaint makes no mention of a failure to fix a broken cast and the relief sought is well beyond the desire for medical care. The fact that Plaintiff felt the IGRC was favorable to him did not excuse his obligation to pursue available remedies with regard to his claims against Defendants Albright and Schwebke. In *Ruggiero v. County of Orange,* the Second Circuit grappled with the situation where an inmate sought a transfer from his cell for fear that his cell mate may harm him; instead of being transferred to a new cell, the prisoner was transferred to another facility. 467 F.3d 170, 177 (2d Cir.2006). Though in his lawsuit he asserted that the transfer to another facility was retaliation for his complaints, the inmate claimed he did not need to file a grievance since he had been afforded the remedy he desired, namely, transfer out of his cell and out of harms way. The Second Circuit considered its past decisions and Supreme Court precedent and determined that administrative remedies were still available. In rendering this decision, the Second Circuit distinguished the case from the situation in *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004), wherein the inmate kept receiving favorable decisions that were never implemented, and instead relied upon *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) and *Braham v. Clancy,* 425 F.3d 177 (2d Cir.2005), for the proposition that other remedies still existed such as disciplining the officers or changing policy and thus being provided with a desirable result did

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 799969 (N.D.N.Y.)

(Cite as: 2009 WL 799969 (N.D.N.Y.))

not render all remedies unavailable. *Id.* Similarly, with regard to the claims in this action, Linares had other remedies available to him prior to initiating this federal case. Arguably, though the IGRC's/superintendent's response was acceptable, it did not address his complaints against the Defendants in this action. Linares could have pursued the fact that neither the IGRC nor the superintendent took any action with regard to his complaints of employee misconduct. Linares' receipt of medical care, while arguably providing him with some relief sought, "did not provide him with all of the relief available to him.... [and] so long as some remedy remains available, failure to exhaust is not excused." *Ruggiero v. County of Orange,* 467 F.3d 170,177 (2d Cir.2006).

## II. CONCLUSION

**\*6** For the reasons stated herein, it is hereby

**RECOMMENDED,** that in supplementing the record to the Second Circuit, the District Judge adopt the facts as set forth by this Court as undisputed and find that the Plaintiff did not exhaust his available administrative remedies with regard to the deliberate indifference claims stated against Defendants Schwebke and Albright nor the retaliation claim against Defendant Albright; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action at the addresses listed above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

PATRICIO LINARES,

Plaintiff,

-v-

ALBRITH, Registered Nurse; FN1 *et al.,*

> FN1. As noted in the Report-Recommendation, Plaintiff misnamed Defendants "Albrith," "DeLaRosa," and "Eri Schwebke," whose correct names are M. Joy Albright, Anthony DeRosa and Eric Schwebke.

Defendants.

## DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

This matter comes before the Court following a Report-Recommendation filed on January 9, 2009 by the Honorable Randolph F. Treece, United States Magistrate Judge, pursuant to 28 U .S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 101).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED. R. CIV. P. 72(b), in compliance with L.R. 72.1. Objections to the Report-Recommendation were due by January 26, 2009. On January 21, 2009, the Court granted Plaintiff's request for an extension until February 23, 2009 to file objections to the Report-Recommendation. Dkt. No. 102. On February 25, 2009, the Court received another request for an extension. Dkt. No. 103. Per Text Order dated February 27, 2009, the Court granted Plaintiff a further extension until March 20, 2009. On March 20, Plaintiff filed yet another request for an extension (Dkt. No 104), which the Court denied per Text Order on March 23, 2009.

Thus, no objections have been raised in the allotted time with respect to Judge Treece's Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 799969 (N.D.N.Y.)

(Cite as: 2009 WL 799969 (N.D.N.Y.))

**ORDERED,** that the Report-Recommendation (Dkt. No. 101) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that in supplementing the record to the Second Circuit, the Court adopts the facts as set forth by Magistrate Judge Treece in the Report-Recommendation as undisputed, and finds that the Plaintiff did not exhaust his available administrative remedies with regard to the deliberate indifference claims stated against Defendants Schwebke and Albright nor the retaliation claim against Defendant Albright; and it is further

**\*7 ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2009.

Linares v. Albrith
Slip Copy, 2009 WL 799969 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2006 WL 3257438 (N.D.N.Y.)

(Cite as: 2006 WL 3257438 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.
Dennis BROWN, Plaintiff,
v.
Glenn GOORD, Commissioner, Defendant.
No. 9:06-CV-0321 (TJM)(DEP).

Nov. 9, 2006.

Dennis Brown, Plaintiff, pro se.

### DECISION and ORDER

THOMAS J. McAVOY, Senior Judge.

**\*1** Presently before the Court is an amended complaint filed by plaintiff Dennis Brown. Dkt. No. 23. This amended complaint was submitted by plaintiff in compliance with the Order issued by this Court on June 9, 2006 ("June Order"). Dkt. No. 9. For the reasons discussed below, the Court finds that the amended complaint fails to state a claim upon which relief may be granted and, therefore, dismisses this action.

The June Order advised plaintiff that certain defendants were immune from liability under 42 U.S.C. § 1983. Dkt. No. 9 at 3. Accordingly, defendants Judge Donald Mall and the People of the State of New York were dismissed as defendants in this action. *Id* . at 4-5. The June Order also advised plaintiff that court-appointed defense counsel do not act "under color of state law" and are not subject to suit under § 1983. *Id.* at 4. Plaintiff was also advised that he must allege personal involvement on the part of defendant Commissioner Glenn Goord. *Id.* at 5.

A review of plaintiff's amended complaint reveals that it fails to comply with the June Order. While the amended complaint is not a model of clarity, plaintiff appears to assert a false imprisonment claim against Judge Donald Mall despite the fact that this defendant was dismissed from this action in the June Order. Dkt. No. 23 at 8. Plaintiff also appears to allege wrongdoing on the part of

his defense attorneys, Donald Thompson and Alex Reuzi. *Id.* Reuzi was previously dismissed as a defendant in this action because court-appointed defense attorneys are not subject to suit under § 1983. Dkt. No. 9 at 4. Plaintiff's claims against Donald Thompson are dismissed for the same reason.

Plaintiff again fails to assert any allegations of personal involvement as to defendant Glenn Goord. Indeed, while Goord is listed in the caption, no allegations have been asserted against him in plaintiff's amended complaint.

Finally, the Court notes that plaintiff did not sign his amended complaint. *See Id.* Rule 11 of the Federal Rules of Civil Procedure stipulates that every pleading, written motion, and other paper, if the party is not represented by an attorney, must be signed by the party. *See* Fed.R.Civ.P. 11(a).

In light of the foregoing and for the reasons set forth in the June Order, the Court finds that plaintiff's amended complaint fails to state a claim upon which relief may be granted. The Court hereby dismisses this action.

WHEREFORE, it is hereby

ORDERED, that this action is **dismissed** without prejudice due to plaintiff's failure to file an amended complaint which states a claim upon which relief may be granted, and it is further

ORDERED, that the Clerk serve a copy of this Order on plaintiff by regular mail.

IT IS SO ORDERED.

N.D.N.Y.,2006.

Brown v. Goord
Not Reported in F.Supp.2d, 2006 WL 3257438 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3257438 (N.D.N.Y.)

(Cite as: 2006 WL 3257438 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235611 (N.D.N.Y.)

(Cite as: 2010 WL 1235611 (N.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Kareem S. PERRY, Plaintiff,
v.
Brian S. FISCHER, et al., Defendants.
No. 9:08-CV-602 (LEK)(ATB).

March 2, 2010.
Kareem S. Perry, pro se.

Charles J. Quackenbush, AAG, for Defendants.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.
**\*1** This matter was referred for Report and Recommendation,, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Lawrence E. Kahn, Senior United States District Judge. The case was re-assigned to me on January 4, 2010, upon the retirement of Magistrate Judge Gustave J. Di Bianco. (Dkt. No. 84).

This action is one of a series of cases filed in district courts throughout New York alleging similar and overlapping civil rights violations. In each such case, plaintiff has claimed that corrections officials in various state prisons in which he has been confined failed to protect him from harassment and assault by other inmates after they learned that plaintiff was a purported informant for law enforcement.

Presently before this court is defendants' motion to dismiss plaintiff's amended complaint and/or for other sanctions under FED. R. CIV. P. 11(c). (Dkt. No. 56).FN1 Plaintiff has responded in opposition to the motion. (Dkt. No. 78).

> FN1. The defense motion includes an in camera submission. (Dkt. No. 77).

This court recommends that the amended complaint (Dkt. No. 24) FN2 be dismissed under 28 U.S.C. § 1915(e) and Rule 11. This court further recommends that plaintiff's motion for summary judgement (Dkt. No. 50), which has been held in abeyance pending decision on the motion to dismiss, and several other procedural and discovery motions filed by plaintiff (Dkt. Nos.67, 72, 74-76, 82) be denied as moot.

> FN2. Defendant withdrew his claims against the Commissioner of the New York State Department of Correctional Services (DOCS) (Dkt. No. 37 at 5, n. 1); accordingly, Defendant Brian S. Fischer was been dismissed from the action. (Dkt. No. 40 at 6, 9). The remaining defendants are DOCS Deputy Commissioner Lucien LeCLaire; the Superintendent of the Upstate Correctional Facility ("Upstate"), Robert K. Woods; and William Chase, a Correctional Sergeant at Upstate.

**I. *Facts and Procedural History***

The amended complaint alleges that plaintiff worked as an informant for the "Department of Investigations" ("DOI"). When other inmates learned of his status, plaintiff claimed that he was subject to a series of assaults. (Amended Complaint ("AC") ¶ 1). It is clear from complaints filed by plaintiff in other similar actions that he claims to have worked for the New York City Department of Investigations (which plaintiff sometimes refers to as the "Inspector General Office") beginning in early 2005, and that the assaults he refers to in the instant amended complaint started later in 2005, when he was confined at Rikers' Island.FN3

> FN3. Complaint in *Perry v. Fischer, et al.,* 9:07-CV-1245 (N.D.N.Y.), Dkt. No. 1 at 7; Complaint in *Perry v. Caruso,* 1:07-CV-1115 (E.D.N.Y.) (hereinafter the *"Caruso"* action),

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235611 (N.D.N.Y.)

(Cite as: 2010 WL 1235611 (N.D.N.Y.))

Dkt. No. 13-2 at 9-11.

The amended complaint alleges further that, while at Elmira Correctional Facility in 2006, plaintiff "persistently" asked to be placed in protective custody, but was refused. Plaintiff claims that he was assaulted by inmates at Elmira later that same year. (AC ¶¶ 2-3). The complaint in the *Caruso* case, in the Eastern District of New York (*Caruso* Complaint at 12, ¶¶ 19-21), as well as in an action plaintiff commenced in the Western District of New York, included allegations regarding events relating to his confinement at Elmira in 2006. *See Perry v. Goord,* 06 CV 828, 2009 WL 2580324 at *2, 2009 U.S. Dist. LEXIS 53884 (W.D.N.Y. Aug.18, 2009).

Plaintiff was transferred to Upstate (in the Northern District of New York) on October 18, 2006. He alleges that he made a series of requests to the defendants to be separated from inmates against whom he previously provided information to law enforcement, and asked to be placed in single-cell protective custody. The defendants failed to change defendant's housing status as requested, and he was again the victim of alleged assaults by inmates at Upstate in November and/or December 2006[FN4] and on May 30, 2008. (AC ¶¶ 4-21).

> FN4. The amended complaint alleges that, on November 17, 2006, plaintiff had a fight with an inmate at Upstate who had learned that plaintiff was an informant. (AC ¶ 5). Plaintiff later mentions "the fight in December 2006," and references corroborating disciplinary and medical records suggesting the fight occurred on December 17, 2006. (AC ¶¶ 11-12). It is unclear whether plaintiff is making inconsistent allegations about the date of a single fight or whether he is claiming to have participated in two fights in 2006, one in November and one in December.

**\*2** This court will take judicial notice of plaintiff's similar litigation in this and other federal districts in this state. FED.R.EVID. 201. Magistrate Judge Hugh Scott in the Western District of New York surveyed plaintiff's prior cases and reported that he filed 29 civil rights actions over the past twelve years, "most" arising from the same

fact pattern that prison officials failed to protect him from assaults by other inmates aware of plaintiff's informant status. *Perry v. Goord,* 2009 WL 2580324 at *3. Of the 16 civil rights actions that had been disposed of prior to August 2009, eight had been voluntarily withdrawn by plaintiff, four had been dismissed by order, and four had been settled. *Id.*

Two of the similar cases that plaintiff settled, in June 2007, (for a total of approximately $6,000) were actions in the Eastern District of New York-*Perry v. Caruso* (cited above) and *Perry v. Boyd.*[FN5] On November 5, 2007, plaintiff directed two separate letters to officials of the New York City "Office of Inspector General" ("OIG") stating that he had just learned that OIG had sent favorable correspondence to DOCS on plaintiff's behalf. In one letter, plaintiff apologized for filing "a number of manufactured lawsuits and complaints against **Mike, Tim,** Maggie and **Michelle .**" (Quackenbush Dec., Ex. 3, Dkt. No. 56-2 at 36) (emphasis added). The named defendants in the *Caruso* action were **Michael** Caruso, **Timothy** "Doe" and **Michelle** Flores, identified as officials of the "Inspector General Office." (*Caruso* Complaint at 1-2). In the other letter, plaintiff apologized to Tim, Mike, Michelle, and Maggie for filing a "vindictive, manufactured complaint." (Ex. 3, Dkt. No. 56-2 at 34). Plaintiff continued: "No one ever thought I was an informant + definitely no inmate would dare put their hands on me (picture that).) *Id.*

> FN5. *Perry v. Boyd,* Dkt. No. 06-CV-3958 (E.D.N.Y.) (hereinafter the *"Boyd"* action).

On January 14, 2008, the New York State Attorney General's Office wrote the Hon. Brian Cogan, the District Judge assigned to the *Boyd* and *Caruso* cases, forwarding copies of plaintiff's letters to OIG admitting that the allegations in those actions were "manufactured." (Ex. 3, Dkt. No. 56-2 at 30-32). The following day, Judge Cogan issued an order to show cause why Rule 11 sanctions should not be imposed on the plaintiff, given his admission that the material facts in the complaints in both actions were false. (*Caruso* Dkt. No. 26). Eventually, on February 22, 2008, plaintiff resolved these issues by agreeing, among other things, to return $8,500 he received in connection with the settlements of the lawsuits in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235611 (N.D.N.Y.)

(Cite as: 2010 WL 1235611 (N.D.N.Y.))

*Caruso, Boyd,* and one other case in the Eastern District of New York. Plaintiff requested that the following statement be included in any documents submitted to the court: "I, Kareem Perry, committed fraud upon the Court and that I was never subject to inmate or staff abuse, and I did not work for the Department of Investigation." (*Caruso* Dkt. No. 32).

**\*3** On November 28, 2007, plaintiff had filed a prior complaint in this action against the Commissioner of DOCS and the Superintendent of Upstate alleging that they failed to protect him from assaults by other inmates at Upstate and elsewhere who learned of plaintiff's alleged status as an informant. The Northern District of New York complaint expressly referenced the *Caruso* and *Boyd* actions in allegations relating to plaintiff's cooperation with DOI and prior retaliatory assaults. (*Perry v. Fischer, et al.,* 9:07-CV-1245 (GLS/DRH), Dkt. No. 1 at 7). On February 27, 2008, just after agreeing to repay the funds received in settlement for the similar actions in the Eastern District of New York because of his "fraud on the court," plaintiff requested that the action in this district be withdrawn. (9:07-CV-1245, Dkt. No. 10).

On June 9, 2008, plaintiff filed the initial complaint in the instant action, essentially re-stating the allegations regarding events at Upstate from case no. 9:07-CV-1245, but without the explicit references to the *Caruso* and *Boyd* cases in the text. The list of prior lawsuits in the form complaint did reference eleven prior actions from all four New York districts, including the *Caruso* and *Boyd* cases, but did not mention no. 9:07-CV-1245. (Dkt. No. 1). Plaintiff's *in forma pauperis* ("IFP") application checked "no" for the question whether plaintiff had received money in the past twelve months from any source, despite receiving funds in settlement of the lawsuits in the Eastern District of New York. (Dkt. No. 2) [FN6] Plaintiff amended his complaint on September 30, 2008. (Dkt. No. 24).

**FN6.** Plaintiff received the funds in those cases some time after August 14, 2007, less than twelve months before he filed his complaint and IFP application. (*Caruso* Dkt. Nos. 23, 24).

On December 3, 2008, plaintiff forwarded a letter to the Hon. Lois Bloom, the assigned Magistrate Judge in both the *Boyd* and *Caruso* cases, informing the court that he had committed perjury in the *Boyd* matter. Plaintiff wrote: "All of the paragraph allegations in that action is false (sic). The Complaint was filed out of greed and I hereby accept responsibility for my fraudulent actions." (Ex. 3, Dkt. No. 56-2 at 39).

Pursuant to Fed.R.Civ.P. 11, defense counsel in this action notified plaintiff, on May 26, 2009, that they intended to inform the court about plaintiff's conduct in the *Caruso* and *Boyd,* and gave him 21 days to discontinue the action before filing a motion for sanctions. (Ex. 7, Dkt. No. 56-2 at 55-56). Plaintiff chose to continue to pursue this lawsuit.

In his Affidavit in opposition to the motion for sanctions, plaintiff insists that his lawsuits in *Caruso* and *Boyd* were not false or fraudulent, despite contrary admissions in various writings. (Pl.Aff., Dkt. No. 78, ¶ 4). He claims that he requested the settlement stipulation admitting fraud on the court to generate documents he could show to other inmates to convince them that he was not an informant. (Pl.Aff.¶¶ 5, 7). Plaintiff alleges that his letter of December 3, 2008 to Judge Bloom was designed to "get [him] indicted for perjury," again presumably to deflect suspicion that he was cooperating with law enforcement. (Pl.Aff.¶ 9). He characterizes his admissions of fraud on the court in the *Caruso* and *Boyd* actions as "desperate," "sad and bizarre" measures designed to try to ensure his safety in prison.

## II. *Rule 11* Sanctions

**\*4** Under FED. R. CIV. P. 11(b), whenever a signed pleading or "other paper" is submitted to the court, the attorney or *pro se* litigant certifies, *inter alia,* that:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay ... [and]

(3) the allegations and other factual contentions have evidentiary support ....

In order to justify Rule 11 sanctions, it must appear that the lawyer or *pro se* litigant "sign[ed] a pleading, motion, or other paper for an improper purpose ... or [did] so without a belief, formed after reasonable inquiry, that

Not Reported in F.Supp.2d, 2010 WL 1235611 (N.D.N.Y.)

(Cite as: 2010 WL 1235611 (N.D.N.Y.))

the position espoused is factually supportable and is warranted by existing law ....“ *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 264 (2d Cir.1994).

To comply with Rule 11's procedural requirements, a party must make its motion for sanctions separate from other motions or requests, describe the specific conduct alleged to violate Rule 11(b), provide notice to opposing counsel, and serve the motion at least twenty-one days prior to filing the motion with the court. FED. R. CIV. P. 11(c)(1)(A). *See Langdon v. County of Columbia,* 321 F.Supp.2d 481, 484 (N.D.N.Y.2004); *Kron v. Moravia Central School Dist.,* No. 5:98-CV-1876, 2001 WL 536274 at *3, 2001 U.S. Dist. LEXIS 6573 (N.D.N.Y. May 3, 2001). The twenty-one day period between notice and filing is referred to as a "safe harbor" because the opposing party may avoid sanctions by withdrawing or correcting the offending material during this period. In this case, defendants have complied with the procedural requirements of Rule 11.

The imposition of sanctions is a discretionary decision. *Margo v. Weiss,* 213 F.3d 55, 64 (2d Cir.2000). That discretion should be exercised with caution, and sanctions imposed only when it is patently clear that one has engaged in improper conduct. *Cerrone v. Cahill,* 95-CV-241, 2001 WL 1217186, at *16, 2001 U.S. Dist. LEXIS 15380 (N.D.N.Y. Sept.28, 2001). Whether conduct is sanctionable is subject to a test of objective unreasonableness. *Margo,* 213 F.3d at 65. *See also, Binghamton Masonic Temple, Inc. v. Bares,* 168 F.R.D. 121, 126-127 (N.D.N.Y.1996).

A sanction imposed under Rule 11 must "be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(b)(4). The Court must be mindful that the main thrust of Rule 11 sanctions is deterrence. *Margo,* 213 F.3d at 64-65; *Ehrich v. Binghamton City School District,* 210 F.R.D. 17 (N.D.N.Y.2002). A court has the discretion to dismiss an action with prejudice as a sanction pursuant to Rule 11, although this harsh sanction should be imposed only in extreme circumstances where the court is sure that lesser sanctions will be ineffective. *See, e.g., Safe-Strap Co., Inc. v. Koala Corp.,* 270 F.Supp.2d 407, 417-418

(S.D.N.Y.2003) (collecting cases).[FN7]

> **FN7.** In opposing the imposition of sanctions, plaintiff cites *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 88 (2d Cir.1998). In *Savino,* a significant allegation in plaintiff's complaint was later contradicted by plaintiff's deposition testimony. The Second Circuit held that the imposition of sanctions was not appropriate, given that plaintiff ultimately prevailed on the merits, and that plaintiff's counsel provided an affidavit in opposition to the motion for sanctions which documented reasonable inquiry into the allegations in the complaint. *Id.* As discussed elsewhere herein, the direct contradictions between the *pro se* plaintiff's various statements regarding some of the allegations in the amended complaint are stark and not plausibly explained.

### III. *Dismissal Under 28 U.S.C. § 1915*

**\*5** The court has a responsibility to determine that a complaint may be properly maintained before it may permit a plaintiff to proceed with an action in *forma pauperis.* Under 28 U.S.C. § 1915(e), the Court:

(2) [S]hall dismiss the case at any time if the court determines that-

* * *

(B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted ....

28 U.S.C. § 1915(e)(2)(B). In *Gabrelian v. Acampora,* the court interpreted the term "malicious" in Section 1915 by reference to the definition contained in Black's Law Dictionary. It court found that a "malicious" action would include a case that was initiated with "wicked or mischievous intentions or motives," or "without just cause or excuse." *Gabrelian v. Acampora,* CV-90-3234, 1991 WL 626724 at *2, 1991 U.S. Dist. LEXIS 18262 (E.D.N.Y. Dec.11, 1991).

Dismissal of duplicative or repetitious litigation of identical causes of action may be appropriate under Section 1915(e). See, e.g ., *Azubuko v. Giorlandino,* 213 F.3d 625 (table), 2000 WL 553184 at *1 (2d Cir.2000)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(upholding dismissal, under § 1915(e) of federal complaint that raised essentially the same claims as were asserted in multiple prior actions); *Williams v. Bunn,* 06-CV-0466, 2007 WL 1703816 at *1, 2007 U.S. Dist. LEXIS 41829 (W.D.N.Y. June 7, 2007) (complaint appearing to allege a religious claim against two prison officers would be dismissed as repetitive of claim previously filed and dismissed twice for failure to serve the defendants); *DePonceau v. Bush,* No. 04CV6240, 2004 WL 1574621 at *2, 2004 U.S. Dist. LEXIS 13819 (W.D.N.Y. June 4, 2004) (collecting cases).

**IV.** ***Application of Legal Standards***

The unusual circumstances of this case are virtually identical to those faced by Magistrate Judge Scott in a similar case filed in the Western District of New York by Plaintiff Perry. For essentially the same reasons articulated by Judge Scott, this court will recommend that the amended complaint in this case be dismissed under Rule 11 and 28 U.S.C. § 1915(e)(2)(B)(I). *Perry v. Goord,* 06CV828, 2009 WL 2580324, 2009 U.S. Dist. LEXIS 53884, (W.D.N.Y. Aug.18, 2009). Given the egregious nature of plaintiff's misconduct and his abusive pattern of filing repetitive and overlapping lawsuits, this court concludes that dismissal is the only sanction that is adequate to deter plaintiff or similarly situated *pro se* litigants from further improper conduct of this sort.

As Judge Scott points out, plaintiff's repeated filings in various district courts in New York demonstrate a pattern, which is both improper and malicious. A multitude of these complaints follow the same template for claims arising in the various prisons in which plaintiff was confined: (1) plaintiff alleges that inmates learn that he was an informant and begin to harass or assault him; (2) plaintiff requests protective custody, but is denied; (3) plaintiff then files grievances and lawsuits, complaining of the alleged failure of the prison officials to protect him, thereby further disclosing the facts that make him vulnerable to retaliation by other inmates; (4) plaintiff, often belatedly, attempts to mitigate the effect that his complaints and lawsuits have on his perceived security, by dismissing the actions or belatedly seeking to seal them. The filing of lawsuits in different jurisdictions and the selective dismissal and efforts to seal the actions also serves to conceal from the judges handling the cases the troubling pattern of plaintiff's prior litigation. See *Perry v. Goord,* 2009 WL 2580324 at *9. And, as suggested in plaintiff's December 3, 2008 letter to Judge Bloom in connection with the *Boyd* case, his "greed," triggered by the settlements he won in several of the earlier cases, seems to motivate him to continue the cycle of abuse of the judicial system.[FN8]

FN8. Defense counsel's *in camera* submission, vaguely referenced in its public filings, indicate that the plaintiff, in complicity with others, staged one or more of the incidents at Upstate alleged in the amended complaint. While the *in camera* submission certainly supports the defendants' motion, this information is not necessary to reach the conclusions of this court and was not relied upon in this decision. Accordingly, and given the security concerns of the Attorney General's Office regarding disclosure of the statements and testimony reflected in the *in camera* exhibits, this court would not grant Plaintiff's motion to compel disclosure of these exhibits. (Dkt. No. 67).

***6** Many of the allegations in the amended complaint in this action mirror those raised in the actions in the Eastern District of New York, which plaintiff stated were false and fraudulent in letters to the Inspector General and Judge Bloom, and in statements to the Attorney General. This amended complaint, like the *Caruso* complaint (and the complaint in the action in the Western District of New York), contains allegations of plaintiff's cooperation with DOI in 2005; ignored requests for protective housing to prison officials and the retaliatory assaults at Rikers in 2005; and the similarly futile requests to prison authorities and the further retaliatory assaults at Elmira in 2006. Plaintiff has, in turn, represented that these allegation were true (in the *Caruso* and *Boyd* complaints), admitted they were false (in the letters and statements of recantation), and then again asserted their veracity (in the instant amended complaint and the complaint in the Western District of New York).

Plaintiff alleges that he falsely recanted the allegations he made in the *Caruso* and *Boyd* complaints in a desperate effort to protect himself from further retaliatory assaults by creating documentation indicating

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235611 (N.D.N.Y.)

(Cite as: 2010 WL 1235611 (N.D.N.Y.))

that he was not cooperating with law enforcement authorities. This admittedly "bizarre" explanation of his conduct might square with the plaintiff's settlement statement in February 2008 that he committed a fraud on the court and did not work for "DOI." (*Caruso* Dkt. No. 32). And the December 2008 letter to Judge Bloom, which seems to invite a perjury prosecution, may be consistent with the plaintiff's current posture.

Plaintiff's November 5, 2007 letters to the Inspector General (Quackenbush Dec., Ex. 3, Dkt. No. 56-2 at 33-37), in which he admits vindictively manufacturing the allegations in the *Caruso* complaint, betray the holes in plaintiff's *post hoc* "spin" on his recantations. Plaintiff admits in his affidavit that he expected those "letters would be kept in confidence." (Pl.Aff., Dkt. No. 78, ¶ 6). Plaintiff's explanation that he lied about manufacturing the lawsuit in those letters in the hopes that the *Caruso* defendants would restore him as an informant in prisons in the New York City area (Pl.Aff.¶ 6) is utterly inconsistent with plaintiff's repeated claims that he wanted to distance himself from his past as an informant for his own protection in prison. It was only after his admissions to the Inspector General were provided to the defendants' attorney and the Judge in the *Caruso* and *Boyd* cases in January 2008, that plaintiff begin erratically shifting his position with respect to the veracity of the claims he asserted in those cases.

As Judge Scott observed, the plaintiff may have faced a "quandary" in that efforts to vindicate his perceived rights to protective housing through litigation further publicized his former role as an informant and made him more vulnerable to future harassment or retaliation by other inmates. *Perry v. Goord,* 2009 WL 2580324 at * 10. However, this court concurs with Judge Scott's analysis, which compels the dismissal of the plaintiff's amended complaint in this action:

**\*7** [T]his quandary does not justify plaintiff's inconsistent (at best) or perjurious (at worst) actions in the conduct of his litigation.... Plaintiff has asserted claims arising from defendants' failure to protect him in Elmira in 2006 in this case and in *Caruso,* but later recanted that allegation in *Caruso* alleging that the claim was a fraud on the Court. Plaintiff (regardless of

his motives) cannot play one district against another and assert as valid allegations from the same fact pattern in one Court that he calls a fraud in another. This is also an instance of duplicative or repetitious litigation that should be dismissed by the Court *sua sponte, see DePonceau, supra,* 2004 U.S. Dist. LEXIS 13819, at *5, 2004 WL 1574621 [at *2].* By not withdrawing the case at bar once plaintiff [admitted] ... "fraud on the court" ... in *Caruso ...,* the continued prosecution of the Complaint here was for an improper purpose, to harass defendants and put into question the factual basis for the allegations contained in that pleading, *cf.* Fed.R.Civ.P. 11(b)(1), (3).

*Id.*

## V. *Further Sanctions*

To the extent the plaintiff has not paid the entire $350 filing fee in this action, this court recommends that his *in forma pauperis* status be revoked and that he be ordered to pay the balance of his fee immediately. As noted above, in addition to the primary reasons for imposing sanctions on the plaintiff, he also failed to disclose the settlement payments that he received from the State of New York in the twelve months before filing his IFP application in this case.

The court is not inclined to recommend further sanctions. Because defendants were represented by the New York State Attorney General, having plaintiff pay the costs and fees for the defendants' attorneys would be speculative. Such a sanction would mire the court in prolonged and likely pointless ancillary litigation. As a prisoner, plaintiff is unlikely to be in a position to satisfy any additional monetary sanctions, given that plaintiff has apparently re-paid or is, at least, liable for the settlement funds that he received earlier and that sanctions equaling the fees of his court-appointed attorney were already imposed in the case in the Western District of New York. *Perry v. Goord,* 2009 WL 2580324 at * 12. We also agree with Judge Scott that initial *in forma pauperis* screening of any future cases filed by plaintiff in this district is a satisfactory bar to any frivolous or malicious suits.

**WHEREFORE,** based on the findings above, it is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235611 (N.D.N.Y.)

(Cite as: 2010 WL 1235611 (N.D.N.Y.))

**RECOMMENDED,** that defendants' motion for sanctions and to dismiss the amended complaint (Dkt. No. 56) be **GRANTED** and that the amended complaint be **DISMISSED IN ITS ENTIRETY,** with prejudice; and it is

**RECOMMENDED,** that plaintiff's *in forma pauperis* status be revoked and that he be ordered to pay any balance of his $350 filing fee immediately;

**RECOMMENDED,** that plaintiff's motions for summary judgment (Dkt. No. 50) be DENIED as moot; and it is

**\*8 RECOMMENDED,** that plaintiff's various discovery and procedural motions (Dkt.Nos.67, 72, 74-76, 82) be **DENIED** as moot.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

N.D.N.Y.,2010.

Perry v. Fischer
Not Reported in F.Supp.2d, 2010 WL 1235611 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2010 WL 1235677 (N.D.N.Y.)

(Cite as: 2010 WL 1235677 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Kareem S. PERRY, Plaintiff,
v.
Brian S. FISCHER, et al., Defendants.
No. 9:08–CV–0602 (LEK/ATB).

March 31, 2010.
Kareem S. Perry, Pine City, NY, pro se.

Charles J. Quackenbush, New York State Attorney General, Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on March 2, 2010 by the Honorable Andrew T. Baxter, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report–Rec. (Dkt. No. 87). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including Plaintiff Kareem Perry's Objections, (Dkt. No. 92) ("Objections"), which were filed on March 26, 2010.[FN1]

> **FN1.** Plaintiff was granted an extension of time to file his Objections pursuant to his March 9, 2010 Letter Motion. Dkt. No. 89.

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the Objections and has

undertaken a de novo review of the record and has determined that the Report–Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report–Recommendation (Dkt. No. 87) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Defendants' Motion for sanctions and to dismiss the Amended Complaint (Dkt. No. 56) is **GRANTED;** and it is further

**ORDERED,** that; Plaintiff's Amended Complaint (Dkt. No. 24) is **DISMISSED** in its entirety **with prejudice;** and it is further

**ORDERED,** that Plaintiff's *in forma pauperis* status is revoked, and he is ordered to pay any balance on his $350 filing fee immediately; and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 50) is DENIED as moot; and it is further

**ORDERED,** that Plaintiff's various discovery and procedural Motions (Dkt. Nos.67, 72, 74–76, 82) are **DENIED** as moot; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2010.

Perry v. Fischer
Not Reported in F.Supp.2d, 2010 WL 1235677 (N.D.N.Y.)
END OF DOCUMENT


Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Stanley W. McPHERSON, Petitioner,
v.
J. BURGE and H.D. Graham, Respondents.
No. 9:06-CV-1076 (GTS/VEB).

May 5, 2009.
West KeySummary**Habeas Corpus 197** ☜ 603.4

197 Habeas Corpus

  197III Jurisdiction, Proceedings, and Relief
   197III(A) In General
    197k603 Limitations, Laches or Delay
     197k603.4 k. Bar of limitations in general.
Most Cited Cases
  (Formerly 197k603)
  A defendant's claim for habeas relief, concerning the prison's withholding of good time credits for failure to participate in drug abuse treatment, was barred by the statute of limitations. The defendant filed the claim more than one year after learning of the administrative decision to revoke his good time credits. There were no extraordinary circumstances that prevented the defendant from filing the claim in a timely manner. 28 U.S.C. § 2224(d)(1)(D).
Stanley W. McPherson, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Frederick H. Wen, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.
  **\*1** Stanley W. McPherson ("Petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on August 31, 2006. (Dkt. No. 1.) By

Report-Recommendation dated January 27, 2009, the Honorable Victor E. Bianchini, United States Magistrate Judge, recommended that the Petition be denied and dismissed, and that a certificate of appealability not issue. (Dkt. No. 15.) Petitioner timely filed his Objections to the Report-Recommendation on February 4, 2009. (Dkt. No. 16.) For the reasons discussed below, Magistrate Judge Bianchini's Report-Recommendation is accepted and adopted in its entirety, and Petitioner's petition is denied and dismissed in its entirety.

### I. STANDARD OF REVIEW

  When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[FN1] When only general objections are made to a magistrate judge's report-recommendation (or the objecting party merely repeats the allegations of his pleading), the Court reviews for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).[FN2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

   FN1. On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse discretion in denying plaintiff's request to present additional testimony where he "offered no justification for not offering the testimony at the hearing before the magistrate").

FN2. *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

**II. BACKGROUND**

For the sake of brevity, the Court will not repeat the factual background of Petitioner's 1991 conviction for Second Degree Attempted Murder and Second Degree Criminal Possession of a Weapon because Petitioner does not contest his judgment of conviction. (Dkt. No. 15, at 1.) Likewise, the Court will not repeat the factual background surrounding Petitioner's contention that the Auburn Correctional facility improperly withheld six years and eight months of good time credits on or about June 23, 2003, as a result of Petitioner's refusal to participate in a drug abuse treatment program, but will simply refer the parties to the relevant portions of Magistrate Judge Bianchini's Report-Recommendation, which accurately recite that factual background. (Dkt. No. 15, at 1-4.)

In his Petition, Petitioner asserts seven claims in support of his request for habeas relief.FN3 In his Report-Recommendation, Magistrate Judge Bianchini recommends that the Court deny each of these claims as not timely under the one-year limitations period, established by 28 U.S.C. § 2224(d)(1)(D). (*Id.* at 5-6.) In his Objections to Magistrate Judge Bianchini's Report-Recommendation, Petitioner simply states that he objects to the Report-Recommendation. (Dkt. No. 16.)

FN3. These claims are discussed in Magistrate Judge Bianchini's Report-Recommendation. (Dkt. No. 15, at 4.)

**\*2** Because Petitioner has not made specific objections to the recommendations in Magistrate Judge Bianchini's Report-Recommendation, the Court need only review the Report-Recommendation for clear error. *See, supra,* Part I of this Decision and Order. After carefully reviewing all of the papers in this action, including Magistrate Judge Bianchini's Report-Recommendation, the Court agrees with each of the recommendations made by Magistrate Judge Bianchini, and rejects Plaintiff's general objection. (Dkt. No. 15; Dkt. No. 16.) FN4 Magistrate Judge Bianchini employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Dkt. No. 15, at 5-12.) As a result, the Court accepts and adopts Magistrate Judge Bianchini's Report-Recommendation in its entirety for the reasons stated therein.

FN4. The Court notes that Magistrate Judge Bianchini's Report-Recommendation would also survive *de novo* review.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Bianchini's Report-Recommendation (Dkt. No. 15) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Petitioner's petition (Dkt. No. 1) is *DENIED* and *DISMISSED* in its entirety; and it is further

**ORDERED** that a Certificate of Appealability shall not issue; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly and close the file.

**REPORT AND RECOMMENDATION**

VICTOR E. BIANCHINI, United States Magistrate Judge.
**I. INTRODUCTION**
Petitioner Stanley W. McPherson, acting *pro se,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 1991, he was convicted in a New York State court of two counts of Second Degree Attempted Murder, and one count of Second Degree Criminal Possession of a Weapon. Petitioner does not contest his judgment of conviction, but challenges a decision by the Auburn Correctional Facility to withhold six years and eight months of good time credits as a result of Petitioner's refusal to participate in a drug abuse treatment program.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 13).

## II. BACKGROUND

### A. Facts[FN1]

> FN1. In the interest of judicial economy and because Petitioner does not contest his underlying conviction in this case, this Court will not discuss, in depth, the facts of Petitioner's underlying conviction, trial, or appeals. Rather, this Court will discuss Petitioner's appeals that are relevant to his current habeas petition.

On April 22, 1990, Petitioner approached two women in the Bronx and asked them if they knew where he could buy some "smoke." When they were unable to direct him, he left and came back with a gun and shot and injured the two women as they tried to run away from him. (Docket No. 9 at Exhibits B & H). On December 6, 1991, Petitioner was convicted of two counts of attempted murder in the second degree, and criminal possession of a weapon in the second degree. He was sentenced to concurrent terms of ten (10) to twenty (20) years on each of the two attempted murder counts, and three (3) to six (6) years on the weapon possession count. *See People v. McPherson,* 198 A.D.2d 119, 603 N.Y.S.2d 828 (1st Dep't 1993).

**\*3** During Petitioner's prison intake interview, he admitted using marijuana regularly from 1981 through 1986 and stated that he had recently smoked it on a daily basis. A drug abuse program was recommended for

Petitioner, however, he refused to participate. On June 3, 2003, Petitioner appeared at a hearing of the Auburn Correctional Facility Time Allowance Committee ("TAC"). Based on Petitioner's refusal to participate in the drug program, the TAC recommended that all of Petitioner's good time credits, totaling six years and eight months, be withheld from his sentence. (Docket No. 9 at Exhibits A at 3 & B). The TAC advised Petitioner that he could request a reappearance if he completed the drug abuse program. (*Id.* at Exhibit B). Respondent Burge confirmed the TAC's recommendation on June 3, 2003. Petitioner administratively appealed that decision, which was affirmed on June 23, 2003. (*Id.* at Exhibit A at 5 & B).

### B. Article 78 Proceedings

On November 13, 2003, Petitioner, proceeding *pro se,* filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). Petitioner asserted that the withholding of his good time credits violated his Fourteenth Amendment rights. (Docket No. 9, Exhibit A at 2-11). Petitioner argued that there was no evidence of positive drug urinalysis in his record while he was incarcerated. (*Id.* at 3). Therefore, Petitioner argued, in light of the fact that he did not use drugs while incarcerated, he did not qualify for the program and should not have been required to participate. (*Id.*).

The Honorable Joseph C. Teresi, Justice of the New York State Supreme Court, dismissed Petitioner's Article 78 petition on April 28, 2004. On May 11, 2004, Petitioner appealed to the Appellate Division, Third Department, which affirmed the Supreme Court's dismissal of his petition. *McPherson v. Goord,* 17 A.D.3d 750, 793 N.Y.S.2d 230 (3d Dep't 2005).

The Appellate Division stated that:

Although petitioner contends that the recommendation that he participate in a substance abuse program was in error given the absence of any drug abuse in the underlying crimes or in his institutional record, the record establishes that just prior to committing the instant offense, petitioner asked the victims of the crime where he could buy some 'smoke.' Furthermore, the presentence investigation report indicates that petitioner admitted to the use of marihuana.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

*Id.* at 751, 793 N.Y.S.2d 230. The New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision on September 15, 2005. *McPherson v. Goord, 5*, N.Y.3d 709 (2005).

**C. Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se,* commenced this action on August 31, 2006, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). In his Petition, Petitioner asserts that: (1) withholding his good time credits for his refusal to attend the drug abuse program when the program did not apply to him violated his constitutional rights; (2) "[a] Due Process violation in procedure and determination. A Liberty Interest as of mandatory conditional release."; (3) his Fourteenth Amendment rights were violated when he was not conditionally released from his indeterminate sentence after completing 2/3 of his sentence; (4) his rights under the Ex Post Facto Clause were violated by Respondents adding the drug abuse program as a requirement in order for Petitioner to obtain his good time credits after he was incarcerated and that Respondents failed to transcribe the hearing proceedings; (5) the Appellate Division violated his equal protection rights in reviewing Petitioner's pre-sentence report *in camera* without Petitioner and without giving Petitioner an opportunity to review the report; (6) the Time Allowance Committee violated Petitioner rights by failing to record or transcribe the hearing; and (7) his Fifth Amendment rights were violated by Respondents' failure to follow proper procedure and by "failing to following [sic] the statute § 7804 of CPLR." (Docket No. 1).

**\*4** Respondent filed a Response and memorandum of law in opposition on December 29, 2006. (Docket No. 6). Thereafter, on January 3, 2007, Respondent filed an Amended Answer and Memorandum of Law. (Docket No. 8). Petitioner filed his Traverse on January 17, 2007. (Docket No. 17). This case was referred to the undersigned by Order of the Honorable Norman A. Mordue, Chief United States District Judge, on October 27, 2008. (Docket No. 13).

### III. DISCUSSION

**A. Timeliness**

A state prisoner challenging the loss of good time credits must bring an action for habeas corpus relief under 28 U.S.C. § 2254. *Jenkins v. Duncan,* No. 02-CV-0673, 2003 WL 22139796, at *3 (N.D .N.Y. Sep. 16, 2003); *see also Cook v. New York State Div. of Parole,* 321 F.3d 274, 278-79 (2d Cir.2003) (holding that state prisoner "must bring a challenge to the execution of his or her sentence ... under § 2254").

Petitioner challenges the execution of his sentence, namely, the TAC's decision to revoke his good time credits. As such, the Petition was properly brought pursuant to § 2254. However, because Petitioner is a "person in custody pursuant to the judgment of a state court," he was required to file his petition for habeas corpus relief in accordance with the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See Cook,* 321 F.3d at 280 (concluding that limitations period of § 2244 applies to petitions under § 2254).

Section § 2244(d)(1) provides, in pertinent part, as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

In the present case, Petitioner is not challenging the judgment of conviction, there was no state action that impeded Petitioner from seeking habeas relief, and there is no issue regarding retroactive application of a constitutional right recognized by the Supreme Court. As such, the one-year limitations period began running, pursuant to § 2244(d)(1)(D), on the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

**\*5** Thus, this Court must determine the date on which the factual predicate of Petitioner's claims could have been discovered with due diligence. The Second Circuit faced an analogous situation in *Cook.* The petitioner in *Cook* was challenging the revocation of his parole. The Second Circuit concluded that the factual predicate for the petitioner's claim reasonably would have been discovered when he "was notified that the administrative decision to revoke his parole had become final." *Cook,* 321 F.3d at 280.

Petitioner challenges the revocation of his good time credits, arguing that the administrative decision in that regard violated his federal constitutional rights. Thus, in accordance with the Second Circuit's reasoning in *Cook,* this Court finds the "factual predicate" of Petitioner's claims was readily identifiable on the date the administrative decision to revoke his good time credits became final.

This raises the question of when Petitioner was notified that the revocation of good time credits was "final." The TAC recommended on June 3, 2003, that Petitioner's good time credits be revoke. That decision was adopted by the superintendent of the correctional facility on that same date. The superintendent's decision was upheld on administrative appeal on June 23, 2003. It is not clear from the record when Petitioner was notified of this decision. However, there is no allegation of undue delay or any reason to believe that Petitioner was not notified at or about the time of that decision.

On September 17, 2003, the chair of the TAC responded to a "recent memo" from Petitioner requesting

reconsideration of the decision. As such, the record clearly indicates that Petitioner was aware of the administrative decision underlying his claims prior to September 17, 2003 (as evidenced by the fact that he sent a memo to the TAC requesting a reconsideration).

Because the actual date of notice of the Superintendent's decision upholding the revocation of good time credits is uncertain, out of an abundance of caution, this Court will use September 16, 2003, as the latest possible date upon which Petitioner could have been notified that the TAC's recommendation had been approved by the facility's superintendent and upheld on administrative review.[FN2] As such, Petitioner's deadline to commence this action would have expired on September 16, 2004, absent statutory or equitable tolling

> FN2. Respondent notes that October 14, 2003, might also be considered as the date on which the withholding of good time credits became "final." On that date, a second reconsideration request by Petitioner was denied. This Court finds that September 16th is the more appropriate date, as that was the last possible date on which Petitioner would have been notified that the TAC's recommendation had been adopted by the superintendent and affirmed on administrative appeal. At that point, Petitioner was clearly aware of the factual predicate of the claims that he raises in this action. In any event, even if October 14th was used as the starting date for a statute of limitations calculation, the instant Petition is still untimely.

**B. Statutory Tolling**

The one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) is modified by § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Under this subsection, the word "pending" designates the "end point" of the tolling period, *Fernandez v. Artuz,* 402 F.3d 111, 116 (2d Cir.2005), and "an application for state review is 'pending' until it has achieved final review

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

through the state's post-conviction procedures." *Foster v. Phillips,* No. 03 Civ. 3629, 2005 WL 2978686, at *4 (S.D.N.Y. Nov. 7, 2005) (citing *Carey v. Saffold,* 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)); *accord, e.g., King v. Cunningham,* 442 F.Supp.2d 171, 180 n. 15 (S.D.N.Y.2006).

**\*6** In addition, the Second Circuit has held that the "proper calculation of Section 2244(d)(2)'s tolling provision *excludes* time during which properly filed state relief applications are pending but does not *reset* the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (emphases added); *accord Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir.2002).

In this case, the statute of limitations is statutorily tolled from November 13, 2003, when Petitioner filed his Article 78 proceeding,[FN3] until September 15, 2005, when the Court of Appeals of New York denied his application for leave to appeal. Thus, on September 15, 2005, Petitioner's Article 78 had completed the final stage of review and was no longer considered "pending" for tolling purposes.

> FN3. The Article 78 Petition is stamped as received by the Albany County Clerk on April 28, 2004. The Article 78 Petition was dated November 13, 2003. It is not clear why there was such a substantial gap between the date of filing and the date contained on the Article 78 Petition. Again, giving Petitioner every benefit of the doubt, this Court will consider the Article 78 Petition has having been filed on November 13, 2003.

Fifty-eight (58) days passed between September 16, 2003, the latest date on which Petitioner could have been "notified" of the decision to withhold his good time credits, and November 13, 2003, when he filed his Article 78 proceeding. Three hundred fifty (350) days elapsed between September 15, 2005, when the Court of Appeals denied Petitioner's application for leave to appeal, and August 31, 2006, when Petitioner filed this action for habeas relief.

With regard to this August 31, 2006 date, it should be noted this Court has given Petitioner the benefit of the "prisoner mailbox rule." The Petition was not actually filed by the Clerk of this Court until September 7, 2006. Per the "mailbox rule," a motion or pleading filed by a *pro se,* incarcerated petitioner is deemed filed the day that he or she turned the pleading over to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk).

It is not clear when Petitioner delivered the Petition to prison officials. However, courts in this Circuit have generally concluded that "[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." *Torres v. Irvin,* 33 F. Supp .2d 257, 270 (S.D.N.Y.1998) (citing *Hunter v. Kuhlman,* 97 Civ. 4692, 1998 WL 182441, at *1 n. 2 (S.D.N.Y. Apr.17, 1998) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997); *Jones v. Artuz,* No. CV 97-2394, 1997 WL 876735, at *1 (E.D.N.Y. Sept. 13, 1997)); *accord Johnson v. Coombe,* 156 F.Supp.2d 273, 277 (S.D.N.Y.2001). In accordance with this practice, this Court deems the Petition filed on August 31, 2006, the date it was signed by Petitioner.

Based on the foregoing calculations, this Court finds that four hundred and eight (408) days of untolled time passed between the latest possible date on which Petitioner was aware of the factual predicate underlying his claim (September 16, 2003)[FN4] and the date that he filed the instant case (August 31, 2006). The Petition for habeas relief is therefore untimely and barred by the one-year statute of limitations set forth in § 2244.

> FN4. The Petition is untimely even if October 14, 2003, the date on which Petitioner's second reconsideration request was denied, is used as the date on which Petitioner was aware of the factual predicate underlying his claims. Using that date, three-hundred eighty (380) days of untolled time

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

elapsed prior to the filing of this case.

**C. Equitable Tolling**

**\*7** The one-year period set forth in AEDPA for the filing of federal habeas petitions is a statute of limitations, not a jurisdictional period. *Smith,* 208 F.3d at 17. However, it is only in " 'rare and exceptional circumstances' " that AEDPA's limitations period may be subject to equitable tolling. *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) (quoting *Smith,* 208 F.3d at 17)).

Consequently, the period may be equitably tolled only if a petitioner is able to show that extraordinary circumstances prevented him from filing his petition earlier and that he acted with reasonable diligence throughout the period sought to be tolled. *Id.* "Extraordinary circumstances" are events which were "beyond [petitioner's] control" and which prevented successful filing during the one-year time period. *Smaldone v. Senkowski,* 273 F.3d 133 (2d Cir.2001).

Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000). Thus, the petitioner must show that extraordinary circumstances "prevented" him from filing on time. *Id.* at 133-34.

There is no indication in the record of any extraordinary circumstances that operated to prevent Petitioner from timely filing his application for habeas relief. In particular, there is no evidence that the nearly one year delay between the conclusion of the Article 78 proceeding and the filing of this case was caused by any events beyond Petitioner's control. Petitioner's *pro se* status does not, in and of itself, entitle him to equitable tolling. *Id.* (citing *Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir.1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.")); *see also Francis v. Miller,* 198 F.Supp.2d 232, 235

(E.D.N.Y.2002) (stating that petitioner's ignorance of the law and legal procedures are not extraordinary circumstances); *Armand v. Strack,* No. 98 Civ. 6650, 1999 WL 167720, at \*5 (E.D.N.Y.Feb.19, 1999) (noting that lack of access to law clerks, illiteracy, lack of English fluency and ignorance of the law have all been considered and rejected by courts as insufficient to demonstrate exceptional circumstances); *Fennell v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1998) (holding that equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, would undermine AEDPA's statute of limitations).

Accordingly, this Court finds that equitable tolling is not warranted in this case and therefore recommends that the Petition be dismissed as untimely filed and barred by the applicable statute of limitations.

**IV. CONCLUSION**

**\*8** For the reasons stated above, the Court recommends Stanley McPherson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. *See* 28 U.S.C. § 2253(c)(2) (1996).

**V. ORDERS**

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

**SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolak v. Canadair Ltd. .,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

N.D.N.Y.,2009.

McPherson v. Burge
Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)

(Cite as: 2012 WL 555095 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Karen Marie ADAMS, Plaintiff,
v.
Donald E. LOREMAN, Sr.; Carolyn Loreman; Mark J.
Whitney; William Seaver; the Village of Keeseville; and
William O'Conner, Defendants.
No. 8:07–cv–00452 (LEK/RFT).

Feb. 21, 2012.
Karen Marie Adams, St. Albans, VT, pro se.

Kevin A. Luibrand, Luibrand Law Firm, PLLC, Latham,
NY, Nannette R. Kelleher, Crystal R. Peck, Bailey,
Kelleher Law Firm, Albany, NY, for Defendants.

*MEMORANDUM–DECISION and ORDER*

LAWRENCE E. KAHN, District Judge.
**I. INTRODUCTION**
*1 Presently before the Court are four Motions filed
by Plaintiff Karen Marie Adams ("Plaintiff" or "Adams")
pertaining to the above-captioned matter. First is Plaintiff's
Motion, filed on December 6, 2010, seeking a preliminary
injunction and appointment of counsel. Dkt. No. 227
("P.I.Mot.").FN1 Second, on December 9, 2010, Plaintiff
filed a Motion under seal seeking leave to proceed *in
forma pauperis* as well as appointment of counsel. Dkt.
No. 232 ("IFP Application").FN2 Third, Plaintiff filed a
Motion to join Vern D. Witherbee ("Witherbee") as a
plaintiff on March 28, 2011, pursuant to Federal Rule of
Civil Procedure 20(a) (1). Dkt. No. 255 ("Motion for
joinder"). Finally, Plaintiff now seeks to withdraw her
Motion for joinder without prejudice. Dkt. No. 266
("Motion for withdrawal"). In addition to opposing the
Motion for joinder, Defendants Donald E. Loreman, Sr.
and Carolyn Loreman (collectively, "the Loreman
Defendants") filed a Cross–Motion for sanctions against
Plaintiff under Federal Rule of Civil Procedure 11. Dkt.

No. 257 ("Motion for sanctions").

FN1. Plaintiff's Motion also sought a temporary
restraining order ("TRO"), which the Court
denied on December 7, 2010. *See* P.I. Mot.

FN2. Because Plaintiff requests appointment of
counsel in multiple Motions, the Court will treat
her request for counsel separately. *See* P.I. Mot.;
IFP Application.

**II. BACKGROUND**

The Court presumes the parties' familiarity with the
lengthy factual and procedural background of this case as
set forth in the Memorandum–Decision and Order dated
September 1, 2010. *Adams v. Smith,* No. 8:07–cv–452,
2010 WL 3522310 (N.D.N.Y. Sept.1, 2010) (Kahn, J.)
("September 2010 Order"). Although the September 2010
Order dismissed a number of the claims and Defendants
enumerated in Plaintiff's most recent Third Amended
Complaint (Dkt. No. 57) ("Complaint"), the Court
permitted the case to proceed against the Loreman
Defendants; the Village of Keeseville, New York
("Village"); Defendant Mark J. Whitney, the former
mayor of the Village; and Defendants William O'Connor
and William Seaver, both former Village employees
(collectively, "the Village Defendants"). *Id.* at *21.
Specifically, the Court permitted Plaintiff to proceed with
her claims against these Defendants that were grounded in:
(1) alleged deprivations of, and conspiracy to deprive
Plaintiff of, Plaintiff's due process rights (both procedural
and substantive) in violation of 42 U.S.C. § 1983; (2)
breach of an implied covenant of good faith and fair
dealing; and (3) intentional infliction of emotional harm.
*Id.*
**III. DISCUSSION**

**A. P.I. Motion**

"A preliminary injunction is an extraordinary remedy
never awarded as of right." *Winter v. Natural Res. Def.
Council, Inc.,* 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d
249 (2008) (citation omitted). In this Circuit, a court shall

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)

(Cite as: 2012 WL 555095 (N.D.N.Y.))

grant a motion for a preliminary injunction only where the party seeking the injunction can show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *NXIVM Corp. v. Ross Institute,* 364 F.3d 471, 476 (2d Cir.2004); *Faiveley Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 116 (2d Cir.2009). "Such relief ... is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.,* 409 F.3d 506, 510–511 (2d Cir.2005) (quotations and citations omitted).

**\*2** Plaintiff seeks injunctive relief pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* P.I. Mot. at 1–5. Plaintiff's P.I. Motion, like her Complaint, "sets forth a highly involved factual history ... and alleges a wide-ranging course of wrong-doing by various Defendants over a period of years." *Adams,* 2010 WL 3522310, at *1. However, the specific harm that Plaintiff's Motion seeks to prevent appears to be eviction from her former home at 19 Pulitzer Way, Au Sable Forks, New York, pursuant to a jury verdict in town court in Essex County that was affirmed in Essex County Court and again by the Appellate Division. *See* P.I. Mot. at 3; Dkt. No. 227–3 (Proposed order/judgment); Declaration of William T. Meconi (Dkt. No. 244–2) ("Meconi Decl.") ¶¶ 7–9.[FN3]

> FN3. William Meconi ("Meconi"), who is not a party to this action, represented the owner of the property from which Plaintiff was evicted in the eviction proceedings in Essex County. Meconi Decl. ¶ 7. In Plaintiff's "RICO Case Statement" submitted pursuant to N.D.N.Y. General Order 14, she claims that Meconi is part of the alleged RICO enterprise, "filed openly false documents" against her during the eviction proceedings, and "arranged through ex parte communications with the local county and town justices for further damages and judicial advantages." Dkt. No. 227–2 ("RICO Case Statement") at 2, 5–6. She also claims that Meconi has committed wire

fraud, retaliated against her as "a witness or informant," engaged in monetary transactions in property derived from unlawful activity, "collect [ed] ... extensions of credit by extortionate means," and obstructed justice and criminal investigations. *Id.* at 7–9. Meconi has filed his own Opposition to Plaintiff's Motion and denies all of her allegations. Meconi Decl. ¶ 15. Plaintiff has previously sought injunctive relief against Meconi despite his being a non-party; the Court also denied her earlier Motion for injunctive relief against Meconi by Order dated August 7, 2009. Dkt. No. 198.

Plaintiff's Motion is denied. First and foremost, the Court has repeatedly made clear to Plaintiff that she may not continue to assert any claims against parties beyond those claims and parties that are presently before the Court pursuant to the September 2010 Order. As the Court stated in the September 2010 Order denying Plaintiff leave to file a Motion to supplement her pleadings (Dkt. No. 199):

> Plaintiff's Motion to supplement or amend will almost certainly cause undue prejudice and delay, and the substance of her filing suffers from futility, as well. The viable claims raised by Plaintiff concern alleged conduct by the Village Defendants and Loremans that has already transpired. There is simply no reason for additional allegations with no clear relationship to those claims and that conduct to be allowed in iteration of Plaintiff's Complaint.

*Adams,* 2010 WL 3522310, at *21. The Court also refers Plaintiff to the Compliance Order dated January 3, 2011, in which Plaintiff was advised to review the September 2010 Order, as it "clearly establishes the parties to this action and the claims remaining against them" and "prohibits further amendment to Plaintiff's Complaint." Dkt. No. 245 ("Compliance Order"). Plaintiff's claims in her most recent P.I. Motion and her accompanying RICO Case Statement appear primarily concerned with her more recent eviction proceedings in Essex County, and bear no clear relation to the specific complained-of conduct in the Third Amended Complaint that is the subject matter of this litigation. Plaintiff's P.I. Motion contravenes previous Orders of the Court advising

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)

(Cite as: 2012 WL 555095 (N.D.N.Y.))

her not to file further claims or attempt to add more parties to this case, and dismissal is warranted on that basis alone.

Further, because Plaintiff was evicted from the premises in question on December 28, 2010, her Motion is now moot. Meconi Decl. ¶ 13; *see also Adams v. Standard Fed. Bank,* 371 F. App'x 187, 188 (2d Cir.2010) (citing *White River Amusement Pub., Inc. v. Town of Hartford,* 481 F.3d 163, 167 (2d Cir.2007)), aff'g *Adams v. Whitney,* No. 8:07–cv–452, 2008 WL 189905 (N.D.N.Y. Jan.18, 2008) (Kahn, J.) (denying Plaintiff's previous Motion (Dkt. No. 38) seeking to prevent her eviction from a different property). The Court therefore lacks jurisdiction to decide the Motion, and it must be dismissed on that basis as well. *See Arizonans for Official English v. Ariz.,* 520 U.S. 43, 66–67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (question of whether there is a "live" case or controversy relates to the Court's Article III jurisdiction and not to the merits of the case).

**\*3** Finally, "[i]n order to state a civil RICO claim grounded in fraud, a plaintiff must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *MLSMK Inv. Co. v. JP Morgan Chase & Co.,* 737 F.Supp.2d 137, 142 (S.D.N.Y.2010) (citation and quotation omitted); FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Court concluded in the September 2010 Order that Plaintiff's Complaint failed to meet this pleading standard in alleging claims of fraud against the Village Defendants and the Loremans, the only remaining Defendants in this action. *Adams,* 2010 WL 3522310, at \* 10, \* 18. Nothing in the present P.I. Motion or RICO Case Statement warrants a departure from that conclusion. For all of the foregoing reasons, Plaintiff has failed to meet the high standard required for a preliminary injunction, and her P.I. Motion is therefore denied.

**B. Motions for Joinder and Withdrawal**

Although Plaintiff previously sought to join Witherbee as a party in this action, she now seeks to withdraw her Motion for joinder on the grounds that: (1) she lacks "adequate training and knowledge to understand how best to proceed in this matter"; and (2) Witherbee

"has been elusive" since Plaintiff filed her Motion for joinder. Mot. for withdrawal at 2. Defendants have indicated that they oppose Plaintiff's Motion to withdraw to the extent that she seeks to withdraw it without prejudice. Dkt. No. 274 ("Village Response") at 1.

"Leave to withdraw a motion without prejudice may be granted in the absence of a showing of prejudice to other parties." *Medina v. N.Y. State Dep't of Corr. Servs.,* No. 03 Civ. 9249, 2004 WL 2397193, at \*4 n. 1 (S.D.N.Y. Oct.26, 2004) (citing *Harris v. Butler,* 961 F.Supp. 61, 62 (S.D.N.Y.1997)). Defendants have not made such a showing in their Responses, and therefore the Court will allow Plaintiff to withdraw her Motion for joinder without prejudice in this instance.[FN4] *See* Loremans' Resp. Mem. at 2–3; Village Resp. at 1. However, the Court reiterates its previous directives that Plaintiff is not permitted to add any further claims or parties to this action, and may be sanctioned if she continues to attempt to do so. Should Plaintiff file any further motions for joinder or otherwise attempt to incorporate additional claims or parties into this litigation, those submissions may be subject to dismissal with prejudice.

> **FN4.** The Loreman Defendants argue that Plaintiff lacks standing to withdraw the Motion for joinder because the Motion "was brought by both Plaintiff and Mr. Witherbee." Loreman Defendants' Memorandum of law in opposition to Plaintiff's motion to withdraw motion for joinder (Dkt. No. 271) ("Loremans' Resp. Mem.") at 2–3. Defendants do not cite any law in support of this argument, nor has the Court found any. Nonetheless, in the nearly ten months that have elapsed since Plaintiff filed her Motion for withdrawal, Witherbee has neither opposed this Motion nor made any appearances whatsoever in this litigation since the Motion for joinder was filed on March 28, 2011. Indeed, Plaintiff bases her Motion for withdrawal in part on the fact that Witherbee has not been in contact with either her or the Court. *See* Mot. for withdrawal at 2. For these reasons, the Court finds that granting Plaintiff's Motion for withdrawal is appropriate at this time. FED. R. CIV. P. 21 (granting district courts broad discretion "at any time, on just

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)

(Cite as: 2012 WL 555095 (N.D.N.Y.))

terms," to add or drop parties).

## C. Motion for Sanctions

The Loreman Defendants have filed a Motion for sanctions against Plaintiff pursuant to Rule 11, including dismissal of this action with prejudice as well as attorneys' fees. Mot. for sanctions at 1. Rule 11 authorizes a district court to impose sanctions on a party for filing submissions that, *inter alia*: (1) are filed for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) contain claims and arguments unsupported by law; or (3) contain factual contentions that lack evidentiary support or are unlikely to have evidentiary support "after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(1)-(3). Additionally, in order to demonstrate a Rule 11 violation, the moving party must make "a showing of objective unreasonableness" on the part of the attorney or unrepresented party that made the submission in question. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 579 F.3d 143, 150 (2d Cir.2009) (quoting *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96 (2d Cir.1997)).

**\*4** Even if the Court were to conclude that Plaintiff has violated Rule 11(b), Rule 11 also requires that "[a] sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct." FED. R. CIV. P. 11(c)(4). Plaintiff's conduct in this litigation has frequently been difficult and may fairly be said to have unnecessarily delayed the progress of this case. Such difficulty and delay is partly due to Plaintiff's *pro se* status (a factor that compels leniency) and partly due to her refusal to comply with the Court's repeated Orders to refrain from asserting claims against nonparties to this action (a factor that compels sanctions). *See Adams,* 2010 WL 3522310, at *21;* Compliance Order ("Should Plaintiff continue to assert claims against parties previously dismissed, or against persons or entities not party to this action, she shall be sanctioned.").

However, Plaintiff's conduct has not been so improper as to warrant dismissal of the case in its entirety, especially in light of the Court's findings that she has set forth plausible claims for relief. And, as Plaintiff "is proceeding *pro se* and *in forma pauperis,* 'this is not a case where monetary sanctions would be reasonable.' "

*Griffith v. Stewart,* No. 10 CV 6066, 2011 WL 6780903, at *2 (E.D.N.Y. Nov. 10, 2011) (report-recommendation) (quoting *Quiles v. Beth Israel Med. Ctr.,* 168 F.R.D. 15, 19 (S.D.N.Y.1996)), *adopted,* 2011 WL 6812567 (E.D.N.Y. Dec.27, 2011).

Another sanction that the Court may impose is an injunction preventing Plaintiff from filing further motions without first obtaining leave of the Court. In determining whether to grant a filing injunction, courts must consider: (1) "the litigant's history of litigation and whether it entailed vexatious, harassing, or duplicative lawsuits"; (2) "whether the litigant has an objective good faith expectation of prevailing"; (3) whether the litigant has counsel; (4) "whether the litigant has caused needless expense to other parties or an unnecessary burden on the courts and their personnel"; and (5) whether other sanctions may suffice to protect the courts and other parties. *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27, 28 (2d Cir.2005) (citing *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986)).

The fourth of these factors does weigh somewhat in favor of issuing a filing injunction, as a number of Plaintiff's filings have contravened multiple Orders of the Court and have caused needless expense to other parties in responding to those filings. Additionally, as noted above, Plaintiff waited until the day Defendants' Response to her Motion for joinder was due to file her Motion to withdraw the previous Motion.

However, consideration of the remaining factors counsels against imposing so drastic a sanction as a filing injunction at this stage. Plaintiff does not have any history of filing "vexatious, harassing, or duplicative" lawsuits in federal court; she has been proceeding *pro se,* and the Court has found that her position has at least some merit. Moreover, as addressed below, the Court will conditionally grant Plaintiff's request for appointment of counsel, and therefore will not accept future filings from her. While this is not a sanction *per se,* it may effectively deter the conduct of which Defendants complain here. The Court therefore declines to issue a filing injunction at this time and denies Defendants' Motion for sanctions without prejudice to renew. However, Plaintiff is advised that should she persist in asserting claims against parties not

Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)

(Cite as: 2012 WL 555095 (N.D.N.Y.))

already present before the Court, she may be enjoined from filing further motions in this case without obtaining leave from the Court.

### D. Requests to Strike

**\*5** The Village Defendants argue that Plaintiff's RICO Case Statement should be stricken from the docket pursuant to Rule 11 of the Federal Rules of Civil Procedure, on the grounds that it "is vexatious" and "lacks proper foundation." Village Defendants' Memorandum of law in opposition to Plaintiff's motion for joinder (Dkt. No. 268–1) ("Defs.' Opp. Mem. to Mot. for joinder") at 8. Likewise, the Loreman Defendants seek to strike all of Plaintiff's RICO-related filings, as well as Plaintiff's Motion for joinder. Dkt. No. 257.

The Court denies both of these requests. First, the Village Defendants erroneously conflate Rule 11 and Rule 12(f) of the Federal Rules. Rule 11 does not permit a court to strike a party's factual allegations from the record; "[o]n the contrary, the remedy for a Rule 11 violation is an award of sanctions." Bye v. Connecticut, No. 3:09cv2052, 2011 WL 1271690, at \*1 (D.Conn. Apr.5, 2011) (citing FED. R. CIV. P. 11).

Second, even construing both requests as brought pursuant to Rule 12(f), which authorizes courts to strike from pleadings "any redundant, immaterial, impertinent or scandalous matter," Defendants' Motions fail. FED. R. CIV. P. 12(f). A Rule 12(f) motion must be denied unless the moving party can show "that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.1976); see also CreditSights, Inc. v. Ciasullo, No. 05 CV 9345, 2008 WL 4185737, at \*21 (S.D.N.Y. Sept. 5, 2008). "Because a court should avoid making evidentiary findings solely on the basis of pleadings," granting a Rule 12(f) motion to strike is inadvisable absent a strong reason for doing so. Kirkland v. Local 32B/32J, Int'l Serv. Workers Union, No. 90 CIV. 2238, 1990 WL 134863, at \*5 (S.D.N.Y. Sept.10, 1990) (quoting Lipsky, 551 F.2d at 893) (quotation marks and other citations omitted). Courts therefore "are generally reluctant to grant motions to strike ... even if portions of the answer fit into the provisions of Rule 12(f)." Schanbarger v. Hudson Falls, No. 88–CV–1208, 1990 WL 146384, at \*1 (N.D.N.Y. Oct.1, 1990) (citing Bennett v. Spoor Behrins Campbell & Young, Inc., 124 F.R.D. 562, 564 (S.D.N.Y.1989); Budget Dress Corp. v. Int'l Ladies' Garment Workers' Union, 25 F.R.D. 506, 508 (S.D.N.Y.1959)).

Here, Defendants have failed to provide sufficient justification for striking Plaintiff's submissions from the record. Some of the passages in Plaintiff's submissions may well fall within the ambit of Rule 12(f)'s prohibition of immaterial and impertinent matter. Nonetheless, the Court cannot discern a strong reason for striking her submissions and deems it sufficient to dismiss her Motions for the reasons discussed above. See Kirkland, 1990 WL 134863, at \*5. Nor do Plaintiff's submissions appear to be "redundant or scandalous to the degree to contemplated by Rule 12(f)." Id. (denying motion to strike plaintiff's detailed factual allegations of events prior to and following termination of his employment). Accordingly, Defendants' requests to strike are denied.

### E. Request for Counsel

**\*6** In determining whether to appoint counsel for an indigent party in a civil case, "the district judge should first determine whether the indigent's position seems likely to be of substance." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir.1986). If so, the court should then consider the "plaintiff's ability to obtain representation independently, and his ability to handle the case without assistance in the light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity." Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir.1989); see also N.D.N.Y. L.R. 83.3(c). Lastly, in determining whether to appoint counsel, "a district court exercises substantial discretion, subject to the requirement that it be guided by sound legal principles." Cooper, 877 F.2d at 171–72 (citation and quotation omitted).

Plaintiff previously submitted a Motion to appoint counsel (Dkt. No. 145) that was denied without prejudice to renew by United States Magistrate Judge Randolph F. Treece in an Order dated August 25, 2008. Dkt. No. 146 ("August 2008 Order"). In the August 2008 Order, Judge Treece found that Plaintiff had sufficiently demonstrated her inability to secure counsel on her own. Id. at 1. However, Judge Treece denied her Motion because: (1)

Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)

(Cite as: 2012 WL 555095 (N.D.N.Y.))

the litigation was "not overly complex"; (2) "Plaintiff has been able to effectively litigate this action"; and (3) there was no "special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation." *Id.* at 2.

As the August 2008 Order was issued prior to the Court's decision on Defendants' Motions to dismiss, Judge Treece appropriately denied Plaintiff's Motion to appoint counsel given the procedural posture of the case. And a plaintiff's motion for counsel may be denied where, even though her "allegations have merit insofar as they have survived a motion to dismiss [,] ... the case does not present novel or overly complex issues." *Castro v. Manhattan East Suite Hotel,* 279 F.Supp.2d 356, 357 (S.D.N.Y.2003). However, the portions of Plaintiff's Complaint upon which the Court has permitted her to proceed "depict[ ] the systematic and protracted allegations of various Village official[s] [and the Loremans] working in concert to potentially deprive her of property without due process." *Adams,* 2010 WL 3522310, at *12, *18. As "Plaintiff's Complaint sets forth a highly involved factual history for her action and alleges a wide-ranging course of wrong-doing by various Defendants over a period of years," *id.* at * 1, the Court finds it appropriate at this juncture to grant her request for appointment of counsel. *See Vargas v. City of New York,* No.97Civ.8426, 1999 WL 486926, at *2 (S.D.N.Y. July 9, 1999) (appointing counsel because the plaintiff's case "involves factual disputes concerning [D]efendants' conduct, which will consequently turn on conflicting evidence, and thus require cross-examination testimony"); *see also Kelly v. Am. Museum of Natural History,* 98 Civ. 3589, 1998 WL 717446, at *1 (S.D.N.Y. Oct.14, 1998) (granting counsel where plaintiff's "case will certainly involve factual disputes and is likely to depend on conflicting evidence that requires cross-examination"). Appointing Plaintiff counsel in this case "may greatly assist [Adams]-an inexperienced litigant-through the discovery process and through trial, leading to a 'quicker and more just result by sharpening the issues and sharpening examination.' " *Kelly,* 1998 WL 717446, at *1 (quoting *Hodge,* 802 F.2d at 60); *see also Hodge,* 802 F.2d at 60 ("[I]t is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross-examination.")

(quoting *Maclin v. Freake,* 650 F.2d 885, 888 (7th Cir.1981)) (quotation marks omitted).

**\*7** Accordingly, the Court hereby appoints attorney James M. Brooks of the Office of James M. Brooks, Lake Placid, New York, to represent Plaintiff *pro bono* in this matter. However, Plaintiff's Motion to appoint counsel is granted only conditionally. The Court will not entertain future motions from Plaintiff to appoint a new attorney, should Plaintiff become dissatisfied with the attorney appointed for her pursuant to this Order. If Plaintiff files any such motions, the Court will decline to appoint another attorney and require Plaintiff to return to proceeding *pro se.*

Furthermore, Plaintiff is cautioned not only to consult with her counsel in this case, but "to understand that it is he who is the legal professional in this relationship." *Stanley v. City of Centreville,* No. 08–cv–622, 2009 WL 1343287, at *2 (S.D.Ill. May 12, 2009). Plaintiff's attorney "maintains an ethical obligation to fully and vigorously represent his client, but only to the extent that it does not impede his ethical obligation to follow the rules of the Court and the law." *Id.* at *3. As a result, counsel may likely, from time to time, advise Plaintiff against taking a certain course of action. And, while Plaintiff may not agree with his advice, the Court advises Plaintiff to understand that that advice will likely be in her best interest to follow in order to comply with the law. If Plaintiff wants to be represented by an attorney, she must cooperate fully with that attorney. *See id.* at *2–3. So long as Plaintiff is represented by counsel, the Court will not accept any filings from the Plaintiff individually. *See id.* at *3.

**F. IFP Application**

Finally, the Court notes that Plaintiff previously filed an IFP Application at the commencement of this litigation and that the Court granted said Application by Memorandum–Decision and Order dated May 24, 2007. *See* Dkt. No. 5. Nothing in the record supports any inference that Plaintiff was required to submit a second IFP Application, and the second Application indicates that Plaintiff still meets the financial criteria necessary to proceed *in forma pauperis. See* IFP Application.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)

(Cite as: 2012 WL 555095 (N.D.N.Y.))

Accordingly, Plaintiff may still proceed *in forma pauperis,* but her current Application is dismissed as moot.[FN5]

> FN5. The Court notes that, when filing her IFP Application, Plaintiff also enclosed a letter to the Court stating that she was filing her "updated application to proceed without paying fees or costs to be filed per [the Court's] text order of December 7, [2010]." Dkt. No. 232. However, the text order that Plaintiff references merely advises Plaintiff "that she may also update her statement of need" in conjunction with any request for counsel. In any event, while the Court grants Plaintiff's Motion for counsel as discussed above, her IFP Application is dismissed as moot because Plaintiff has already been granted IFP status.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that Plaintiff's Motion for preliminary injunctive relief and for appointment of counsel (Dkt. No. 227) is **DENIED in part and GRANTED in part,** consistent with this Memorandum–Decision and Order; and it is further

**ORDERED,** that attorney James M. Brooks is **APPOINTED** to represent Plaintiff *pro bono* in this matter;[FN6] and it is further

> FN6. Counsel is advised that funds for the reimbursement of his expenses are limited to $2,000, absent extraordinary circumstances. N.D.N.Y. L.R. 83.3(g). The Court retains discretion to grant, deny, or reduce a request made by counsel seeking more than $2,000 without the Court's prior approval. *See id.* Although an appointed attorney may not recover attorneys' fees from the District Court's Pro Bono Fund, the Court may award an appointed attorney for a prevailing party's attorney's fees from the judgment or settlement to the extent that the applicable law permits. *Id.* 83.3(h). For more information on reimbursement for expenses, counsel is advised to consult the Local Rules.

**ORDERED,** that Plaintiff's Motion to withdraw (Dkt. No. 266) her Motion for joinder is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Motion for joinder (Dkt. No. 255) is **DENIED as moot and without prejudice;** however, Plaintiff is advised that should she file any further motions for joinder or otherwise attempt to incorporate additional claims or parties into this litigation, those submissions may be subject to dismissal with prejudice and Plaintiff herself may be subject to sanctions; and it is further

**\*8 ORDERED,** that Defendants' Motion for sanctions (Dkt. No. 257) is **DENIED without prejudice;** and, should Plaintiff continue to assert claims against parties previously dismissed, or against persons or entities not party to this action, she shall be subject to sanctions, including a filing injunction; and it is further

**ORDERED,** that Defendants' requests to strike are **DENIED;** and it is further

**ORDERED,** that Plaintiff's Application to proceed *in forma pauperis* (Dkt. No. 232) is **DENIED as moot;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2012.

Adams v. Loreman
Not Reported in F.Supp.2d, 2012 WL 555095 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.